IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
vs. ) 18-CR-1023
)
MICHAEL STEVENSON, )
)
Defendant. )

APPEARANCES:

ATTORNEY JOHN H. LAMMERS, U.S. Department of Justice, 600 4th Street, Suite 670, Sioux City, Iowa 51101, appeared on behalf of the United States.

ATTORNEY CORY GOLDENSOPH, 425 Second Street S.E., Suite 803, Cedar Rapids, Iowa 52401, appeared on behalf of the Defendant.

FINAL PRETRIAL CONFERENCE,

HELD BEFORE THE HON. C.J. WILLIAMS,

on the 11th day of April, 2019, at 111 Seventh Avenue S.E., Cedar Rapids, Iowa, commencing at 9:57 a.m., and reported by Patrice A. Murray, Certified Shorthand Reporter, using machine shorthand.

Patrice A. Murray, CSR, RPR, RMR, FCRR
United States District Court
111 Seventh Avenue S.E., Box 4
Cedar Rapids, Iowa 52401-2101
(319) 286-2338

(The following proceedings were held in open court.)

THE COURT: Good morning. The matter now before the Court is United States of America versus Michael Stevenson, Criminal Case Number 18-CR-1023. This matter comes on for a final pretrial conference. The United States is represented by Assistant United States Attorney Jack Lammers. The defendant is personally present and represented by Attorney Cory Goldensoph.

First of all, I want to figure out the length of this trial. Mr. Lammers, what is the estimated length?

MR. LAMMERS: Your Honor, I initially said that I believed this would be two-and-a-half days. Mr. Goldensoph believed it would be four days. I still think two-and-a-half, maybe three; but I'm not sure what defense's position is.

THE COURT: All right. Give me an idea -- first of all, I also saw Kyndra Lundquist entered her appearance. Will she be co-counsel during this trial?

MR. LAMMERS: She will, Your Honor.

THE COURT: How many witnesses are you planning to call?

MR. LAMMERS: 10 to 12 it looks like.

THE COURT: Are any of them in custody?

MR. LAMMERS: Yes.

THE COURT: How many approximately?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

MR. LAMMERS: Right now, there are two for sure. There was a possibility there was another one that was in Arizona, but it doesn't look like we'll be able to get him back, so I believe there's two in custody.

THE COURT: All right. Any other issues with getting witnesses here, other than the one you just mentioned?

MR. LAMMERS: Potentially, we have one who, it sounds like, may be ducking service. We've spoken to her, informed her of the subpoena. She may or may not actually -- she may not be cooperative. I'm fairly sure we will find her, but I just want to let the Court know that's the case. If we need to get a material witness warrant, we'll be contacting the Court as necessary.

THE COURT: All right. Very good. For purposes of jury instructions, quite frankly, are any of your witnesses going to be testifying pursuant to a plea agreement?

MR. LAMMERS: At least two.

THE COURT: All right, we'll add that jury instruction then.

All right. Mr. Goldensoph, what are your thoughts about length of the case? And give me an idea how many witnesses you plan on calling.

MR. GOLDENSOPH: Your Honor, when I originally

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

said four, I had at that time a different strategy, and I believe that strategy is altered some, and so I think it will decrease the length of the trial. I would still say three, just to be on the safe side. I, at this point, anticipate the possibility of calling three to four witnesses. Again, all of this is just to be on the safe side, Your Honor.

THE COURT: Very good. I appreciate that. So what I'll plan on doing is telling the jury this is probably a three-day trial, and, as I always do, I'll tell them these estimates are just the best estimates by the lawyers and it may be a little bit more or it may be a little bit less but we'll estimate it at a three-day trial.

Do you have any issues regarding getting your witnesses here or getting them served?

MR. GOLDENSOPH: Your Honor, we're going to -- I was intending on working on those subpoenas yesterday but my secretary was out ill yesterday, so I intend on working on them today and getting those to the marshals yet today. So I don't anticipate any real conflict in getting the witnesses here.

THE COURT: Okay. Mr. Lammers, has any formal plea offers been made to the defendant in this case?

MR. LAMMERS: Yes, Your Honor. First of all,

I'm sorry, I guess I -- as many times as I've seen you in court, I have never asked, what's your preference?  Do we stand to address the Court?  Do we sit to the microphone?  How would you prefer we do that?

THE COURT:  Do it however you want to, Mr. Lammers.  I'm not into formalities.  It's whatever you are comfortable with.

MR. LAMMERS:  The convention obviously has been different on the different sides of the state, so I wanted to make sure I was following the appropriate convention.

In regards to, I guess -- now I guess I've lost my train of thought.  What was the question?

THE COURT:  I was asking -- oh, about plea offers, whether you made a formal plea offer.

MR. LAMMERS:  Yes, I'm sorry, Your Honor.  The defendant actually requested a plea offer to plead to Counts, I believe it was, 3, 4 and 5.  We tendered a noncooperation plea offer, including some language that the defense had requested, and apparently that was rejected.

THE COURT:  All right.  Very good.

And, Mr. Stevenson, it is totally up to you whether you accept or reject the government's plea offers; I don't care one way or the other.  My only concern is, I

need to make sure you are aware that a plea offer was made and that it's your decision not to -- it was your decision not to accept that plea offer.

THE DEFENDANT: I couldn't -- I wasn't able to make a -- a knowledgeable and voluntary decision based off the fact that, you know, I couldn't make that decision because I didn't have the adequate materials to be able to prepare for trial, such as, you know, disclosures that was made through subpoenas, other disclosures. And basically, I got an incomplete discovery; you know, there's still items that is missing that I haven't been able to view. So if there's any way that them items could be made -- made viewable to me, then that would be good, because right now I feel like I'm at a prejudice and I'm not allowed no -- I'm not allowed a fair trial without my proper material to be able to attend trial with.

THE COURT: Mr. Lammers, just so we have a good record, your plea offer you made, did it have a time limitation to it and has that expired?

MR. LAMMERS: I don't recall -- frankly, I didn't bring that plea agreement. I don't recall if I put a deadline in it. I don't think that I did; however, there, of course, is the Court's deadline for -- for acceptance of responsibility. I think we're past that

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

deadline. I think actually that was on Tuesday, in order for the defendant to qualify at least for the third level, and I don't know in regards to levels one and two, so that's our position.

THE COURT: All right. Very good. You're right. The deadline for the defendant receiving the third level off has passed, and so regardless of what plea agreement may or may not be out there still and whatever the parties agreed to, the Court's deadline is passed and so the defendant would not be eligible for that third level off for acceptance of responsibility.

And so, Mr. Stevenson, I just want to make sure, as I understand, you rejected the plea agreement because you didn't feel like you were in the position to have enough knowledge to accept it or reject it?

THE DEFENDANT: Exactly.

THE COURT: All right. So in any event, you were aware of the plea offer?

THE DEFENDANT: Yes.

THE COURT: And you chose not to enter into the plea agreement based on your view you didn't have enough information to enter into it; is that fair?

THE DEFENDANT: Yes.

THE COURT: All right. All right. I want to go back to the witnesses for just a second. Do any of

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

your witnesses, Mr. Lammers, need any type of special accommodations, interpreters, anything like that that we need to worry about?

MR. LAMMERS: No, Your Honor.

THE COURT: Mr. Goldensoph, how about you?

MR. GOLDENSOPH: No.

THE COURT: All right. I've read the motion in limine in this case, and there's not -- we're doing this hearing a little early because my next week is completely jammed up, and normally we won't have these until after the trial memos are due and the witness lists and all that kind of stuff, so I'm a little bit in the dark. But from the motion in limine that's pending right now, I gather that there was an overdose death tied to one of the counts in the indictment. Is the government going to be offering evidence in that form or regarding a death in this case?

MR. LAMMERS: Yes, Your Honor.

THE COURT: Will you be having expert witnesses testifying?

MR. LAMMERS: Yes, Your Honor.

THE COURT: I think, Mr. Lammers, you -- you try cases this way, but just to make sure, I don't require, nor do I think it's appropriate, for the Court to formally anoint a witness as an expert, and so the way

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

it would work is, you would call your witness, establish whatever foundation on the background of your witness that you wish to establish, and then you can ask your witness to render an opinion, and you don't have to formally move to have the witness identified as an expert or accepted as an expert in any particular area. You can just move right into the questioning. If the defense believes that an inadequate basis has been established for him or her to render an opinion under the 700 Rules of the -- Rules of Evidence, the defendant can object at that point. Will you just be having one expert?

MR. LAMMERS: Two, Your Honor.

THE COURT: Two. What type of experts are they?

MR. LAMMERS: I'll have the medical examiner and I'll have a chemist.

THE COURT: All right. Let's talk a little bit about the jury selection process. The way this is going to work is we will have 29 persons called forward into the courtroom randomly seated in the box and in front of the box. I will then explain the -- introduce people in the courtroom and go through the jury selection process, explaining what that's going to consist of for the jurors. I will hear first hardship excuses from any jurors. I will take up anybody who raises their hand at

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

sidebar and I'll hear their excuses at sidebar. I will not entertain argument from counsel; so, in other words, the prospective juror can tell me their hardship and I'm just going to rule on it one way or another without input from the attorneys.

Once I go through the hardship excuses, then I'll conduct my own voir dire, which I'll cover here in a minute. Once I'm done, I'll turn it over to the government for voir dire. The government has 30 minutes for voir dire. When the government's done with voir dire, if, Mr. Lammers, you believe, that there is a reason to remove any of the prospective jurors for cause, you can simply indicate that you need to speak to the Court at sidebar, and we will take up any for-cause motions at sidebar so you are not making those in front of the prospective jurors. If on the other hand you get to that point and you have no motion for cause, you can simply say "Pass for cause," and then I'll turn it over to the defense. Mr. Goldensoph will also have 30 minutes. It will be in -- the same process for for-cause motions as I described for Mr. Lammers.

Once we get through all of the voir dire, then it will be time to exercise peremptory strikes. I entered an order at document number 41 describing the method we are going to use for the exercise of peremptory strikes,

but let me go through it with counsel and then hopefully answer any questions you might have.

First of all, once we get to that point, I'm going to excuse the jurors, and so you will not be able as you are exercising peremptory strikes to look up and eyeball the person that you were thinking of, so you're going to have to make notes and kind of memorize the people before I excuse them. Once the jurors are excused, then we're going to start in the upper right-hand corner and that's juror number 1 and we'll go down the row, 2, 3, 4, 5 and so forth, and the next row. I'll start with juror number 1. I'll move -- or I'll ask the government first, "Mr. Lammers, do you wish to exercise a peremptory strike as to prospective juror 1?" If Mr. Lammers says "Yes," 1 is out. If Mr. Lammers says "No," then I'll turn to Mr. Goldensoph and ask if you'd like to exercise a peremptory strike. If you exercise it, that juror is gone. If you don't exercise it, then that juror is now on the jury. We will move then to juror number 2, down the row, and now it's going to be Mr. Goldensoph's turn to go first, "Do you exercise or not?" Then to Mr. Lammers, "Do you exercise or not?" And then if the -- neither one of them exercises, then juror number 2 is on the jury.

We continue to go down the rows until we have 13

jurors seated. That will be -- the first 12 will be the jury and the last one not struck will be the alternate. That's regardless of whether other people have been replaced during the jury selection process for cause. So let's say, for example, juror number 2 I excused as a hardship or on a motion for cause, and so juror number 2 might have been seated technically later than the other jurors, but if we passed over that juror, that juror is now on the jury; and it's the last juror not struck who will be the alternate.

Once we get to 13 jurors who have not been struck, that is our jury regardless of whether the parties have fully exercised all of their peremptory strikes or not. And so if you have reserved peremptory strikes in anticipation of later jurors and you haven't exercised them, then you are done. There is no back striking, so once you get to that point, you can't now go back and say, "Well, now that I know that, I want to go back and strike juror number 2." It's too late. Once we pass over a juror, that juror is on the jury and there's no back striking.

Mr. Lammers, do you understand the methodology?

MR. LAMMERS: I understand it.

THE COURT: I won't ask if you are happy about it. Do you have any objections to the methodology?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

MR. LAMMERS: I don't have any objections at this point, Your Honor.

THE COURT: Very good. Mr. Goldensoph?

MR. GOLDENSOPH: Your Honor, I do understand. The only reservation I really have with this method is -- aside from it's not at all what I'm used to, the not having them there while we're striking is substantially different enough that I think that may be the most difficult part about this, although in -- I did read your law review article regarding this. And to be honest with you, after -- my initial reaction upon seeing your order was I didn't like it. But then I read the article and I thought I kind of like it.

Like I said though, the only reservation I have about it is just not being able to see them sometimes does make it a little bit more difficult, and that's even with taking good notes and whatnot. So I guess, like I said -- I mean, I'm not specifically objecting or anything like that, but I'm just putting that particular reservation on the record.

THE COURT: And I understand the reservation, and it is somewhat of a disadvantage in that sense. It just requires you to -- if you know you are not going to be able to eyeball them when you are making these decisions, you're just going to have to think about that

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

as you are making notes and plan for it in advance. But I think this method is more efficient. It keeps the delays down for the jury. They're not sitting there watching you exercise peremptory strikes and trying to calculate what you are doing and why you are doing it and who is striking them or trying to read into your expression whether you like them or dislike them. And as I indicated in the article, I think it is a more random and in that way more fair system to use, and so that will be the method we will be using.

All right. Let me go through my voir dire. There's some questions I'll have of defense counsel primarily about how we're going to do this and exactly what I am going to say. When I'm introducing the people in the courtroom, Mr. Goldensoph, sometimes I introduce the US marshals and sometimes I don't depending on defense counsel's preference. When I introduce them, I simply indicate that they are deputy US marshals and I say they're in the courtroom whenever the judge is. My concern is that jurors are watching them. If we don't introduce them, they're wondering who they are. They sometimes change out in the course of the trial, which draws attention to them, and I don't want the jurors to draw some type of conclusion from them. On the other hand, it draws attention to them. And so some defense

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

 counsel want me to do that. Some don't. And I'll do whatever you want.

MR. GOLDENSOPH: Your Honor, I guess my preference is to introduce them. That way the jury just knows they're in the courtroom whenever the judge is. I mean, I think that would be -- I think that's pretty understandable to most people who see the Secret Service with the President or other dignitaries, so it makes sense and I like that idea.

THE COURT: All right. I will do that.

I'll go through a few things in my voir dire. I will read the parties' statement of the case, which I don't have yet but I'm sure I will soon. I will go through the witness lists by the parties. When I go through the witness lists, I don't give attribution, so I won't say "These are the government's witnesses" and "These are the defense witnesses." I'll simply read a list of witnesses, and I'll tell the jurors that these are the names of people who will either appear as witnesses in the case or whose names may come up during the course of the trial. And so with that in mind, I intend to mention the person who passed away or overdosed on the drugs. Her [sic] name will come up during the trial. And if there are other names like that, that are going to come up during the trial, even if the parties

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

aren't going to call them as witnesses, if you can alert me to that so I can include them in the list, I'd appreciate that.

I will then ask the jurors if they have law enforcement connections, worked in a law enforcement capacity, family members in a law enforcement capacity; whether they have any conflicts with anybody in government, tax disputes, that kind of thing; if they've had trouble with law enforcement that would make it difficult for them to be fair and impartial; or ties with law enforcement that would make it difficult to be fair and impartial to the defendant.

I'll ask if anybody's had prior jury service. And when I ask these, I ask a series of follow-up questions. I ask whether it's a civil or criminal case, federal or state, if they reached a verdict and what the verdict is, and whether the person served as a foreperson. If you want more information from them, you can follow-up with them after that.

I ask if anybody has ever testified as a witness in any type of trial or hearing, other than a family law matter like divorce or custody. I just ask for a show of hands. I don't ask any follow-up questions, other than a general question of whether in that capacity -- whether serving in that capacity is going to affect their ability

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

to be fair and impartial, but you are welcome to ask follow-up questions.

I'll find out if anybody knows each other.

I'll cover the government's burden of proof and the presumption of innocence.

Mr. Stevenson is African-American. And I will discuss that at the defendant's request or not, depending on what you want, Mr. Goldensoph. And so when I do that, I typically tell a story on myself. My best friend in Washington, D.C., when I was out there, was African-American. He invited me to a -- or his wife invited me to a surprise birthday party for him, and I showed up and I was the only white person there. And I recognized that everybody there was probably making assumptions about my political views and my background and everything else because of the color of my skin, and that it made me realize for the first time what it was like to be of a minority with other people. And then I turn that into a discussion about how the criminal law and justice is blind, and that the defendant's race in this case has nothing to do with whether the government can prove its case or not and they cannot make any decision based on the defendant's race and they have to set that aside.

Some defense counsel want me to do that. Some

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

don't. And I'll do whatever you want, Mr. Goldensoph.

MR. GOLDENSOPH: May I have a moment, Your Honor.

THE COURT: Of course.

(Whereupon, counsel conferred with the defendant.)

MR. GOLDENSOPH: Your Honor, we would like for you to go through that questioning.

THE COURT: Very good, I will do that.

I will also cover the defendant's right to remain silent, indicating I don't know if he's going to testify or not, but if he does not, the jury cannot take that into account.

I will talk to them about drugs and whether any of them have been affected by drugs, their family or loved ones, in a way that would interfere with their ability to be fair and impartial. I'll ask about if any of them are so pro legalization that they could not sit as a juror in this case and be fair and impartial and follow the law as I give it to them.

There's no charges, Mr. Lammers, involving firearms, but are firearms going to come out or come up at all in this case?

MR. LAMMERS: Not unless I've missed something in the case. I don't believe so, Your Honor.

THE COURT: Would the government want me to

address anything regarding overdose or overdose evidence
in my voir dire, or do you want to handle that yourself?

       MR. LAMMERS:  I'm not asking the Court to
address it.  I may or may not address it.  Frankly, it's
going to be -- there is an overdose but in one sense it's
almost peripheral to the rest of the case.  So it will
come up and I think necessarily comes up.  It has to
because we find heroin next to the deceased man, and then
in his blood, but most of the case is not going to be
about the overdose.  There will be some reference to it,
but most of it will not be about that.

       THE COURT:  Okay.  Mr. Goldensoph, do you want
me to address anything about an overdose death?

       MR. GOLDENSOPH:  No, Your Honor.

       THE COURT:  All right.  I will not do that
then.  That concludes my voir dire.

    Mr. Lammers, is there anything that bothered you or
you have concerns about in my voir dire, or anything else
you'd like me to address that I am not?

       MR. LAMMERS:  Not in regards to voir dire, Your
Honor.  Thank you.

       THE COURT:  Very good.  Mr. Goldensoph?

       MR. GOLDENSOPH:  No, Your Honor.

       THE COURT:  All right.  All right.  I want to
talk just briefly about my courtroom preferences, and

then talk briefly about the motion in limine. First of all, regarding my courtroom preferences, you are free to move about the well of the courtroom during openings and closings as much as you want. And use your own judgment on how close you want to get to the jury. I think they have personal space issues, and it's -- you can decide whether you want to invade that or not; but you have freedom to move about the well of the courtroom as you think is appropriate during opening and closing.

You do not have to ask permission to approach the bench or witnesses, so long as you are approaching a witness for the purpose of handing them an exhibit or a document or something for refreshing recollection. I don't want you hanging out by the witness unless there's a good reason for it. So if you are handing them an exhibit, don't ask them questions about the exhibit standing next to them. Go back to the podium or go back to your chair and ask questions from that location.

I permit one redirect and one recross, and so there will be no re-redirects or re-recrosses.

I don't like sidebars. I don't think they're a good idea. I think juries speculate about what we are all talking about over there, and I think their speculation oftentimes results in more prejudice to the parties because they're thinking of things we are talking about

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

that we're not talking about and we have no control over their speculation.

That said, I also tried cases and I recognize that sometimes things happen, and you know your case better than I do and you know when we really need to talk outside the presence of the jury. So I'll trust your judgment. If you think we need a sidebar, ask for it and I'll grant that. I just caution you to avoid them. I will be available before trial and after trial every day, and I'll come in early before we start in after lunch and I'll be available during breaks. So if it can wait until the next break to talk about it, whatever the issue is, that's probably the better course.

I don't like speaking objections, and so object, state the rule or the basis for the objection. And unless I ask for it, I don't want to hear a long explanation for why you think something is objectionable. I'll often rule on the objection without waiting for a response if I'm going to overrule it. If I'm going to sustain it, I'll typically request -- or if I'm thinking I might sustain it, I'll typically entertain a reaction or a response from the other side.

Those are all my courtroom preferences that I can think of. Mr. Lammers, do you have any questions about that issue?

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

MR. LAMMERS: Not specifically about your courtroom preferences. I have a question about the schedule. Are we doing the shorter 8:30 to 2:30, or are we doing the 9 to 5, or both?

THE COURT: We're doing 9 to 5 the first day, and then after that -- our trial scheduling order is at document number 46, and after the first day, we're doing the 8:30 to 2:30 schedule.

MR. LAMMERS: I'm sorry, I've reviewed the order but I didn't recall that specific portion.

THE COURT: That's fine. Yeah, that's fine. So we will do that after the first day, 8:30 to 2:30, with two 20-minute breaks.

Mr. Goldensoph, any questions on that issue?

MR. GOLDENSOPH: No, Your Honor.

THE COURT: All right. Mr. Lammers, I've reviewed the motion in limine and the defendant's brief, and your brief -- or your response isn't due until today or tomorrow or something like that. I don't need to take this up at this point and I can wait until you file your response, but if you wanted to discuss it or have any type of oral discussion about it today, that's fine too. Whatever you want to do.

MR. LAMMERS: Thank you, Your Honor. I can address it briefly if the Court would like. We will have

 a response on file today. In regards to the second portion of the motion in limine, I believe that is the discussion with the investigator and Mr. Stevenson, when Mr. Stevenson was in the Dubuque County Jail. We don't intend to offer any evidence of that, so I don't think that's going to be an issue.

With the first portion of the motion in limine, I guess just a little background is in order. So Adam Birch purchased heroin and then overdosed from that and maybe in conjunction with some other drugs, on or about February 2nd, I think early morning. In the course of the investigation, we spoke to another witness in this case who's going to be a witness at trial, and she says that she knew that the heroin came from the defendant, and she said --

THE COURT: That Mr. Birch used?

MR. LAMMERS: Yes, I'm sorry, I should have been more clear. The heroin that Mr. Birch used, she said she knew that that came from the defendant, and she says that she also overdosed on heroin that she believes was from basically the same batch. And there's some conversation that she has with law enforcement in regards to that, about how strong that heroin was. And I think she also says at one point she used heroin twice that day, once the heroin from the defendant, and then was

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

extraordinarily high. And because of that, when she used heroin the second time, that she overdosed. But she intends -- or she has offered the opinion to law enforcement that she also had some of the strong heroin from the defendant.

The motion in limine seeks to preclude that testimony and I believe really only that testimony. I don't think he's trying to preclude anything else that Emily Nelson is going to say, but we are requesting that the Court allow that testimony. That testimony is relevant, and we'll flesh this out more fully in our response, but the testimony is relevant. I think the objection is that it's unduly prejudicial, and my response would be, of course it's prejudicial. All evidence that we intend to introduce -- or nearly all evidence is prejudicial. That's the point of it. But the question is whether it's unfairly prejudicial. And in this particular case I would submit it's not unfairly prejudicial. She has an opinion about the heroin and about the strength of the heroin based on her use of heroin. And if she has an inconsistent -- if her testimony is inconsistent, as the defendant has alleged, that is absolutely perfect fodder for cross-examination. It's not a reason to preclude the testimony. So based on that, and I guess some other things that we'll flesh out

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

a little bit more in the response, Your Honor, we're requesting that the Court grant in part the motion in limine and deny in the other part.

THE COURT: Can you give me just a feel, how does this witness know that the heroin that Mr. Birch used was the same heroin that came from the defendant?

MR. LAMMERS: The defendant told her.

THE COURT: Okay.

MR. LAMMERS: The defendant made an admission to her. She was buying heroin from the defendant. She was in contact with the defendant. In fact, she's going to testify that she's the one that then hooked them back up once Adam Birch got out of jail. Adam Birch was in jail, got out, and he was asking -- maybe didn't have the phone number of the defendant, was asking Emily Nelson for the phone number -- and I can't remember which way it is. Either Michael Stevenson was asking for Adam Birch's number or Adam Birch was asking for Michael Stevenson's. She didn't feel comfortable because she didn't want to have Adam Birth get back into it again, but then she turned around and gave the number to the other party and then they began to have a drug relationship. And she's going to testify as to her knowledge of the defendant. She will testify as to her dealings with the defendant. She'll testify as to her purchases of heroin from the

 defendant and her conversations with the defendant about his sales to Adam Birch.

THE COURT: Thank you. Mr. Goldensoph.

MR. GOLDENSOPH: Thank you, Your Honor. First of all, I want to address the notion that she says my client told her that "Yeah, I'm the one who sold Adam Birch the drugs." That -- I mean, I can't get that excluded; that would be a statement by the defendant, prior statement. But that's very questionable with regards to her credibility there. She stated twice before to the cops -- I mean, she had talked with the cops twice before with regards to that. That one never came up despite talking about that very scenario, and when she told the cops, "Yeah, Michael sold Adam those drugs," it was in a situation where she wanted to get out of jail. She was clearly trying to get out of jail at that point, so that there is questionable at best.

Now, with regards to her statements regarding "It was Michael's drugs that caused me to overdose," earlier on in the conversation, Judge, she says it was this other guy's drugs that caused her to overdose. And so later on when she says, you know, "The drugs that I overdosed on were from the same batch that Adam Birch got," the cop says, "Whoa, whoa, whoa! You told me earlier that it was this other guy's drugs that you overdosed on," and then

she says, "Well, I got drugs from Michael earlier that day, used them, I was super high. And later on that -- and I didn't overdose at that point. And later on that day, I got drugs from this other guy and I overdosed."

So, first of all, she's not a doctor, so she can't opine that "Yeah, it was actually Michael's drugs that caused me to overdose," so that's one thing. The other thing, Judge, is, you know, this -- the reason why I think this is excludable is because that particular testimony is either, A, speculative, or, B, just an out-and-out lie, because at that time, when she's saying that, she's wanting to get out of jail and her story changed in that conversation. And, you know, that's the reason why we think it's excludable.

And not only that, but as Mr. Lammers pointed out, Adam Birch's overdose is peripheral. I mean, what they've alleged is my client sold Adam Birch drugs on February 1, 2017. That's it. They're not alleging that -- the death in the indictment. And so whether or not those drugs caused the death is not part of the -- it's not something for the jury to consider. So whether somebody else later on overdosed on drugs from Mr. Stevenson is not -- I don't think it's relevant, frankly. And if it is relevant -- I just don't know how it's relevant, to be honest with you, because that death

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

is not part of what the jury is here to decide.

Now, she's going to testify that my client sold her drugs in the past, and so I can't get that excluded. But whether or not she overdosed on some of those drugs is not part of this case. The overdose is not part of this case, and that's why I think it's not relevant. And even if it is, to the extent it is relevant, the probative value is de minimis, and that's obviously very prejudicial against my client. And with the speculation of, "Oh, it was his that caused me to overdose," with her not having any sort of medical knowledge, is just over the top. So that's the reason why we don't believe her evidence should be admitted.

THE COURT: Thank you. I am going to rule on the motion in limine at this time, and I'm going to deny the motion in limine as to the first issue regarding the testimony by this Ms. Nelson. Relevant evidence as defined under Rule 401 is any evidence that has any tendency to make a fact of consequence more likely than without the evidence. The nature of the drug, the fact that there was another overdose, which is not a subject of a motion in limine, makes the potency of this drug by the defendant -- or that the defendant allegedly distributed, relevant; and the fact that there is another witness who is capable of testifying that she got heroin

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

from the defendant that is also tied to the heroin

provided to the person who overdosed and that she found

it to be powerful heroin is relevant to this case.

I don't find it unfairly prejudicial. The jury is

already going to hear about an overdose death in this

case. She clearly did not die. The fact that she's

going to testify that she felt that she overdosed from

the heroin, I anticipate the evidence is going to be that

she knows heroin, she's used heroin, she's experienced

with heroin, and she would know if she was overdosing or

not.

The fact that another supply of heroin or alcohol or

cocaine or anything else may have contributed to her

overdose doesn't negate the fact that in her view she

overdosed, in part, based on the heroin from the

defendant. It's not uncommon for overdoses to be the

result of polysubstance abuse, and, in this case, it's

the one substance used twice. And so I find nothing that

is inherently unfair there.

All the other issues raised by the defense regarding

the reliability of her testimony is a quintessential

basis for cross-examination. And so, you know, her

testimony may be absolutely uncredible -- or incredible,

but that's ultimately going to be for the jury to decide

after listening to her testimony and being subject to

cross-examination.

And so I'm not going to grant this in an order in limine. You may continue to still object at trial, Mr. Goldensoph, if you believe an objection is warranted, but I'm not going to bar the testimony in advance of trial.

I will grant the second portion of the motion in limine. The government is agreeing it's not going to introduce that testimony, and so that second part will be granted.

So, Mr. Lammers, you do not have to file any response.

MR. LAMMERS: Thank you. That was going to be my next question.

THE COURT: Mr. Lammers, that's everything on my agenda for today. Anything you want to talk about?

MR. LAMMERS: I don't believe so, Your Honor. I think we have -- I just don't think there's any other issues we need to take up. I've been in fairly frequent contact with Mr. Goldensoph to try and figure out -- making sure he has all the items he believes are necessary and we've been talking fairly routinely, or at least by e-mail, fairly routinely about exhibits and foundation and admissibility; and I think we hopefully will have this -- will know where the points of

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

         disagreement and the points of agreement are in advance of trial.

THE COURT: All right. And as with anything, the more notice the parties give me of any disputed issues that gives me some time to research or think about it the better. I meant to ask you, Mr. Lammers, are you going to have any video or audio recording in this case?

MR. LAMMERS: I haven't decided yet. There are video and audio recordings, and I haven't decided yet whether I'm going to play them or not. Right now, I'm leaning against, but there is a chance.

THE COURT: All right. We will not include anything in the jury instructions at this time then based on that.

And I should have made it clear too, and I think the parties know this, but we are instructing the jury before the evidence starts, and so I will be providing all but maybe a couple of the last instructions to the jury before opening statement. And then -- and then the last couple -- and then if something else arises during the trial, we can always add instructions at the end. They'll be told that there will be instructions, additional instructions, at the end of the trial as well, so if something comes up, we can add those.

All right. Mr. Goldensoph, what about you, is there

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

anything else that we need to talk about?

MR. GOLDENSOPH: Your Honor, can I have a moment?

THE COURT: Yes.

(Whereupon, counsel conferred with the defendant.)

MR. GOLDENSOPH: Your Honor, I guess I'd just alert the Court that there's a potential that we could be filing an additional requested jury instruction.

THE COURT: All right. That's fine. The timeframe for doing that I don't think has passed, but if it has, I'll still allow you to do that. Let's go ahead though and -- any additional proposed jury instructions, let's try to get in by close of business on Monday --

MR. GOLDENSOPH: Okay.

THE COURT: -- because I'm in trial all next week and I'm very busy, so I'm not going to have a lot of time to pull these together. So if you could do it by close of business Monday, would that be workable?

MR. GOLDENSOPH: Yes, Your Honor.

THE COURT: All right. Very good. Anything else, Mr. Goldensoph?

MR. GOLDENSOPH: No, Your Honor.

THE COURT: All right. Thank you.

MR. LAMMERS: Excuse me, Your Honor, I forgot to mention, I will have a case agent in this particular

case. I do anticipate him testifying, and I would like to potentially maybe call him at the beginning and at the end. He's both a fact witness and then potentially an expert witness, you know, in the sense of drug trafficking. So with the Court's permission I would like to -- I haven't talked about this with Mr. Goldensoph, but I would like to do that.

THE COURT: And typically I let the lawyers try their cases however they want to try their cases, and there's nothing in the rules that would prohibit a party from re-calling a witness that I am aware of.

But, Mr. Goldensoph, do you have any objection to that?

(Whereupon, counsel conferred with the defendant.)

MR. GOLDENSOPH: Your Honor, I have no objections.

THE COURT: All right. Very good. Anything else, Mr. Lammers?

MR. LAMMERS: No, Your Honor. Thank you.

THE COURT: All right. Thank you, counsel. That concludes the hearing.

(Proceedings concluded at 10:46 a.m.)

*Contact Patrice Murray at 319-286-2338 or patrice_murray@iand.uscourts.gov to purchase a complete copy of the transcript.*

C E R T I F I C A T E

I, Patrice A. Murray, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that at the time and place heretofore indicated, a hearing was held before the Honorable C.J. Williams; that I reported in shorthand the proceedings of said hearing, reduced the same to print to the best of my ability by means of computer-assisted transcription under my direction and supervision, and that the foregoing transcript is a true record of all proceedings had on the taking of said hearing at the above time and place.

I further certify that I am not related to or employed by any of the parties to this action, and further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have set my hand this 14th day of July, 2019.

/s/ Patrice A. Murray____________________
Patrice A. Murray, CSR, RPR, RMR, FCRR
United States District Court, NDIA
111 Seventh Avenue S.E., Box 4
Cedar Rapids, Iowa 52401-2101

## /

**/s** [1] - 34:12

## 1

**1** [5] - 11:10, 11:12, 11:14, 27:18
**10** [1] - 2:22
**10:46** [1] - 33:22
**111** [3] - 1:17, 1:24, 34:14
**11th** [1] - 1:17
**12** [2] - 2:22, 12:1
**13** [2] - 11:25, 12:11
**14th** [1] - 34:10
**18-CR-1023** [2] - 1:5, 2:4

## 2

**2** [6] - 11:10, 11:19, 11:23, 12:5, 12:6, 12:19
**20-minute** [1] - 22:13
**2017** [1] - 27:18
**2019** [2] - 1:17, 34:11
**286-2338** [1] - 1:25
**29** [1] - 9:19
**2:30** [3] - 22:3, 22:8, 22:12
**2nd** [1] - 23:11

## 3

**3** [2] - 5:18, 11:10
**30** [2] - 10:9, 10:20
**319** [1] - 1:25

## 4

**4** [4] - 1:24, 5:18, 11:10, 34:14
**401** [1] - 28:18
**41** [1] - 10:24
**425** [1] - 1:12
**46** [1] - 22:7
**4th** [1] - 1:10

## 5

**5** [4] - 5:18, 11:10, 22:4, 22:5
**51101** [1] - 1:10
**52401** [1] - 1:12
**52401-2101** [2] - 1:24, 34:14

## 6

**600** [1] - 1:10
**670** [1] - 1:10

## 7

**700** [1] - 9:9

## 8

**803** [1] - 1:12
**8:30** [3] - 22:3, 22:8, 22:12

## 9

**9** [2] - 22:4, 22:5
**9:57** [1] - 1:18

## A

**a.m** [2] - 1:18, 33:22
**ability** [3] - 16:25, 18:15, 34:4
**able** [8] - 3:3, 6:4, 6:8, 6:12, 6:17, 11:4, 13:15, 13:24
**absolutely** [2] - 24:23, 29:23
**abuse** [1] - 29:17
**accept** [3] - 5:24, 6:3, 7:15
**acceptance** [2] - 6:25, 7:11
**accepted** [1] - 9:6
**accommodations** [1] - 8:2
**account** [1] - 18:12
**action** [2] - 34:8, 34:9
**Adam** [12] - 23:8, 25:13, 25:17, 25:18, 25:20, 26:2, 26:6, 26:14, 26:23, 27:16, 27:17
**add** [3] - 3:20, 31:21, 31:24
**additional** [3] - 31:23, 32:8, 32:12
**address** [8] - 5:3, 19:1, 19:4, 19:13, 19:19, 22:25, 26:5
**adequate** [1] - 6:7
**admissibility** [1] - 30:24
**admission** [1] - 25:9
**admitted** [1] - 28:13
**advance** [3] - 14:1, 30:5, 31:1
**affect** [1] - 16:25
**affected** [1] - 18:14
**African** [2] - 17:6, 17:11
**African-American** [2] - 17:6, 17:11
**agenda** [1] - 30:16
**agent** [1] - 32:25
**agreed** [1] - 7:9
**agreeing** [1] - 30:8
**agreement** [6] - 3:18, 6:22, 7:8, 7:13, 7:21, 31:1
**ahead** [1] - 32:11
**alcohol** [1] - 29:12
**alert** [2] - 16:1, 32:7
**alleged** [2] - 24:22, 27:17
**allegedly** [1] - 28:23
**alleging** [1] - 27:18
**allow** [2] - 24:10, 32:11
**allowed** [2] - 6:15, 6:16
**almost** [1] - 19:6
**altered** [1] - 4:2
**alternate** [2] - 12:2, 12:10
**America** [1] - 2:3
**AMERICA** [1] - 1:3
**American** [2] - 17:6, 17:11
**anoint** [1] - 8:25
**answer** [1] - 11:2
**anticipate** [4] - 4:5, 4:21, 29:8, 33:1
**anticipation** [1] - 12:15
**appear** [1] - 15:19
**appearance** [1] - 2:18
**APPEARANCES** [1] - 1:9
**appeared** [2] - 1:10, 1:12
**appreciate** [2] - 4:8, 16:3
**approach** [1] - 20:10
**approaching** [1] - 20:11
**appropriate** [3] - 5:10, 8:24, 20:9
**April** [1] - 1:17
**area** [1] - 9:6
**argument** [1] - 10:2
**arises** [1] - 31:20
**Arizona** [1] - 3:3
**article** [3] - 13:10, 13:12, 14:8
**aside** [2] - 13:6, 17:24
**Assistant** [1] - 2:6
**assisted** [1] - 34:5
**assumptions** [1] - 17:15
**attend** [1] - 6:17
**attention** [2] - 14:23, 14:25
**ATTORNEY** [1] - 1:10
**Attorney** [2] - 2:7, 2:8
**attorney** [2] - 1:12, 34:9
**attorneys** [1] - 10:5
**attribution** [1] - 15:15
**audio** [2] - 31:7, 31:9
**available** [2] - 21:9, 21:11
**Avenue** [3] - 1:17, 1:24, 34:14
**avoid** [1] - 21:8
**aware** [3] - 6:1, 7:18, 33:11

## B

**background** [3] - 9:2, 17:15, 23:8
**bar** [1] - 30:5
**based** [7] - 6:5, 7:21, 17:23, 24:20, 24:24, 29:15, 31:13
**basis** [3] - 9:8, 21:15, 29:22
**batch** [2] - 23:21, 26:23
**BEFORE** [1] - 1:16
**began** [1] - 25:22
**beginning** [1] - 33:2
**behalf** [2] - 1:11, 1:12
**believes** [3] - 9:8, 23:20, 30:21
**bench** [1] - 20:11
**best** [4] - 4:11, 17:9, 26:17, 34:4
**better** [3] - 21:4, 21:13, 31:6
**Birch** [11] - 23:9, 23:16, 23:18, 25:5, 25:13, 25:18, 26:2, 26:7, 26:23, 27:17
**Birch's** [2] - 25:17, 27:16
**Birth** [1] - 25:20
**birthday** [1] - 17:12
**bit** [6] - 4:12, 4:13, 8:12, 9:17, 13:16, 25:1
**blind** [1] - 17:20
**blood** [1] - 19:9
**bothered** [1] - 19:17
**box** [2] - 9:20, 9:21
**Box** [2] - 1:24, 34:14
**break** [1] - 21:12
**breaks** [2] - 21:11, 22:13
**brief** [2] - 22:17, 22:18
**briefly** [3] - 19:25, 20:1, 22:25
**bring** [1] - 6:22
**burden** [1] - 17:4
**business** [2] - 32:13, 32:18
**busy** [1] - 32:16
**buying** [1] - 25:10

## C

**C.J** [2] - 1:16, 34:3
**calculate** [1] - 14:5
**call** [4] - 2:21, 9:1, 16:1, 33:2
**called** [1] - 9:19
**calling** [3] - 3:24, 4:5, 33:11
**cannot** [2] - 17:22, 18:11
**capable** [1] - 28:25
**capacity** [4] - 16:6, 16:24, 16:25
**care** [1] - 5:25
**case** [26] - 3:13, 3:23, 4:24, 8:8, 8:17, 15:12, 15:20, 16:15, 17:21, 17:22, 18:18, 18:22, 18:24, 19:6, 19:9, 21:4, 23:13, 24:18, 28:5, 28:6, 29:3, 29:6, 29:17, 31:7, 32:25, 33:1
**Case** [1] - 2:4
**cases** [4] - 8:23, 21:3, 33:9
**caused** [5] - 26:19, 26:21, 27:7, 27:20, 28:10
**caution** [1] - 21:8
**Cedar** [4] - 1:12, 1:18, 1:24, 34:14
**Certified** [2] - 1:19, 34:2
**certify** [2] - 34:2, 34:7
**chair** [1] - 20:18
**chance** [1] - 31:11

**change** [1] - 14:22
**changed** [1] - 27:13
**charges** [1] - 18:20
**chemist** [1] - 9:16
**chose** [1] - 7:20
**City** [1] - 1:10
**civil** [1] - 16:15
**clear** [2] - 23:18, 31:15
**clearly** [2] - 26:16, 29:6
**client** [4] - 26:6, 27:17, 28:2, 28:9
**close** [3] - 20:5, 32:13, 32:18
**closing** [1] - 20:9
**closings** [1] - 20:4
**co** [1] - 2:18
**co-counsel** [1] - 2:18
**cocaine** [1] - 29:13
**color** [1] - 17:16
**comfortable** [2] - 5:7, 25:19
**commencing** [1] - 1:18
**completely** [1] - 8:9
**computer** [1] - 34:5
**computer-assisted** [1] - 34:5
**concern** [2] - 5:25, 14:20
**concerns** [1] - 19:18
**concluded** [1] - 33:22
**concludes** [2] - 19:16, 33:21
**conclusion** [1] - 14:24
**conduct** [1] - 10:7
**conference** [1] - 2:5
**CONFERENCE** [1] - 1:15
**conferred** [3] - 18:5, 32:5, 33:14
**conflict** [1] - 4:21
**conflicts** [1] - 16:7
**conjunction** [1] - 23:10
**connections** [1] - 16:5
**consequence** [1] - 28:19
**consider** [1] - 27:21
**consist** [1] - 9:23
**contact** [2] - 25:11, 30:20
**contacting** [1] - 3:14
**continue** [2] - 11:25, 30:3
**contributed** [1] - 29:13
**control** [1] - 21:1
**convention** [2] - 5:8, 5:11
**conversation** [3] - 23:22, 26:20, 27:13
**conversations** [1] - 26:1
**cooperative** [1] - 3:11
**cop** [1] - 26:23
**cops** [3] - 26:11, 26:12, 26:14
**corner** [1] - 11:9
**CORY** [1] - 1:12
**Cory** [1] - 2:8
**counsel** [11] - 2:18, 10:2, 11:1, 14:12, 15:1, 17:25, 18:5, 32:5, 33:14, 33:20, 34:9
**counsel's** [1] - 14:17
**counts** [1] - 8:15
**Counts** [1] - 5:18
**County** [1] - 23:4
**couple** [2] - 31:18, 31:20
**course** [7] - 6:24, 14:22, 15:21, 18:4, 21:13, 23:11, 24:14
**Court** [13] - 1:23, 2:3, 3:12, 3:14, 5:3, 8:24, 10:14, 19:3, 22:25, 24:10, 25:2, 32:7, 34:13
**COURT** [55] - 1:1, 2:2, 2:16, 2:20, 2:23, 2:25, 3:5, 3:15, 3:20, 4:8, 4:23, 5:5, 5:14, 5:22, 6:18, 7:5, 7:17, 7:20, 7:24, 8:5, 8:7, 8:19, 8:22, 9:13, 9:17, 12:24, 13:3, 13:21, 15:10, 18:4, 18:8, 18:25, 19:12, 19:15, 19:22, 19:24, 22:5, 22:11, 22:16, 23:16, 25:4, 25:8, 26:3, 28:14, 30:15, 31:3, 31:12, 32:4, 32:9, 32:15, 32:20, 32:23, 33:8, 33:17, 33:20
**court** [2] - 2:1, 5:2
**Court's** [3] - 6:24, 7:9, 33:5
**courtroom** [11] - 9:20, 9:22, 14:15, 14:19, 15:5, 19:25, 20:2, 20:3, 20:8, 21:23, 22:2
**cover** [3] - 10:7, 17:4, 18:9
**credibility** [1] - 26:10
**Criminal** [1] - 2:4
**criminal** [2] - 16:15, 17:19
**cross** [3] - 24:23, 29:22, 30:1
**cross-examination** [3] - 24:23, 29:22, 30:1
**CSR** [2] - 1:23, 34:13
**custody** [3] - 2:23, 3:4, 16:22

## D

**D.C** [1] - 17:10
**dark** [1] - 8:12
**days** [2] - 2:12, 2:13
**de** [1] - 28:8
**deadline** [5] - 6:23, 6:24, 7:1, 7:6, 7:9
**dealings** [1] - 25:24
**death** [7] - 8:14, 8:16, 19:13, 27:19, 27:20, 27:25, 29:5
**deceased** [1] - 19:8
**decide** [3] - 20:6, 28:1, 29:24
**decided** [2] - 31:8, 31:9
**decision** [5] - 6:2, 6:3, 6:5, 6:7, 17:23
**decisions** [1] - 13:25
**decrease** [1] - 4:3
**DEFENDANT** [4] - 6:4, 7:16, 7:19, 7:23
**defendant** [31] - 2:7, 4:24, 5:17, 7:2, 7:6, 7:10, 9:10, 16:12, 18:5, 23:14, 23:19, 23:25, 24:5, 24:22, 25:6, 25:7, 25:9, 25:10, 25:11, 25:15, 25:23, 25:24, 26:1, 26:8, 28:23, 29:1, 29:16, 32:5, 33:14
**Defendant** [2] - 1:7, 1:13
**defendant's** [5] - 17:7, 17:20, 17:23, 18:9, 22:17
**defense** [9] - 5:20, 9:7, 10:19, 14:12, 14:16, 14:25, 15:17, 17:25, 29:20
**defense's** [1] - 2:15
**defined** [1] - 28:18
**delays** [1] - 14:3
**deny** [2] - 25:3, 28:15
**Department** [1] - 1:10
**depending** [2] - 14:16, 17:7
**deputy** [1] - 14:18
**described** [1] - 10:21
**describing** [1] - 10:24
**despite** [1] - 26:13
**die** [1] - 29:6
**different** [4] - 4:1, 5:9, 13:8
**difficult** [4] - 13:9, 13:16, 16:10, 16:11
**dignitaries** [1] - 15:8
**dire** [11] - 10:7, 10:9, 10:10, 10:11, 10:22, 14:11, 15:11, 19:2, 19:16, 19:18, 19:20
**direction** [1] - 34:5
**disadvantage** [1] - 13:22
**disagreement** [1] - 31:1
**disclosures** [2] - 6:9, 6:10
**discovery** [1] - 6:11
**discuss** [2] - 17:7, 22:21
**discussion** [3] - 17:19, 22:22, 23:3
**dislike** [1] - 14:7
**disputed** [1] - 31:4
**disputes** [1] - 16:8
**distributed** [1] - 28:24
**District** [2] - 1:23, 34:13
**DISTRICT** [2] - 1:1, 1:1
**divorce** [1] - 16:22
**doctor** [1] - 27:5
**document** [3] - 10:24, 20:13, 22:7
**done** [3] - 10:8, 10:10, 12:16
**down** [4] - 11:10, 11:19, 11:25, 14:3
**draw** [1] - 14:24
**draws** [2] - 14:23, 14:25
**drug** [4] - 25:22, 28:20, 28:22, 33:4
**drugs** [18] - 15:23, 18:13, 18:14, 23:10, 26:7, 26:15, 26:19, 26:21, 26:22, 26:25, 27:1, 27:4, 27:6, 27:17, 27:20, 27:22, 28:3, 28:4
**Dubuque** [1] - 23:4
**ducking** [1] - 3:9
**due** [2] - 8:11, 22:18
**during** [9] - 2:18, 12:4, 15:20, 15:23, 15:25, 20:3, 20:9, 21:11, 31:20

## E

**e-mail** [1] - 30:23
**early** [3] - 8:9, 21:10, 23:11
**efficient** [1] - 14:2
**either** [3] - 15:19, 25:17, 27:10
**eligible** [1] - 7:10
**Emily** [2] - 24:9, 25:15
**employed** [2] - 34:8, 34:9
**employee** [1] - 34:8
**end** [3] - 31:21, 31:23, 33:3
**enforcement** [7] - 16:5, 16:6, 16:9, 16:11, 23:22, 24:4
**enter** [2] - 7:20, 7:22
**entered** [2] - 2:17, 10:23
**entertain** [2] - 10:2, 21:21
**establish** [2] - 9:1, 9:3
**established** [1] - 9:8
**estimate** [1] - 4:13
**estimated** [1] - 2:10
**estimates** [2] - 4:11
**event** [1] - 7:17
**evidence** [11] - 8:16, 19:1, 23:5, 24:15, 24:16, 28:13, 28:17, 28:18, 28:20, 29:8, 31:17
**Evidence** [1] - 9:10
**exactly** [2] - 7:16, 14:13
**examination** [3] - 24:23, 29:22, 30:1
**examiner** [1] - 9:15
**example** [1] - 12:5
**excludable** [2] - 27:9, 27:14
**excluded** [2] - 26:8, 28:3
**excuse** [3] - 11:4, 11:8, 32:24
**excused** [2] - 11:8, 12:5
**excuses** [3] - 9:24, 10:1, 10:6
**exercise** [9] - 10:23, 10:25, 11:13, 11:16, 11:17, 11:18, 11:21, 11:22, 14:4
**exercised** [2] - 12:13, 12:15
**exercises** [1] - 11:23
**exercising** [1] - 11:5
**exhibit** [3] - 20:12, 20:16
**exhibits** [1] - 30:23
**experienced** [1] - 29:9
**expert** [6] - 8:19, 8:25, 9:5, 9:6, 9:11, 33:4
**experts** [1] - 9:13
**expired** [1] - 6:20
**explain** [1] - 9:21
**explaining** [1] - 9:23

**explanation** [1] - 21:17
**expression** [1] - 14:7
**extent** [1] - 28:7
**extraordinarily** [1] - 24:1
**eyeball** [2] - 11:5, 13:24

## F

**fact** [9] - 6:6, 25:11, 28:19, 28:20, 28:24, 29:6, 29:12, 29:14, 33:3
**fair** [8] - 6:16, 7:22, 14:9, 16:10, 16:11, 17:1, 18:16, 18:18
**fairly** [4] - 3:11, 30:19, 30:22, 30:23
**family** [3] - 16:6, 16:21, 18:14
**FCRR** [2] - 1:23, 34:13
**February** [2] - 23:11, 27:18
**federal** [1] - 16:15
**feel** [4] - 6:14, 7:14, 25:4, 25:19
**felt** [1] - 29:7
**few** [1] - 15:11
**figure** [2] - 2:9, 30:20
**file** [3] - 22:20, 23:1, 30:11
**filing** [1] - 32:8
**final** [1] - 2:5
**FINAL** [1] - 1:15
**financially** [1] - 34:9
**find** [5] - 3:12, 17:3, 19:8, 29:4, 29:18
**fine** [4] - 22:11, 22:22, 32:9
**firearms** [2] - 18:20, 18:21
**first** [17] - 2:9, 2:17, 4:25, 9:24, 11:3, 11:12, 11:21, 12:1, 17:17, 20:1, 22:5, 22:7, 22:12, 23:7, 26:4, 27:5, 28:16
**flesh** [2] - 24:11, 24:25
**fodder** [1] - 24:23
**follow** [5] - 16:14, 16:18, 16:23, 17:2, 18:18
**follow-up** [4] - 16:14, 16:18, 16:23, 17:2
**following** [2] - 2:1, 5:10
**FOR** [1] - 1:1
**for-cause** [2] - 10:14, 10:21
**foregoing** [1] - 34:5
**foreperson** [1] - 16:17
**forgot** [1] - 32:24
**form** [1] - 8:16
**formal** [2] - 4:23, 5:15
**formalities** [1] - 5:6
**formally** [2] - 8:25, 9:5
**forth** [1] - 11:11
**forward** [1] - 9:19
**foundation** [2] - 9:2, 30:24
**four** [3] - 2:13, 4:1, 4:5
**frankly** [4] - 3:16, 6:21, 19:4, 27:24
**free** [1] - 20:2
**freedom** [1] - 20:8
**frequent** [1] - 30:19
**friend** [1] - 17:9
**front** [2] - 9:20, 10:15
**fully** [2] - 12:13, 24:11

## G

**gather** [1] - 8:14
**general** [1] - 16:24
**get** [15] - 3:4, 3:13, 10:16, 10:22, 11:3, 12:11, 12:17, 20:5, 25:20, 26:7, 26:15, 26:16, 27:12, 28:3, 32:13
**getting** [5] - 3:6, 4:15, 4:16, 4:20, 4:22
**give** [6] - 2:16, 3:23, 15:15, 18:19, 25:4, 31:4
**gives** [1] - 31:5
**GOLDENSOPH** [18] - 1:12, 3:25, 4:17, 8:6, 13:4, 15:3, 18:2, 18:6, 19:14, 19:23, 22:15, 26:4, 32:2, 32:6, 32:14, 32:19, 32:22, 33:15
**Goldensoph** [20] - 2:8, 2:13, 3:22, 8:5, 10:19, 11:16, 13:3, 14:15, 17:8, 18:1, 19:12, 19:22, 22:14, 26:3, 30:4, 30:20, 31:25, 32:21, 33:6, 33:12
**Goldensoph's** [1] - 11:20
**government** [8] - 8:15, 10:9, 11:12, 16:8, 17:21, 18:25, 30:8
**government's** [4] - 5:24, 10:10, 15:16, 17:4
**grant** [4] - 21:8, 25:2, 30:2, 30:7
**granted** [1] - 30:10
**guess** [8] - 5:1, 5:12, 13:17, 15:3, 23:8, 24:25, 32:6
**guy** [1] - 27:4

## H

**half** [2] - 2:12, 2:14
**hand** [5] - 9:25, 10:16, 11:9, 14:25, 34:10
**handing** [2] - 20:12, 20:15
**handle** [1] - 19:2
**hands** [1] - 16:23
**hanging** [1] - 20:14
**happen** [1] - 21:4
**happy** [1] - 12:24
**hardship** [4] - 9:24, 10:3, 10:6, 12:6
**hear** [4] - 9:24, 10:1, 21:16, 29:5
**hearing** [6] - 8:9, 16:21, 33:21, 34:3, 34:4, 34:6
**held** [2] - 2:1, 34:3
**HELD** [1] - 1:16
**hereby** [1] - 34:2
**hereto** [1] - 34:9
**heretofore** [1] - 34:3
**heroin** [26] - 19:8, 23:9, 23:14, 23:18, 23:20, 23:23, 23:24, 23:25, 24:2, 24:4, 24:19, 24:20, 24:21, 25:5, 25:6, 25:10, 25:25, 28:25, 29:1, 29:3, 29:8, 29:9, 29:10, 29:12, 29:15
**high** [2] - 24:1, 27:2
**HON** [1] - 1:16
**honest** [2] - 13:10, 27:25
**Honor** [32] - 2:11, 2:19, 3:25, 4:7, 4:17, 4:25, 5:16, 8:4, 8:18, 8:21, 9:12, 13:2, 13:4, 15:3, 18:3, 18:6, 18:24, 19:14, 19:21, 19:23, 22:15, 22:24, 25:1, 26:4, 30:17, 32:2, 32:6, 32:19, 32:22, 32:24, 33:15, 33:19
**Honorable** [1] - 34:3
**hooked** [1] - 25:12
**hopefully** [2] - 11:1, 30:24

## I

**idea** [4] - 2:16, 3:23, 15:9, 20:22
**identified** [1] - 9:5
**ill** [1] - 4:19
**impartial** [5] - 16:10, 16:12, 17:1, 18:16, 18:18
**IN** [2] - 1:1, 34:10
**inadequate** [1] - 9:8
**include** [2] - 16:2, 31:12
**including** [1] - 5:19
**incomplete** [1] - 6:10
**inconsistent** [2] - 24:21, 24:22
**incredible** [1] - 29:23
**indicate** [2] - 10:13, 14:18
**indicated** [2] - 14:8, 34:3
**indicating** [1] - 18:10
**indictment** [2] - 8:15, 27:19
**information** [2] - 7:22, 16:18
**informed** [1] - 3:10
**inherently** [1] - 29:19
**initial** [1] - 13:11
**innocence** [1] - 17:5
**input** [1] - 10:4
**instructing** [1] - 31:16
**instruction** [2] - 3:21, 32:8
**instructions** [7] - 3:16, 31:13, 31:18, 31:21, 31:22, 31:23, 32:12
**intend** [4] - 4:19, 15:22, 23:5, 24:15
**intending** [1] - 4:18
**intends** [1] - 24:3
**interested** [1] - 34:9
**interfere** [1] - 18:15
**interpreters** [1] - 8:2
**introduce** [7] - 9:21, 14:15, 14:17, 14:21, 15:4, 24:15, 30:9
**introducing** [1] - 14:14
**invade** [1] - 20:7
**investigation** [1] - 23:12
**investigator** [1] - 23:3
**invited** [2] - 17:11, 17:12
**involving** [1] - 18:20
**IOWA** [1] - 1:1
**Iowa** [6] - 1:10, 1:12, 1:18, 1:24, 34:2, 34:14
**issue** [5] - 21:12, 21:25, 22:14, 23:6, 28:16
**issues** [6] - 3:5, 4:15, 20:6, 29:20, 30:19, 31:5
**items** [3] - 6:11, 6:13, 30:21

## J

**Jack** [1] - 2:7
**Jail** [1] - 23:4
**jail** [5] - 25:13, 25:14, 26:16, 27:12
**jammed** [1] - 8:10
**JOHN** [1] - 1:10
**judge** [2] - 14:19, 15:5
**Judge** [2] - 26:20, 27:8
**judgment** [2] - 20:4, 21:7
**July** [1] - 34:11
**juries** [1] - 20:22
**juror** [17] - 10:3, 11:10, 11:11, 11:14, 11:17, 11:18, 11:19, 11:23, 12:5, 12:6, 12:8, 12:9, 12:19, 12:20, 18:17
**jurors** [14] - 9:24, 9:25, 10:12, 10:16, 11:4, 11:8, 12:1, 12:8, 12:11, 12:15, 14:20, 14:23, 15:18, 16:4
**jury** [27] - 3:16, 3:20, 4:9, 9:18, 9:22, 11:19, 11:24, 12:2, 12:4, 12:9, 12:12, 12:20, 14:3, 15:4, 16:13, 18:11, 20:5, 21:6, 27:21, 28:1, 29:4, 29:24, 31:13, 31:16, 31:18, 32:8, 32:12
**Justice** [1] - 1:10
**justice** [1] - 17:20

## K

**keeps** [1] - 14:2
**kind** [4] - 8:12, 11:7, 13:13, 16:8
**knowledge** [3] - 7:15, 25:23,

28:11
**knowledgeable** [1] - 6:5
**knows** [3] - 15:5, 17:3, 29:9
**Kyndra** [1] - 2:17

## L

**Lammers** [23] - 2:7, 2:10, 4:23, 5:6, 6:18, 8:1, 8:22, 10:11, 10:21, 11:13, 11:14, 11:15, 11:22, 12:22, 18:20, 19:17, 21:24, 22:16, 27:15, 30:11, 30:15, 31:6, 33:18
**LAMMERS** [33] - 1:10, 2:11, 2:19, 2:22, 2:24, 3:1, 3:8, 3:19, 4:25, 5:8, 5:16, 6:21, 8:4, 8:18, 8:21, 9:12, 9:15, 12:23, 13:1, 18:23, 19:3, 19:20, 22:1, 22:9, 22:24, 23:17, 25:7, 25:9, 30:13, 30:17, 31:8, 32:24, 33:19
**language** [1] - 5:19
**last** [4] - 12:2, 12:9, 31:18, 31:19
**late** [1] - 12:19
**law** [11] - 13:10, 16:4, 16:5, 16:6, 16:9, 16:11, 16:21, 17:19, 18:18, 23:22, 24:3
**lawyers** [2] - 4:12, 33:8
**leaning** [1] - 31:11
**least** [3] - 3:19, 7:2, 30:23
**legalization** [1] - 18:17
**length** [4] - 2:9, 2:10, 3:23, 4:3
**less** [1] - 4:13
**level** [3] - 7:3, 7:7, 7:11
**levels** [1] - 7:3
**lie** [1] - 27:11
**likely** [1] - 28:19
**limine** [13] - 8:8, 8:13, 20:1, 22:17, 23:2, 23:7, 24:6, 25:3, 28:15, 28:16, 28:22, 30:3, 30:8
**limitation** [1] - 6:20
**list** [2] - 15:18, 16:2
**listening** [1] - 29:25
**lists** [3] - 8:11, 15:14, 15:15
**location** [1] - 20:18
**look** [2] - 3:3, 11:5
**looks** [1] - 2:22
**lost** [1] - 5:12
**loved** [1] - 18:14
**lunch** [1] - 21:10
**Lundquist** [1] - 2:17

## M

**machine** [1] - 1:20
**made** [10] - 4:24, 5:15, 6:2, 6:9, 6:13, 6:19, 17:17, 25:9, 31:15
**mail** [1] - 30:23
**make** [12] - 5:10, 6:1, 6:5, 6:6, 7:12, 8:23, 11:7, 13:16, 16:9, 16:11, 17:22, 28:19
**makes** [2] - 15:8, 28:22
**making** [5] - 10:15, 13:24, 14:1, 17:14, 30:21
**man** [1] - 19:8
**marshals** [3] - 4:20, 14:16, 14:18
**material** [2] - 3:13, 6:16
**materials** [1] - 6:7
**matter** [3] - 2:2, 2:5, 16:22
**mean** [5] - 13:18, 15:6, 26:7, 26:11, 27:16
**means** [1] - 34:4
**meant** [1] - 31:6
**medical** [2] - 9:15, 28:11
**members** [1] - 16:6
**memorize** [1] - 11:7
**memos** [1] - 8:11
**mention** [2] - 15:22, 32:25
**mentioned** [1] - 3:7
**method** [4] - 10:24, 13:5, 14:2, 14:10
**methodology** [2] - 12:22, 12:25
**MICHAEL** [1] - 1:6
**Michael** [5] - 2:4, 25:17, 25:18, 26:14, 27:1
**Michael's** [2] - 26:19, 27:6
**microphone** [1] - 5:3
**might** [3] - 11:2, 12:7, 21:21
**mind** [1] - 15:21
**minimis** [1] - 28:8
**minority** [1] - 17:18
**minute** [1] - 10:8
**minutes** [2] - 10:9, 10:20
**missed** [1] - 18:23
**missing** [1] - 6:11
**moment** [2] - 18:2, 32:3
**Monday** [2] - 32:13, 32:18
**morning** [2] - 2:2, 23:11
**most** [4] - 13:8, 15:7, 19:9, 19:11
**motion** [14] - 8:7, 8:13, 10:17, 12:6, 20:1, 22:17, 23:2, 23:7, 24:6, 25:2, 28:15, 28:16, 28:22, 30:7
**motions** [2] - 10:15, 10:21
**move** [6] - 9:5, 9:7, 11:12, 11:19, 20:3, 20:8
**MR** [49] - 2:11, 2:19, 2:22, 2:24, 3:1, 3:8, 3:19, 3:25, 4:17, 4:25, 5:8, 5:16, 6:21, 8:4, 8:6, 8:18, 8:21, 9:12, 9:15, 12:23, 13:1, 13:4, 15:3, 18:2, 18:6, 18:23, 19:3, 19:14, 19:20, 19:23, 22:1, 22:9, 22:15, 22:24, 23:17, 25:7, 25:9, 26:4, 30:13, 30:17, 31:8, 32:2, 32:6, 32:14, 32:19, 32:22, 32:24, 33:15, 33:19
**Murray** [5] - 1:19, 1:23, 34:2, 34:12, 34:13

## N

**name** [1] - 15:23
**names** [3] - 15:19, 15:20, 15:24
**nature** [1] - 28:20
**NDIA** [1] - 34:13
**nearly** [1] - 24:15
**necessarily** [1] - 19:7
**necessary** [2] - 3:14, 30:22
**need** [10] - 3:13, 6:1, 8:1, 8:3, 10:13, 21:5, 21:7, 22:19, 30:19, 32:1
**negate** [1] - 29:14
**Nelson** [3] - 24:9, 25:15, 28:17
**never** [2] - 5:2, 26:12
**next** [7] - 8:9, 11:11, 19:8, 20:17, 21:12, 30:14, 32:15
**noncooperation** [1] - 5:19
**normally** [1] - 8:10
**NORTHERN** [1] - 1:1
**notes** [3] - 11:7, 13:17, 14:1
**nothing** [3] - 17:21, 29:18, 33:10
**notice** [1] - 31:4
**notion** [1] - 26:5
**number** [13] - 10:24, 11:10, 11:11, 11:19, 11:23, 12:5, 12:6, 12:19, 22:7, 25:15, 25:16, 25:18, 25:21
**Number** [1] - 2:4

## O

**object** [3] - 9:10, 21:14, 30:3
**objecting** [1] - 13:18
**objection** [5] - 21:15, 21:18, 24:13, 30:4, 33:12
**objectionable** [1] - 21:17
**objections** [4] - 12:25, 13:1, 21:14, 33:16
**obviously** [2] - 5:8, 28:8
**OF** [2] - 1:1, 1:3
**offer** [8] - 5:15, 5:17, 5:19, 6:1, 6:3, 6:19, 7:18, 23:5
**offered** [1] - 24:3
**offering** [1] - 8:16
**offers** [3] - 4:24, 5:15, 5:24
**often** [1] - 21:18
**oftentimes** [1] - 20:24
**once** [10] - 10:6, 10:8, 10:22, 11:3, 11:8, 12:11, 12:17, 12:19, 23:25, 25:13
**one** [19] - 3:2, 3:6, 3:8, 5:25, 7:3, 8:14, 9:11, 10:4, 11:23, 12:2, 19:5, 20:19, 23:24, 25:12, 26:6, 26:12, 27:7, 29:18
**ones** [1] - 18:15
**open** [1] - 2:1
**opening** [2] - 20:9, 31:19
**openings** [1] - 20:3
**opine** [1] - 27:6
**opinion** [4] - 9:4, 9:9, 24:3, 24:19
**oral** [1] - 22:22
**order** [7] - 7:1, 10:24, 13:11, 22:6, 22:10, 23:8, 30:2
**originally** [1] - 3:25
**out-and-out** [1] - 27:11
**outside** [1] - 21:6
**overdose** [16] - 8:14, 19:1, 19:5, 19:10, 19:13, 26:19, 26:21, 27:3, 27:7, 27:16, 28:5, 28:10, 28:21, 29:5, 29:14
**overdosed** [12] - 15:22, 23:9, 23:20, 24:2, 26:22, 26:25, 27:4, 27:22, 28:4, 29:2, 29:7, 29:15
**overdoses** [1] - 29:16
**overdosing** [1] - 29:10
**overrule** [1] - 21:19
**own** [2] - 10:7, 20:4

## P

**part** [9] - 13:9, 25:2, 25:3, 27:20, 28:1, 28:5, 29:15, 30:9
**particular** [5] - 9:6, 13:19, 24:18, 27:9, 32:25
**parties** [9] - 7:9, 12:12, 15:14, 15:25, 20:24, 31:4, 31:16, 34:8, 34:9
**parties'** [1] - 15:12
**party** [3] - 17:12, 25:21, 33:10
**Pass** [1] - 10:18
**pass** [1] - 12:19
**passed** [5] - 7:7, 7:10, 12:8, 15:22, 32:10
**past** [2] - 6:25, 28:3
**Patrice** [5] - 1:19, 1:23, 34:2, 34:12, 34:13
**pending** [1] - 8:13
**people** [7] - 9:21, 11:7, 12:3, 14:14, 15:7, 15:19, 17:18
**peremptory** [8] - 10:23, 10:25, 11:5, 11:13, 11:17, 12:13, 12:14, 14:4
**perfect** [1] - 24:23
**peripheral** [2] - 19:6, 27:16
**permission** [2] - 20:10, 33:5
**permit** [1] - 20:19
**person** [5] - 11:6, 15:22,

16:17, 17:13, 29:2
**personal** [1] - 20:6
**personally** [1] - 2:7
**persons** [1] - 9:19
**phone** [2] - 25:15, 25:16
**place** [2] - 34:3, 34:6
**Plaintiff** [1] - 1:4
**plan** [3] - 3:24, 4:9, 14:1
**planning** [1] - 2:20
**play** [1] - 31:10
**plea** [15] - 3:17, 4:24, 5:14, 5:15, 5:17, 5:19, 5:24, 6:1, 6:3, 6:19, 6:22, 7:8, 7:13, 7:18, 7:21
**plead** [1] - 5:17
**podium** [1] - 20:17
**point** [11] - 4:4, 9:11, 10:17, 11:3, 12:17, 13:2, 22:20, 23:24, 24:16, 26:17, 27:3
**pointed** [1] - 27:15
**points** [2] - 30:25, 31:1
**political** [1] - 17:15
**polysubstance** [1] - 29:17
**portion** [4] - 22:10, 23:2, 23:7, 30:7
**position** [3] - 2:15, 7:4, 7:14
**possibility** [2] - 3:2, 4:5
**potency** [1] - 28:22
**potential** [1] - 32:7
**potentially** [3] - 3:8, 33:2, 33:3
**powerful** [1] - 29:3
**preclude** [3] - 24:6, 24:8, 24:24
**prefer** [1] - 5:4
**preference** [3] - 5:2, 14:17, 15:4
**preferences** [4] - 19:25, 20:2, 21:23, 22:2
**prejudice** [2] - 6:15, 20:24
**prejudicial** [7] - 24:13, 24:14, 24:16, 24:17, 24:19, 28:9, 29:4
**prepare** [1] - 6:8
**presence** [1] - 21:6
**present** [1] - 2:8
**President** [1] - 15:8
**presumption** [1] - 17:5
**PRETRIAL** [1] - 1:15
**pretrial** [1] - 2:5
**pretty** [1] - 15:6
**primarily** [1] - 14:12
**print** [1] - 34:4
**pro** [1] - 18:17
**probative** [1] - 28:7
**proceedings** [3] - 2:1, 34:4, 34:6
**Proceedings** [1] - 33:22
**process** [4] - 9:18, 9:22, 10:20, 12:4
**prohibit** [1] - 33:10
**proof** [1] - 17:4
**proper** [1] - 6:16
**proposed** [1] - 32:12
**prospective** [4] - 10:3, 10:12, 10:16, 11:14
**prove** [1] - 17:22
**provided** [1] - 29:2
**providing** [1] - 31:17
**pull** [1] - 32:17
**purchased** [1] - 23:9
**purchases** [1] - 25:25
**purpose** [1] - 20:12
**purposes** [1] - 3:16
**pursuant** [1] - 3:17
**put** [1] - 6:23
**putting** [1] - 13:19

## Q

**qualify** [1] - 7:2
**questionable** [2] - 26:9, 26:17
**questioning** [2] - 9:7, 18:7
**questions** [9] - 11:2, 14:12, 16:14, 16:23, 17:2, 20:16, 20:18, 21:24, 22:14
**quintessential** [1] - 29:21
**quite** [1] - 3:16

## R

**race** [2] - 17:20, 17:23
**raised** [1] - 29:20
**raises** [1] - 9:25
**random** [1] - 14:8
**randomly** [1] - 9:20
**Rapids** [4] - 1:12, 1:18, 1:24, 34:14
**re** [3] - 20:20, 33:11
**re-calling** [1] - 33:11
**re-recrosses** [1] - 20:20
**re-redirects** [1] - 20:20
**reached** [1] - 16:16
**reaction** [2] - 13:11, 21:21
**read** [6] - 8:7, 13:9, 13:12, 14:6, 15:12, 15:17
**real** [1] - 4:21
**realize** [1] - 17:17
**really** [3] - 13:5, 21:5, 24:7
**reason** [6] - 10:12, 20:15, 24:24, 27:8, 27:14, 28:12
**receiving** [1] - 7:6
**recognize** [1] - 21:3
**recognized** [1] - 17:14
**recollection** [1] - 20:13
**record** [3] - 6:19, 13:20, 34:6
**recording** [1] - 31:7
**recordings** [1] - 31:9
**recross** [1] - 20:19
**recrosses** [1] - 20:20
**redirect** [1] - 20:19
**redirects** [1] - 20:20
**reduced** [1] - 34:4
**reference** [1] - 19:10
**refreshing** [1] - 20:13
**regarding** [8] - 4:15, 8:16, 13:10, 19:1, 20:2, 26:18, 28:16, 29:20
**regardless** [3] - 7:7, 12:3, 12:12
**regards** [8] - 5:12, 7:3, 19:20, 23:1, 23:22, 26:10, 26:12, 26:18
**reject** [2] - 5:24, 7:15
**rejected** [2] - 5:21, 7:13
**related** [1] - 34:7
**relationship** [1] - 25:22
**relative** [1] - 34:8
**relevant** [10] - 24:11, 24:12, 27:23, 27:24, 27:25, 28:6, 28:7, 28:17, 28:24, 29:3
**reliability** [1] - 29:21
**remain** [1] - 18:9
**remember** [1] - 25:16
**remove** [1] - 10:12
**render** [2] - 9:4, 9:9
**replaced** [1] - 12:4
**reported** [2] - 1:19, 34:3
**Reporter** [2] - 1:20, 34:2
**represented** [2] - 2:6, 2:8
**request** [2] - 17:7, 21:20
**requested** [3] - 5:17, 5:20, 32:8
**requesting** [2] - 24:9, 25:2
**require** [1] - 8:24
**requires** [1] - 13:23
**research** [1] - 31:5
**reservation** [4] - 13:5, 13:14, 13:20, 13:21
**reserved** [1] - 12:14
**response** [9] - 21:19, 21:22, 22:18, 22:21, 23:1, 24:12, 24:14, 25:1, 30:12
**responsibility** [2] - 6:25, 7:11
**rest** [1] - 19:6
**result** [1] - 29:17
**results** [1] - 20:24
**review** [1] - 13:10
**reviewed** [2] - 22:9, 22:17
**right-hand** [1] - 11:9
**RMR** [2] - 1:23, 34:13
**routinely** [2] - 30:22, 30:23
**row** [3] - 11:10, 11:11, 11:20
**rows** [1] - 11:25
**RPR** [2] - 1:23, 34:13
**rule** [4] - 10:4, 21:15, 21:18, 28:14
**Rule** [1] - 28:18
**rules** [1] - 33:10
**Rules** [2] - 9:9, 9:10

## S

**S.E** [4] - 1:12, 1:18, 1:24, 34:14
**safe** [2] - 4:4, 4:6
**sales** [1] - 26:2
**saw** [1] - 2:17
**scenario** [1] - 26:13
**schedule** [2] - 22:3, 22:8
**scheduling** [1] - 22:6
**seated** [3] - 9:20, 12:1, 12:7
**Second** [1] - 1:12
**second** [5] - 7:25, 23:1, 24:2, 30:7, 30:9
**Secret** [1] - 15:7
**secretary** [1] - 4:19
**see** [2] - 13:15, 15:7
**seeing** [1] - 13:11
**seeks** [1] - 24:6
**selection** [3] - 9:18, 9:22, 12:4
**sense** [4] - 13:22, 15:9, 19:5, 33:4
**series** [1] - 16:14
**served** [2] - 4:16, 16:17
**service** [2] - 3:9, 16:13
**Service** [1] - 15:7
**serving** [1] - 16:25
**set** [2] - 17:24, 34:10
**Seventh** [3] - 1:17, 1:24, 34:14
**shorter** [1] - 22:3
**Shorthand** [2] - 1:19, 34:2
**shorthand** [2] - 1:20, 34:4
**show** [1] - 16:22
**showed** [1] - 17:13
**sic** [1] - 15:23
**side** [3] - 4:4, 4:7, 21:22
**sidebar** [5] - 10:1, 10:14, 10:15, 21:7
**sidebars** [1] - 20:21
**sides** [1] - 5:9
**silent** [1] - 18:10
**simply** [4] - 10:13, 10:18, 14:17, 15:17
**Sioux** [1] - 1:10
**sit** [2] - 5:3, 18:17
**sitting** [1] - 14:3
**situation** [1] - 26:15
**skin** [1] - 17:16
**sold** [4] - 26:6, 26:14, 27:17, 28:2
**sometimes** [5] - 13:15, 14:15, 14:16, 14:22, 21:4
**somewhat** [1] - 13:22
**soon** [1] - 15:13
**sorry** [4] - 5:1, 5:16, 22:9, 23:17
**sort** [1] - 28:11
**sounds** [1] - 3:9

**space** [1] - 20:6
**speaking** [1] - 21:14
**special** [1] - 8:1
**specific** [1] - 22:10
**specifically** [2] - 13:18, 22:1
**speculate** [1] - 20:22
**speculation** [3] - 20:23, 21:2, 28:9
**speculative** [1] - 27:10
**spoken** [1] - 3:9
**stand** [1] - 5:3
**standing** [1] - 20:17
**start** [3] - 11:9, 11:11, 21:10
**starts** [1] - 31:17
**state** [3] - 5:9, 16:16, 21:15
**State** [1] - 34:2
**statement** [4] - 15:12, 26:8, 26:9, 31:19
**statements** [1] - 26:18
**STATES** [2] - 1:1, 1:3
**States** [6] - 1:11, 1:23, 2:3, 2:6, 34:13
**Stevenson** [8] - 2:4, 5:23, 7:12, 17:6, 23:3, 23:4, 25:17, 27:23
**STEVENSON** [1] - 1:6
**Stevenson's** [1] - 25:18
**still** [6] - 2:13, 4:3, 6:11, 7:8, 30:3, 32:11
**story** [2] - 17:9, 27:12
**strategy** [2] - 4:1, 4:2
**Street** [2] - 1:10, 1:12
**strength** [1] - 24:20
**strike** [3] - 11:13, 11:17, 12:19
**strikes** [6] - 10:23, 10:25, 11:5, 12:13, 12:14, 14:4
**striking** [4] - 12:16, 12:21, 13:7, 14:6
**strong** [2] - 23:23, 24:4
**struck** [3] - 12:2, 12:9, 12:11
**stuff** [1] - 8:12
**subject** [2] - 28:21, 29:25
**submit** [1] - 24:18
**subpoena** [1] - 3:10
**subpoenas** [2] - 4:18, 6:9
**substance** [1] - 29:18
**substantially** [1] - 13:7
**Suite** [2] - 1:10, 1:12
**super** [1] - 27:2
**supervision** [1] - 34:5
**supply** [1] - 29:12
**surprise** [1] - 17:12
**sustain** [2] - 21:20, 21:21
**system** [1] - 14:9

## T

**talk** [8] - 9:17, 18:13, 19:25, 20:1, 21:5, 21:12, 30:16, 32:1
**talked** [2] - 26:11, 33:6
**talking** [5] - 20:23, 20:25, 21:1, 26:13, 30:22
**tax** [1] - 16:8
**technically** [1] - 12:7
**tell** [4] - 4:11, 10:3, 15:18, 17:9
**telling** [1] - 4:9
**tendency** [1] - 28:19
**tendered** [1] - 5:18
**testified** [1] - 16:20
**testify** [7] - 18:10, 25:12, 25:23, 25:24, 25:25, 28:2, 29:7
**testifying** [4] - 3:17, 8:20, 28:25, 33:1
**testimony** [14] - 24:7, 24:10, 24:12, 24:22, 24:24, 27:10, 28:17, 29:21, 29:23, 29:25, 30:5, 30:9
**THE** [61] - 1:1, 1:1, 1:16, 2:2, 2:16, 2:20, 2:23, 2:25, 3:5, 3:15, 3:20, 4:8, 4:23, 5:5, 5:14, 5:22, 6:4, 6:18, 7:5, 7:16, 7:17, 7:19, 7:20, 7:23, 7:24, 8:5, 8:7, 8:19, 8:22, 9:13, 9:17, 12:24, 13:3, 13:21, 15:10, 18:4, 18:8, 18:25, 19:12, 19:15, 19:22, 19:24, 22:5, 22:11, 22:16, 23:16, 25:4, 25:8, 26:3, 28:14, 30:15, 31:3, 31:12, 32:4, 32:9, 32:15, 32:20, 32:23, 33:8, 33:17, 33:20
**they've** [2] - 16:8, 27:17
**thinking** [3] - 11:6, 20:25, 21:20
**third** [3] - 7:2, 7:7, 7:11
**thoughts** [1] - 3:22
**three** [5] - 2:14, 4:4, 4:5, 4:10, 4:13
**three-day** [2] - 4:10, 4:13
**tied** [2] - 8:14, 29:1
**ties** [1] - 16:10
**timeframe** [1] - 32:10
**today** [6] - 4:20, 4:21, 22:18, 22:22, 23:1, 30:16
**together** [1] - 32:17
**tomorrow** [1] - 22:19
**top** [1] - 28:12
**totally** [1] - 5:23
**trafficking** [1] - 33:5
**train** [1] - 5:13
**transcript** [1] - 34:5
**transcription** [1] - 34:5
**trial** [24] - 2:10, 2:18, 4:3, 4:10, 4:14, 6:8, 6:16, 6:17, 8:11, 14:22, 15:21, 15:24, 15:25, 16:21, 21:9, 22:6, 23:13, 30:3, 30:6, 31:2, 31:21, 31:23, 32:15
**tried** [1] - 21:3
**trouble** [1] - 16:9
**true** [1] - 34:5
**trust** [1] - 21:6
**try** [5] - 8:23, 30:20, 32:13, 33:8, 33:9
**trying** [4] - 14:4, 14:6, 24:8, 26:16
**Tuesday** [1] - 7:1
**turn** [5] - 10:8, 10:18, 11:15, 11:20, 17:19
**turned** [1] - 25:21
**twice** [4] - 23:24, 26:10, 26:12, 29:18
**two** [9] - 2:12, 2:14, 3:1, 3:4, 3:19, 7:3, 9:12, 9:13, 22:13
**two-and-a-half** [2] - 2:12, 2:14
**type** [5] - 8:1, 9:13, 14:24, 16:21, 22:22
**typically** [4] - 17:9, 21:20, 21:21, 33:8

## U

**U.S** [1] - 1:10
**ultimately** [1] - 29:24
**uncommon** [1] - 29:16
**uncredible** [1] - 29:23
**under** [3] - 9:9, 28:18, 34:5
**understandable** [1] - 15:7
**unduly** [1] - 24:13
**unfair** [1] - 29:19
**unfairly** [3] - 24:17, 24:18, 29:4
**UNITED** [2] - 1:1, 1:3
**United** [6] - 1:11, 1:23, 2:3, 2:6, 34:13
**unless** [3] - 18:23, 20:14, 21:16
**up** [21] - 5:23, 8:10, 9:25, 10:14, 11:5, 15:20, 15:23, 15:25, 16:14, 16:18, 16:23, 17:2, 17:13, 18:21, 19:7, 22:20, 25:13, 26:13, 30:19, 31:24
**upper** [1] - 11:9
**US** [2] - 14:15, 14:18
**use** [4] - 10:25, 14:9, 20:4, 24:20
**used** [9] - 13:6, 23:16, 23:18, 23:24, 24:1, 25:6, 27:2, 29:9, 29:18
**using** [2] - 1:20, 14:10

## V

**value** [1] - 28:8
**verdict** [2] - 16:16
**versus** [1] - 2:3
**video** [2] - 31:7, 31:9
**view** [3] - 6:12, 7:21, 29:14
**viewable** [1] - 6:13
**views** [1] - 17:15
**voir** [11] - 10:7, 10:9, 10:10, 10:22, 14:11, 15:11, 19:2, 19:16, 19:18, 19:20
**voluntary** [1] - 6:5
**VS** [1] - 1:5

## W

**wait** [2] - 21:11, 22:20
**waiting** [1] - 21:18
**want** [27] - 2:9, 3:12, 5:5, 7:12, 7:24, 12:18, 14:23, 15:1, 15:2, 16:18, 17:8, 17:25, 18:1, 18:25, 19:2, 19:12, 19:24, 20:4, 20:5, 20:7, 20:14, 21:16, 22:23, 25:19, 26:5, 30:16, 33:9
**wanted** [3] - 5:10, 22:21, 26:15
**wanting** [1] - 27:12
**warrant** [1] - 3:14
**warranted** [1] - 30:4
**Washington** [1] - 17:10
**watching** [2] - 14:4, 14:20
**week** [2] - 8:9, 32:16
**welcome** [1] - 17:1
**whatnot** [1] - 13:17
**WHEREOF** [1] - 34:10
**white** [1] - 17:13
**Whoa** [1] - 26:24
**whoa** [2] - 26:24
**wife** [1] - 17:11
**Williams** [1] - 34:3
**WILLIAMS** [1] - 1:16
**wish** [2] - 9:3, 11:13
**witness** [19] - 3:13, 8:11, 8:25, 9:1, 9:2, 9:4, 9:5, 15:14, 15:15, 16:20, 20:12, 20:14, 23:12, 23:13, 25:5, 28:25, 33:3, 33:4, 33:11
**WITNESS** [1] - 34:10
**witnesses** [16] - 2:20, 3:6, 3:17, 3:24, 4:6, 4:16, 4:22, 7:25, 8:1, 8:19, 15:16, 15:17, 15:18, 15:20, 16:1, 20:11
**wondering** [1] - 14:21
**words** [1] - 10:2
**work** [2] - 9:1, 9:19
**workable** [1] - 32:18
**worked** [1] - 16:5
**working** [2] - 4:18, 4:20
**worry** [1] - 8:3

## Y

**yesterday** [2] - 4:18, 4:19
**yourself** [1] - 19:2