**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

United States of America,

    Plaintiff,      No. 18-CR-1023

   vs.

Michael Stevenson,        VOIR DIRE

    Defendant.

     *  *  *  *  *

    Transcript excerpt of proceedings held at the Federal Courthouse, Cedar Rapids, Iowa, on the 23rd day of April, 2019.

     *  *  *  *  *

Before:  C.J. Williams, Judge

     *  *  *  *  *

Appearances:
John H. Lammers
Assistant US Attorney
600 Fourth Street, Suite 670
Sioux City, Iowa 51101
and

Kyndra Lundquist
Assistant US Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401    for USA.

Cory Goldensoph
Attorney at Law
425 Second Street SE, Suite 803
Cedar Rapids, Iowa 52401    for Defendant.

     *  *  *  *  *

Transcript ordered the 25th day of November, 2019.
Transcript delivered the 17th day of December, 2019.

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

**2**

P R O C E E D I N G S

    THE COURT:  All right.  Please be seated.

    All right.  Well, welcome to the United States District Court for the Northern District of Iowa.

    My name is C.J. Williams.  I am a United States District Court Judge.  And I will presiding over this trial here today.

    What we're going to do this morning is go through jury selection.  I'm going to start off by describing the court, introducing some people in the courtroom to you.

    I'll describe the jury selection process we're going to be going through here this morning.  Then we'll start in on that process.  We'll -- We will complete it by noon today.

    And those who are then selected to serve as jurors will start hearing evidence yet today, this afternoon, after we have a lunch break.  This is very different than what it often is in some State courts.

    I have a friend in California who tells me his horror stories about being called for jury selection.  And they'll come sit in a room in the basement of a courthouse for days at a time without even seeing the inside of a courtroom.  And it takes

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

**3**

forever.

    We don't do it that way in Federal court.  We do it very quickly.  And so, as I said, this entire process of jury selection will be completed here this morning.

    So let me, first of all, describe the court.  You are in Federal court.  In our United States, we have both State courts and Federal courts.  County courthouses sometimes you may have heard of.

    This is a Federal court.  We are one district out of 94.  We're the Northern District of Iowa.  We take up essentially the top half of the state, if you took Highway 30 across, and then just everything north of Highway 30, roughly.  It goes by county, but that's essentially the Northern District of Iowa.

    There are 94 districts across the country, including Guam and Puerto Rico and the Virgin Islands.  I apologize you're not in the Virgin Islands.  You're in the Northern District of Iowa.

    In this district, we are a small district as far as the number of judges are concerned.  I'm a district court judge.  And then we have one other district court judge, a chief judge, Leonard Strand, who presides out in our Sioux City courthouse.  We

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

**4**

only have the two courthouses:  here in Cedar Rapids and then in Sioux City.

    We have a senior district court judge.  So a district court judge, like Judge Strand and me, who served on the bench for a number of years and then took kind of semiretired status.

    The way it works is once you reach a certain age, a number of years on the bench, you can retire at full pay for the rest of your life or you can take senior status and continue to work, essentially for free, because you would get paid whether you worked or not.

    And Judge Linda Reade has taken senior status.  And even though she could be out golfing every day and getting paid, she still comes in and takes cases and works.  And so she's our senior court judge.

    We have two magistrate judges, one here in Cedar Rapids, Mark Roberts, and then one out in Sioux City, Kelly Mahoney.

    So we have very few judges, but we're a very busy district.  We have one of the highest per-judge caseloads in the country.  And for several years running, the highest per-judge trial record in the country.

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

5

1    And so we're a very busy court.  And that's
2 one of the reasons why we do things very efficiently,
3 including jury selection.
4    Let me introduce to you some of the people
5 in our courtroom.  First of all, Sarah Dittmer is our
6 court reporter.  She has, by far, the most difficult
7 job in the courtroom.  She has to take down literally
8 every word that's said by anybody in this courtroom.
9    Now as skilled as she is, she can only take
10 down one person at a time, and she can only take it
11 down if she can actually hear the person.
12    So when we go through this jury selection
13 process, there'll be times where we're going to be
14 calling upon you to answer a question.  When that
15 happens, then we will hand you a microphone.
16    And so please hold off on answering any
17 question until you have a microphone in front of you
18 so that Ms. Dittmer can fully hear what you have to
19 say.  And try not to speak over the questioner.  And
20 the questioner will try not to speak over you.
21    Patrick Thompson is one of my law clerks.
22 Mr. Thompson was a practicing lawyer in Miami for
23 about six years before he decided to come and be a
24 law clerk for me for a couple years.  He's going to
25 move on and go back to the practice of law after he

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

6

1 leaves sometime this summer.  He'll help me
2 throughout this trial on any matters that come up.
3    We also have the court security officers
4 that you have seen when you came in.  They're in the
5 blue blazers.  Their job -- They have a lot of jobs.
6 One of their jobs is when we have a jury trial, they
7 help the jury by telling you where to go.  They'll
8 open up the doors into the jury room for you, make
9 sure you're ready to come back into the courtroom.
10 And so they help us a lot during jury trials.
11    You'll see gentlemen in blazers or suits
12 against the back wall.  Those are deputy U.S.
13 marshals.  They're in the courtroom whenever the
14 judge is in the courtroom.  And then the most
15 important -- And I'll introduce the parties in a
16 little bit.
17    But the more important people in the room,
18 quite frankly, are you.  You are going to be the
19 judges of the facts.  You'll be deciding this case,
20 those of you who are ultimately selected as jurors in
21 this case.
22    So let me talk to you a little bit about the
23 jury selection process.  Juries, quite frankly, are
24 one of the most fundamental forms of democracy that
25 we have in America.  If you think about it, we are

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

7

1 gathering a group of people randomly selected from
2 the community to sit in judgment on a case.  And
3 those people can now decide a case that is binding
4 upon the Government.
5    Now think about that.  Can you imagine in
6 Russia or China or other places where a group of
7 citizens can come in and tell their government what
8 the answer is and it's binding on the government?
9    It's really quite a remarkable thing we
10 have.  And we have to honor that process.  And it's
11 very fundamental to our criminal justice system and
12 our civil justice system to have juries decide these
13 issues.  It is one of the most important duties of a
14 citizen besides paying taxes and voting.
15    We have adopted our jury system from England
16 where we adopted most of our common law.  And the
17 jury system has developed and changed a little bit
18 over time.  And I think it's helpful to jurors to
19 understand how that's developed to understand your
20 role a little bit better.
21    So originally jurors were made up of people
22 who actually knew something about the case, the
23 facts, or the parties.  And so the thinking back then
24 was that if we've got a dispute between two people,
25 we should get the people who know them and know the

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

8

1 facts and have them come in and decide what the
2 answer is on the case.
3    And so you might have jurors sitting in the
4 box, and then they come up and they testify, and then
5 they go back in the box.  And that was decided over
6 time that that may not be the fairest way to decide a
7 dispute.
8    And instead, what we really need are people
9 that don't have an interest in this case, that don't
10 really have knowledge of either side, and don't know
11 the facts of the case and are going to be neutral and
12 decide the case based on the facts that they hear at
13 trial and based on the law as given to them by the
14 judge.
15    And so our jury selection process has
16 evolved now to gathering a group of citizens randomly
17 pulled from the community and then selecting from
18 that group people who are best able to be fair and
19 impartial and decide the case based on the facts and
20 the merits of the case and not on anything else.
21    And so we have this jury selection process
22 we go through where we ask questions of the
23 prospective jurors.  That's called voir dire.  It
24 comes from the French infinitive verbs "voir," to
25 see, and "dire," to speak.  And so we're going to see

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

9

1 and speak to you and learn things about you so that
2 the lawyers can determine who might be the most fair
3 and impartial for this case.
4 This isn't a judgment about whether you're a
5 good person or a bad person. Imagine, for example,
6 if we had a case where it was medical malpractice and
7 a doctor was being sued for botching -- allegedly
8 botching a surgery and among you was a surgeon who
9 had been sued multiple times for allegedly botching a
10 surgery.
11 You can imagine that that person may not be
12 the most fair and impartial person to sit as a juror
13 on that type of case. May be a great juror on
14 another type of case, but not on this type of case.
15 And that's what we're trying to do here. You may be
16 a wonderful juror on some other type of case, but
17 maybe on this particular type of case, you may not be
18 the most fair and impartial.
19 And so we're trying to go through this
20 process to figure out who would fit in that category.
21 As you can see, there's actually 29 of you pulled up
22 in front here. And we only need 13 people to
23 ultimately serve on the jury. 12 people ultimately
24 decide the case, and then we always have one juror as
25 an alternate in case somebody gets sick or there's

10

1 some other issue.
2 I tried a case last week. And we had a
3 juror who had a diabetic reaction and ended up in the
4 hospital, and we had to use our alternate in the --
5 ultimately to decide the case. And so we'll have an
6 alternate.
7 But we need to get down to 13 out of this 29
8 up here in this group. And the way that we do that
9 is the parties have the right to exercise what's
10 called peremptory strikes, meaning that we can remove
11 a juror for any reason.
12 And so we're going to reach a point during
13 this jury selection process, after you've answered
14 all the questions that I have and you've answered the
15 questions by the lawyers, where the lawyers are then
16 going to exercise their peremptory strikes and remove
17 enough of you to get us down to the 13.
18 They have to. It's not a case where -- They
19 don't have a choice. They have to exercise
20 peremptory so we can get it down to 13. And so at
21 some point in this process this morning, we'll do
22 that.
23 So during this process, as I indicated, we
24 will be asking you questions. And your answers have
25 to be under oath. So at this time I'm going to ask

11

1 Mr. Thompson to place you under oath. And this
2 includes, as well, those of you in the back of the
3 courtroom who are not sitting up front here.
4 So, Mr. Thompson.
5 THE CLERK: Please raise your right hands.
6 (Prospective jurors sworn.)
7 THE COURT: All right. Thank you.
8 When we go through these questions, we're
9 going to be directing our questions to the people up
10 front, the 29 up front.
11 Those of you in the back of the courtroom,
12 please listen and pay attention. It may be necessary
13 at some point during the jury selection process for
14 us to excuse one of these jurors sitting up front.
15 And if that happens, then we will randomly
16 pull one of you from the back of the courtroom and
17 have you come up and replace these jurors. It helps
18 speed up the process if you've been paying attention
19 to the questions asked and have been thinking about
20 what your answers would be.
21 Because if you are pulled up here to replace
22 somebody, the first question I'll have of you is:
23 "Did you listen to all the questions that are asked
24 and did you have any answers that we need to know to
25 any of those questions?" And it speeds up the

12

1 process if you've gone through thinking about that a
2 little bit.
3 All right. Let me talk to you about the
4 logistics of this case. The estimated length of this
5 trial is four weeks. I'm kidding. It's four days.
6 We actually do have trials that last not only four
7 weeks, but sometimes four months. And so this is a
8 very short trial. We anticipate this case will be
9 submitted to you by the end of this week. And so
10 this is not going to be a long trial.
11 The process we're going to go through here
12 today is we will pick the jury this morning. And
13 we'll take a lunch break. We'll have a break about
14 midmorning this morning. We'll have a break
15 midafternoon.
16 And then on each succeeding day through
17 Friday, we're actually going to hold court from 8:30
18 to 2:30. And the reason we do that is two reasons:
19 One is it allows you-all to go home. Some of you may
20 have school-aged kids at home. They get out of
21 school at 3:00. It may allow you to get back to a
22 job.
23 It also allows me to hold other hearings in
24 the afternoon on other cases that are urgent that I
25 need to take care of. So we won't be having a lunch

---

13

1  break on those succeeding days.
2       So Wednesday, Thursday, Friday, 8:30 to
3  2:30. And we'll have two 20-minute breaks. In the
4  back here is a jury room. There's a refrigerator, a
5  microwave, that kind of thing. And so you're welcome
6  to bring in food and eat during those breaks. But
7  we'll be going from 8:30 to 2:30 with two 20-minute
8  breaks kind of evenly spaced.
9       All right. So I'm about to ask if serving
10 on a jury where we have a -- only a four-day trial
11 with that kind of schedule is going to constitute an
12 extreme or severe hardship for anybody. But before I
13 ask for a show of hands, let me talk to you a little
14 bit about that.
15      First of all, I'm intentionally tough on
16 granting what we call hardship excuses. That is when
17 jurors want to get off jury duty because of a
18 hardship that they claim.
19      And that's not because I'm not sympathetic.
20 I understand this is not what any of you really want
21 to be doing right now. You-all have other places
22 you'd like to be or need to be. You have jobs. Some
23 of your employers don't pay you for when you're
24 serving on a jury. Some of you are self-employed,
25 and every day you're in jury service is a day you're

---

15

1       And so I want you to think about that as
2  well when you're considering whether you need to get
3  off this jury for a hardship. And so thinking about
4  the juror next to you and whether whatever your
5  excuse might be is any more severe or extreme than
6  what the juror sitting next to you might be, I now
7  ask for a show of hands of any of you who think that
8  by serving on this jury would constitute a severe or
9  extreme hardship for you.
10      Okay. I see, let's see, two, three --
11 Please keep your hands up for a minute so I can mark
12 them down.
13      All right. I'm going to take you at what we
14 call sidebar, which is I'm going to talk to you over
15 here at the side of the bar. When I do this,
16 Mr. Thompson will turn on what we call white noise so
17 that we can have a private conversation with somebody
18 over here at the side and the rest of the jurors
19 can't hear what's going on.
20      And I do this for hardship because I don't
21 know what the hardship is. Sometimes there -- it's
22 personal matters and people may not feel comfortable
23 talking about it among everybody else.
24      As we go through the rest of the questioning
25 here today, if there's anything else that I ask or

---

14

1  not making money. And so not only is it a time
2  sacrifice, but it's a financial sacrifice. And I
3  understand that.
4       But for our system of justice to work, we
5  really need to have a fair cross section of the
6  community serving as jurors. If the only people we
7  could have serve as jurors are those that lived
8  within 20 minutes of the courthouse and were
9  unemployed or retired, that would not be a very fair
10 cross section of the community. And that's why I
11 don't readily give out hardship excuses.
12      It's also important for our system to work
13 to think about our duties. We talk a lot in America
14 about all the rights we have. I have a right to
15 this, and I have a right to do that. And we don't
16 talk very much or think very much about our duties as
17 citizens.
18      We have a duty as citizens to serve as
19 jurors when called by your government to do so.
20 There are people serving overseas right now in harm's
21 way sometimes for months or years at a time, parted
22 from their loved ones, who are serving our country
23 and making a far greater sacrifice than what we're
24 asking you to make here, to serve on a jury for four
25 days.

---

16

1  the lawyers ask that you don't feel comfortable
2  answering in public, just say that you'd like to talk
3  to me about it at sidebar, and we'll do the same
4  thing. We'll come over to the sidebar, and we'll
5  have a more private conversation.
6       And so why don't we start with Mr. Duff.
7       (At sidebar.)
8       THE COURT: Let him get his headphones on.
9  Hang on just for a second, if we can.
10      All right. Mr. Duff, this is the
11 microphone. So if you could be careful to speak into
12 that --
13      MR. DUFF: Okay.
14      THE COURT: -- then the court reporter can
15 hear us.
16      MR. DUFF: I appreciate my civic duty. And
17 I really would like to serve on the jury, but I'm
18 extremely arthritic. I have surgery scheduled in a
19 couple of weeks. But to sit down at any -- for any
20 length of time is going to increase my pain levels as
21 the time goes on. And so I'm just afraid that my
22 judgment will be clouded after an extended period of
23 time.
24      THE COURT: And you need to, like, move on
25 kind of a regular basis so you don't get --

---

1    MR. DUFF:  I need to get up and move around.
2    THE COURT:  -- stiff?
3    Okay.  All right.  I am going to excuse you
4 under those conditions, given your medical condition.
5 So thank you for coming in here today.
6    MR. DUFF:  I appreciate the Court's time
7 too.  Thank you.
8    THE COURT:  Thank you.
9    (In open court.)
10    THE COURT:  You're free to leave.
11    Is it Ms. Sulzner?
12    (At sidebar.)
13    THE COURT:  Good morning.
14    COURT REPORTER:  Your Honor, I can't hear.
15    THE COURT:  We need to speak up a little
16 bit.  This is the microphone.
17    MS. SULZNER:  My husband is -- has recently
18 been diagnosed --
19    COURT REPORTER:  Your Honor, I still can't
20 hear.  I can't hear.
21    THE COURT:  You need to speak up a little
22 bit more.
23    MS. SULZNER:  Sorry.
24    THE COURT:  Okay.
25    MS. SULZNER:  My husband has been diagnosed

1 migraines.  I had a six-day migraine last week.  And
2 I ended up in the ER because of the stress.  So, yes,
3 it's very -- it would be very hard for me to
4 concentrate on the case.
5    THE COURT:  All right.  I'm going to go
6 ahead and excuse you then.  You're free to go.
7    MS. SULZNER:  Thank you very much.
8    THE COURT:  Thank you.
9    (In open court.)
10    THE COURT:  All right.  And then Ms.
11 Beckley?
12    (At sidebar.)
13    THE COURT:  Good morning.
14    MS. BECKLEY:  Good morning.  I have an
15 81-year-old husband at home.  And he had a stroke.
16 And so -- He's mobile, but from here up, he's not
17 well.  He has no short-term memory.  And he has loss
18 of sight in his right eye.
19    If I tell him something and ask him five
20 minutes later, he doesn't remember what I said.  And
21 he's home by himself.  I think he would be okay
22 during the day.  I would not be able to be
23 sequestered because he has pills to take and he
24 doesn't know how to sort them out.
25    THE COURT:  We don't sequester witnesses --

1 with a severe mental illness.  He's had two bouts of
2 psychotic episodes.  One was just like three or four
3 weeks ago.  He deals with constant suicidal
4 tendencies.  At the moment I have a minor at home.  I
5 really don't have an option.
6    I can continue on, but he would have to come
7 with me every day.  And if he should decide -- Just a
8 week ago I almost called the sheriff to have him
9 taken out of the home.  So it's kind of a deal where
10 at this particular time, until we get his medication
11 back and get him down to where he needs to be, it's
12 a -- I'm his constant caregiver.
13    THE COURT:  I understand.  And my concern
14 would be, quite frankly, that you'd be thinking about
15 all that while you're serving on the jury instead of
16 thinking about the evidence and --
17    MS. SULZNER:  I would.
18    THE COURT:  -- making a decision.
19    MS. SULZNER:  Especially if he decided --
20 He's an adult.  You know, he could say, "I'm going to
21 go to the van," or whatever.  He's been known to take
22 off.
23    THE COURT:  Okay.
24    MS. SULZNER:  So it's a constant.  I also --
25 That, with the stress of -- I have constant

1    MS. BECKLEY:  Okay.
2    THE COURT:  -- or jurors.  And we won't be
3 doing that in this case.  So that's not a concern
4 that you should have.  So you will be free to go home
5 every day.
6    MS. BECKLEY:  Okay.
7    THE COURT:  Where do you live at?
8    MS. BECKLEY:  In Dubuque.
9    THE COURT:  In Dubuque.  So that's, what,
10 about a 45-minute or an hour-and-15-minute --
11    MS. BECKLEY:  About an hour.
12    THE COURT:  Okay.  An hour drive.
13    MS. BECKLEY:  I take the Mount Vernon Road.
14    THE COURT:  Okay.  And so do you think,
15 under those circumstances, if you knew you could go
16 home every day and --
17    MS. BECKLEY:  I think he will be fine, but
18 I -- you know.  Being 81, you just don't know from
19 day to day.
20    THE COURT:  Certainly.
21    MS. BECKLEY:  I'm -- Well, I'm happy to be
22 here.
23    THE COURT:  Okay.
24    MS. BECKLEY:  I was a court attendant for
25 the judicial district for the State for eight and a

---

21

1   half years.  So I know how all this all works.  And I
2   know how important it is for people to be here.
3   So --
4           THE COURT:  Sure.  Well, I don't think I'm
5   going to excuse you, but here's --
6           MS. BECKLEY:  Okay.
7           THE COURT:  -- here's the deal.  Chances of
8   you actually ending up on the jury -- You have a
9   50/50 chance, probably, of being struck by one of the
10  lawyers.
11          MS. BECKLEY:  Okay.
12          THE COURT:  And even if you end up on the
13  jury, if something arises with your husband, you just
14  let me know --
15          MS. BECKLEY:  Okay.
16          THE COURT:  -- and we will excuse you.  And
17  then we'll take the alternate --
18          MS. BECKLEY:  Okay.
19          THE COURT:  -- instead.  Okay?
20          MS. BECKLEY:  Sounds fine to me.
21          THE COURT:  All right.  Thank you so much.
22          MS. BECKLEY:  All right.  Thank you.
23          (In open court.)
24          THE COURT:  Anybody else that I missed?
25  Okay.  Mr. Thompson, would you call a couple

---

22

1   jurors to replace those two.
2           THE CLERK:  Robert Smedley in seat number 20
3   here on the end.  And Megan Freitag, seat number 23.
4           THE COURT:  Could you get a microphone to
5   Mr. Smedley.
6           THE CLERK:  Yes.
7           THE COURT:  Mr. Smedley, would serving on
8   this jury for four days constitute a severe, extreme
9   hardship for you, sir?
10          MR. SMEDLEY:  No.
11          THE COURT:  All right.  Thank you.
12          And if you could pass the microphone down to
13  our other new juror.  This would be Ms. Freitag.
14          Would serving on the jury be a severe,
15  extreme hardship for you?
16          MS. FREITAG:  No.
17          THE COURT:  All right.  Thank you.
18          I want to thank all the jurors for being
19  willing to serve in this case.  The two that I
20  excused were excused for medical -- very legitimate
21  medical issues of either them or a loved one.  And
22  that's been my experience.
23          I go to conferences with judges around the
24  country.  And when we get to the point we often do,
25  talking about jury selection, and we talk about the

---

23

1   hardship excuses, what I hear from the judges, you
2   know, in California or New York or Chicago is that
3   when they get to that point, everybody raises their
4   hand, and it takes an hour to get through everybody's
5   excuse.
6           And I said, "That doesn't happen to us in
7   Iowa.  In Iowa, citizens are willing to serve.  And
8   when they do raise their hand, it's legitimate
9   reasons for why they need to be excused."  And so
10  thank you very much for your willingness to serve in
11  this case.
12          All right.  This is a criminal case.  The
13  plaintiff, or the one bringing the charge in the
14  case, is the United States of America.  And the
15  defendant is Michael Stevens [sic].  I'm going to
16  read to you now a statement of the case which will
17  give you some description about what this case is
18  about.
19          The charges in this case are as follows:  In
20  Count 1, Defendant Michael Stevenson is charged with
21  conspiracy to distribute a mixture or substance
22  containing a detectable amount of heroin, a schedule
23  one controlled substance, and cocaine base, commonly
24  called crack cocaine, a scheduled two controlled
25  substance.

---

24

1           In Count 2, Defendant Michael Stevenson is
2   charged with knowingly and intentionally
3   distributing, on or about February 1, 2017, a mixture
4   or substance containing a detectable amount of
5   heroin, a schedule one controlled substance.
6           In Count 3, Defendant Michael Stevenson is
7   charged with knowingly and intentionally
8   distributing, on or about February 2nd, 2017, a
9   mixture or substance containing a detectable amount
10  of heroin, a schedule one controlled substance.
11          In Count 4, Defendant Michael Stevenson is
12  charged with knowingly and intentionally
13  distributing, on or about August 23rd, 2017, cocaine
14  base, commonly called crack cocaine, a schedule two
15  controlled substance.
16          In Count 5, Defendant Michael Stevenson is
17  charged with knowingly and intentionally
18  distributing, on or about August 23, 2017, a mixture
19  or substance containing a detectable amount of
20  heroin, a schedule one controlled substances.
21          The defendant has pleaded not guilty to
22  these crimes.  Do not take anything that I have just
23  said in the statement of fact -- or statement of the
24  case as facts or as proof of anything.  This is
25  simply a broad description of what this case is

Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com

---

25

1  about.
2        And the reason we bring this up is I just
3  want to see if anybody thinks they've heard of this
4  case or believes that they know anything about this
5  case.  I have no idea whether this has been reported
6  in any newspaper or anything like that.
7        But do any of you, by a show of hands, think
8  you know anything about the case or heard anything
9  about it?  Okay.  I see no hands.
10  The parties in this case, as I've indicated,
11  are the United States and Mr. Stevens -- Stevenson.
12  The United States is represented by two prosecutors:
13  Jack Lammers and Kyndra Lundquist.
14        Mr. Lammers, could you introduce Ms.
15  Lundquist, the other person at your table, and other
16  people that you practice with, sir.
17        MR. LAMMERS:  Yes, Your Honor.  If you give
18  me a minute, I have a list of people I practice with.
19        Good morning.  My name is Jack Lammers.  I'm
20  an Assistant United States Attorney here in the
21  Northern District of Iowa.  This is Kyndra Lundquist.
22  She's also an Assistant United States Attorney here
23  in the Northern District of Iowa.  And this is Chad
24  Leitzen.  He is a Dubuque police officer.
25        The folks in the Cedar Rapids office that we

---

26

1  practice with are -- the United States Attorney is
2  Pete Deegan.  The first assistant is Sean Berry.
3  Justin Lightfoot is our criminal chief.  Assistant
4  U.S. Attorney Ashley Corkery.  Assistant U.S.
5  Attorney Marty McLaughlin.  Assistant U.S. Attorney
6  Tony Morfitt.  Senior Litigation Counsel Rich Murphy.
7  Assistant U.S. Attorney Emily Nydle.  Senior
8  Litigation Counsel Pat Reinert.  Assistant -- or I
9  guess Civil Chief Jacob Schunk.  Assistant United
10  States Attorney and Appellant Chief Mark Tremmel.
11  Assistant United States Attorney Dan Tvedt.  And
12  Assistant United States Attorney Lisa Williams.
13        Did Your Honor wanted me to read the Sioux
14  City attorneys as well?
15        THE COURT:  Why don't you.
16        MR. LAMMERS:  Oh.  And I'm sorry.  I forgot.
17  We have a recent hire, Special Assistant U.S.
18  Attorney Liz Dupuich.  She's here in the Cedar Rapids
19  office.
20        In the Sioux City office, our branch chief
21  is Tim Duax.  We have Assistant United States
22  Attorney Forde Fairfield, Assistant United States
23  Attorney Kevin Fletcher, Assistant United States
24  Attorney Shawn Wehde, Assistant United States
25  Attorney Mikala Steenholdt, Assistant United States

---

27

1  Attorney Katie Hayden.  And we have two new hires who
2  haven't started yet, but will be starting:  Assistant
3  United States Attorney Timmons and Special Assistant
4  United States Attorney Patrick Greenwood.
5        THE COURT:  Thank you, Mr. Lammers.
6        Do any of you jurors up front here believe
7  you know Mr. Lammers, Ms. Lundquist, the
8  investigator, or any of the names of anybody that
9  Mr. Lammers read off?  If so, please raise your hand.
10  We have in the -- Is it Ms. Einck?
11        MS. EINCK:  Very good.
12        THE COURT:  Ms. Einck, who do you know?
13        MS. EINCK:  Ashley Corkery.
14        THE COURT:  Okay.  And how do you know Ms.
15  Corkery?
16        MS. EINCK:  Friend of the family.
17        THE COURT:  All right.  Do you think that by
18  knowing Ms. Corkery and the fact that she works at
19  the U.S. Attorney's Office, if you were asked -- if
20  you were selected to be a juror in this case, do you
21  think that that would influence your ability to be
22  fair and impartial to both sides in this case in any
23  way?
24        MS. EINCK:  Not necessarily.
25        THE COURT:  And when you say "not

---

28

1  necessarily," what might factor into whether that
2  might influence it?
3        MS. EINCK:  I don't think I'm on.  Probably
4  because, knowing her, I would trust in what she says.
5        THE COURT:  Okay.  She's not in this case --
6        MS. EINCK:  Right.
7        THE COURT:  -- and doesn't have anything to
8  do with it.  You think that given that she has
9  nothing to do with this case that you can set aside
10  what you know about Ms. Corkery and just decide the
11  case based on the facts?
12        MS. EINCK:  I could.
13        THE COURT:  All right.  Thank you.
14        Anybody else?
15        All right.  Mr. Stevenson is represented by
16  Attorney Cory Goldensoph.
17        Mr. Goldensoph, could you introduce
18  yourself, your client, and other people you practice
19  with, please.
20        MR. GOLDENSOPH:  Thank you, Your Honor.
21  My name is Cory Goldensoph.  This is Michael
22  Stevenson.  I'm actually -- I have a sole practician
23  job, but I share an office space with three attorneys
24  who have their own practice:  Brian Johnson, John
25  Jacobsen, and Andy Wiezorek.  But that's the only

---

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

29

1  sort of -- Like I said, I'm not in practice with
2  them.  I just share office space with them.  So --
3       THE COURT:  Very good.  Thank you,
4  Mr. Goldensoph.
5       Do you know -- any of you believe you know
6  Mr. Goldensoph, his client, or any of the people that
7  Mr. Goldensoph shares office space with?  If so,
8  raise your hand.  Okay.  I see no hands.
9       All right.  I'm going to lead -- read off to
10 you now a list of names.  These are people who are
11 either going to testify in this trial or whose names
12 may come up in the course of the trial.  And we're
13 looking for the same thing, just to find out if, by
14 chance, you might know any of these people.
15      And so Adam Williams, Chad Leitzen, John
16 Walgren, Eric Steve, Colin Kelly, David Haupert.
17 "Haupert," I suppose.  H-A-U-P-E-R-T.  Emily Nelson,
18 Gary Pape, Heidi Woodyard, Orville Berbano, Jeremy
19 Slight, Justin Harris.  Michael [sic] Catellier, a
20 doctor.  Shannon Scholtes, William Bower, and Sade
21 Pointer.
22      Do any of you jurors believe that you know
23 any of the people whose names I just read off?  If
24 so, raise your hand, please.  Okay.  I see no hands.
25      All right.  By a show of hands, are any of

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

30

1  you currently working in any type of law enforcement
2  capacity?  And by that, I want to be very broad.  So
3  a sworn peace officer, certainly, but also anybody
4  involved in the corrections system, anybody who is
5  in -- working as a military police officer, even in
6  the National Guard on a part-time basis, anybody that
7  works in a security setting or security field either
8  for a private company or for some
9  government-associated company.  If so, raise your
10 hand.
11      Okay.  Thank you for paying attention, but
12 we won't ask you any questions back there unless you
13 get pulled up here.  Thank you.  All right.  I see no
14 hands up front here.
15      All right.  I want to broaden this out now
16 to not just you, but any of your close family
17 members.  So siblings, parents, children, close
18 cousins or close friends, somebody you consider to be
19 a close friend working in a law enforcement capacity.
20 And if so, raise your hand.  And keep your hand up
21 for a little bit.
22      Okay.  I'm not going to ask you any
23 questions right off, but keep your hands up.  I want
24 to make sure the lawyers can take down your names.
25 They may have follow-up questions of you.  I'm just

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

31

1  going to have one broad question for you.
2       Okay.  It looks like they've got your names
3  down, so you can put your arms down.  Here's my broad
4  question to the four of you who raised your hands:
5  Is there anything about that associate, the fact that
6  you either have a close friend or a family member
7  that's involved in law enforcement, do you think,
8  that would impair in any way your ability to be fair
9  and impartial to both sides in this case?  If so,
10 raise your hand.
11      Okay.  And, Ms. Einck.  Thank you.  First of
12 all, there's no right or wrong answers here.  And so
13 I'm very glad that you raised your hand if you have
14 any concerns at all.  So tell me about this.  Do you
15 think -- First of all, who do you know or who's
16 associated with law enforcement?
17      MS. EINCK:  I have a nephew that is a police
18 officer right here in Cedar Rapids.
19      THE COURT:  Okay.
20      MS. EINCK:  I've heard many of the stories,
21 a lot of them drug-related.  Also, I -- we have two
22 good friends in our county that we have just
23 discussed drugs.
24      THE COURT:  Okay.  I think what you're going
25 to hear in this case is that this activity ultimately

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

32

1  took place in the Dubuque area.  And so it's not
2  going to be Cedar Rapids.  Cedar Rapids police are
3  not going to be involved in this.
4       Will that allow you to set aside whatever
5  you know about, you know, local activity here and
6  decide this case on the facts or do you think that
7  it's going to influence your ability to do that?
8       MS. EINCK:  I am familiar with Dubuque.  My
9  son lived there for four years.  So I'm familiar with
10 it.  I just -- It could be a deciding factor.  I
11 don't -- I can't say right now, not hearing any more,
12 that it isn't.
13      THE COURT:  Sure.  Here's the deal.  In
14 these cases, when we come in as jurors, we can't set
15 aside everything you've ever seen or heard or know in
16 life and completely forget about it, but you have to
17 be able to mentally set it aside as a juror.
18      And you have to look at just the evidence in
19 the case.  And so if it's not presented from the
20 stand or you don't have an exhibit, you can't take
21 into account what you think you may have heard from
22 somebody else telling you something in the past.
23      You have to look at just the evidence in the
24 case.  And you have to judge all witnesses the same.
25 It doesn't matter whether they're a law enforcement

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

33

1  officer or not. You have to look at their testimony,
2  you have to weigh it on what you think about how
3  they're testifying, whether you think they're telling
4  the truth.
5      You have to compare it to the other evidence
6  to see if it matches up with everything else you
7  believe in the case. And you have to treat all
8  witnesses the same, whether they're law enforcement
9  officers or not.
10     Now, some jurors can do that, and some
11 people just, frankly, can't. And so where do you
12 think you sit in that? Can you set aside these
13 things you know and the friendships you have and just
14 decide this case based on the facts or do you think
15 your friendship with people involved in law
16 enforcement is going to influence your ability to do
17 that.
18     MS. EINCK: I'll try.
19     THE COURT: Do you think you can do it?
20     MS. EINCK: I don't know if I can do it.
21 Yeah.
22     THE COURT: All right. But you're going to
23 try?
24     MS. EINCK: I'll try.
25     THE COURT: Okay. All right. The lawyers

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

35

1  Mr. Thompson, if you could take the microphone to Ms.
2  Taylor here in the front row.
3      All right, Ms. Taylor. I'm going to ask you
4  a series of questions. And I'm going to ask the same
5  questions of everybody else who raised their hands
6  who served on juries.
7      First of all, was this in Federal court or
8  State court?
9      MS. TAYLOR: State.
10     THE COURT: And was it a criminal case or a
11 civil case?
12     MS. TAYLOR: Criminal.
13     THE COURT: Did the jury reach a verdict?
14     MS. TAYLOR: Yes.
15     THE COURT: And what was the verdict?
16     MS. TAYLOR: Guilty.
17     THE COURT: And did you serve as the
18 foreperson on the jury?
19     MS. TAYLOR: I was the extra.
20     THE COURT: You were the alternate?
21     MS. TAYLOR: Yes.
22     THE COURT: All right. And so did you
23 actually sit through the deliberation process, then?
24     MS. TAYLOR: No.
25     THE COURT: All right. All right. Let's

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

34

1  may have some follow-up questions of you yet, but
2  we'll move on.
3      All right. Does anybody in this group up
4  front, if you have -- do you currently have or have
5  you had a serious dispute with the Federal
6  government? It may be the IRS audited you or USDA --
7  you have a dispute with them over farmland or
8  something like that.
9      Anybody currently have or have you in the
10 past had a serious dispute with the Federal
11 government? If so, raise your hand. I see no hands.
12     Have any of you had a remarkably positive
13 experience with law enforcement officers or
14 remarkably bad experience with law enforcement
15 officers that, again, you think, knowing that we're
16 going to have law enforcement officers testifying --
17 and this is a criminal case -- that you just know
18 that, either way, it's going to influence your
19 ability to be fair and impartial in this case? If
20 so, raise your hand. Okay. I see no hands.
21     All right. By a show of hands, who of you
22 have previously served on a jury? And keep your
23 hands up. If your arms get tired, feel free to
24 switch out hands.
25     All right. You can put your hands down.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

36

1  move the microphone, then, back to Ms. Benda? I'm
2  sorry. Right next to you, sir. Perfect.
3      Ms. Benda, you served on a jury as well?
4      MS. BENDA: Yes.
5      THE COURT: Was this in Federal or State
6  court?
7      MS. BENDA: Federal.
8      THE COURT: And was it a criminal case or
9  civil?
10     MS. BENDA: Criminal.
11     THE COURT: And -- Well, let's talk about
12 the difference.
13     MS. BENDA: Yes.
14     THE COURT: A criminal case is where the
15 Government is on one side and if the defendant -- the
16 question for the jury is whether the defendant's
17 guilty or not guilty of committing a crime.
18     A civil case, the Government could be on one
19 side or the other. But a civil case is between two
20 parties usually looking for some type of financial
21 compensation for damages done or injuries suffered,
22 something like that.
23     So do you think your case was a criminal
24 case or a civil case?
25     MS. BENDA: Criminal.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR**          reportingwhereur@yahoo.com

37

1    THE COURT:  And did you reach a verdict as a
2  jury?
3    MS. BENDA:  Yes.
4    THE COURT:  And what was the verdict?
5    MS. BENDA:  Guilty.
6    THE COURT:  And did you serve as the
7  foreperson?
8    MS. BENDA:  No.
9    THE COURT:  Okay.  Can you do me a favor?
10  Can you assure the rest of the people on this panel
11  who have not served as jurors that you'll actually
12  live through the process?
13    MS. BENDA:  Yeah.  I did.
14    THE COURT:  All right.  What did you think
15  was an important attribute of being a good juror?
16    MS. BENDA:  I guess just listening to
17  everything that was said.
18    THE COURT:  All right.  Thank you very much.
19    Let's move the microphone right behind you
20  to Ms. "Franic"?
21    MS. FRANCIK:  Francik.
22    THE COURT:  Francik.  Thank you.  Ms.
23  Francik, was your jury Federal or State?
24    MS. FRANCIK:  State.
25    THE COURT:  And was it a criminal or civil

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

38

1  case?
2    MS. FRANCIK:  Criminal.
3    THE COURT:  Did you reach a verdict?
4    MS. FRANCIK:  Yes.
5    THE COURT:  And what was the verdict?
6    MS. FRANCIK:  Guilty.
7    THE COURT:  Did you serve as the foreperson?
8    MS. FRANCIK:  No.
9    THE COURT:  What did you think was a good
10  attribute of jurors?
11    MS. FRANCIK:  I guess listening to both
12  sides.
13    THE COURT:  All right.  Thank you.
14    If you could get the microphone to
15  Mr. Thompson, then.
16    And, Mr. Thompson, let's start on the -- Ms.
17  Beckley here on the right, on the far end.
18    Ms. Beckley, was your case a Federal or
19  State case?
20    MS. BECKLEY:  State.
21    THE COURT:  Criminal or civil?
22    MS. BECKLEY:  Civil.
23    THE COURT:  Did you reach a verdict?
24    MS. BECKLEY:  We did.
25    THE COURT:  And what was the verdict?

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

39

1    MS. BECKLEY:  We didn't give them much, but
2  we gave them something.
3    THE COURT:  All right.  And did you serve as
4  the foreperson?
5    MS. BECKLEY:  I did not.
6    THE COURT:  Okay.  Do you remember the judge
7  in that case talking about the burden of proof being
8  by the preponderance of the evidence?
9    MS. BECKLEY:  Yes, I did.
10    THE COURT:  And do you remember the judge
11  may have described it as just slightly more than the
12  other side.  And if one side just barely tips the
13  scales, then that side that tips the scales wins.  Do
14  you remember that description?
15    MS. BECKLEY:  Yes, I do.
16    THE COURT:  All right.  We're going to talk
17  about the different standards that applies in a
18  criminal case here in a little bit.  So --
19    MS. BECKLEY:  Okay.
20    THE COURT:  What did you think was important
21  as a juror?
22    MS. BECKLEY:  Well, as I told you in the
23  sidebar, I worked as a court attendant.  And I know
24  that it's very important that people serve on juries
25  when they're called upon.  And you need to listen to

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

40

1  both sides and come to your conclusions with your --
2  support with the rest of the jury.
3    THE COURT:  All right.  Thank you so much.
4    If you could pass the microphone next to you
5  to Mr. Hansen.
6    Mr. Hansen, was yours in Federal or State
7  court?
8    MR. HANSEN:  There were two separate
9  occasions.  One was -- Well, they were both State,
10  but one was criminal and one was civil.
11    THE COURT:  Oh, we have an experienced juror
12  here.  You're almost a professional.
13    MR. HANSEN:  Let's not go there.
14    THE COURT:  And -- All right.  And so let's
15  talk about the criminal case.  Did you reach a
16  verdict?
17    MR. HANSEN:  Yes, we did.
18    THE COURT:  And what was the verdict?
19    MR. HANSEN:  Guilty.
20    THE COURT:  And did you serve as the
21  foreperson?
22    MR. HANSEN:  I did not.
23    THE COURT:  And on the civil case, did you
24  reach a verdict?
25    MR. HANSEN:  That one got -- I don't know

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR        reportingwhereur@yahoo.com**

41

1  how you call it.  It was ended -- Our service was
2  ended after three days, I believe it was.  They went
3  to settlement procedures.
4          THE COURT:  Okay.  And so they settled the
5  case without your help?
6          MR. HANSEN:  Yep.
7          THE COURT:  And so what did you think was
8  important as a -- to be a good juror?
9          MR. HANSEN:  Just -- Despite your past
10 experience or things you've been exposed to, just
11 keep an open mind.
12         THE COURT:  Great.  Thank you so much.
13         If you could hand the microphone right
14 behind you to Ms. Forney.
15         And, Ms. Forney, was yours in State or
16 Federal court?
17         MS. FORNEY:  State.
18         THE COURT:  And criminal or civil?
19         MS. FORNEY:  Criminal.
20         THE COURT:  Did you reach a verdict?
21         MS. FORNEY:  No.  We were a hung jury.
22         THE COURT:  All right.  And how long ago was
23 this?
24         MS. FORNEY:  I'm 40.  I was 18 at the time.
25 So 22 years ago.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

42

1          THE COURT:  Okay.  And did you serve as the
2  foreperson?
3          MS. FORNEY:  No.
4          THE COURT:  What did you think was important
5  as a juror?
6          MS. FORNEY:  Both keeping an open mind and
7  listening and paying attention to what was being said
8  by both parties.
9          THE COURT:  All right.  Thank you so much.
10         If you could pass the microphone down two
11 people to Ms. Ihnen.
12         MS. IHNEN:  "Ihnen."
13         THE COURT:  "Ihnen."  Ms. Ihnen, was yours
14 in Federal or State court?
15         MS. IHNEN:  State.
16         THE COURT:  And criminal or civil?
17         MS. IHNEN:  Criminal.
18         THE COURT:  Did you reach a verdict?
19         MS. IHNEN:  Guilty.
20         THE COURT:  And did you serve as the
21 foreperson?
22         MS. IHNEN:  No.
23         THE COURT:  What did you think was important
24 to be a good juror?
25         MS. IHNEN:  Just try and keep an open mind.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

43

1  Ask questions if you have -- if you're not sure of
2  something.
3          THE COURT:  All right.  If you could pass
4  the microphone back to Mr. Thompson, then.
5          And did I miss anybody who has served on a
6  jury?  All right.  I don't see any hands.
7          All right.  Have any of you served as a
8  witness in a case aside from family law matters?  So
9  I'm not interested in a divorce or a child custody
10 proceeding or something like that.  But on either a
11 civil or criminal case, have any of you served as a
12 witness?
13         And so keep your hands up, if you would.
14 I'm going to have the lawyers -- so they can take
15 down your names.  I'm just going to have one
16 question, probably, for the three of you.
17         All right.  It looks like they got you.
18 Here's my broad question:  Anything about having
19 served as a witness in those cases that you think
20 would make it difficult for you to be a fair and
21 impartial juror in this case?  If so, raise your
22 hand.  All right.  None of the three raised their
23 hands.  Thank you.
24         Do any of you know each other or, by chance,
25 are related to each other in this panel up here in

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

44

1  front?  There's one down front here.
2          Okay.  Mr. Thompson -- Ms. Mooney, is it?
3          MS. MOONEY:  Yes.
4          THE COURT:  Ms. Mooney, who do you know?
5          MS. MOONEY:  Nancy Einck.
6          THE COURT:  Okay.  Ms. Einck?
7          MS. EINCK:  Hi.  I'm sorry.
8          THE COURT:  Oh, right there.  Okay.  Here's
9  the question I have for you, Ms. Mooney, then.  If
10 you and Ms. Einck ended up on the same jury back
11 there, would you be able to make up your own mind and
12 be firm about what you believed or do you think your
13 friendship with Ms. Einck, if she thought something
14 different from you, you think that that would
15 influence the way you decide the case?
16         MS. MOONEY:  I could make up my own mind.
17         THE COURT:  All right.  And if you could
18 hand the microphone back to Ms. Einck.
19         And I have the same question for you, Ms.
20 Einck.  Do you think that you could make up your own
21 mind and be firm about it or do you think you would
22 be influenced by what Ms. Mooney thinks?
23         MS. EINCK:  I can make up my own mind.
24         THE COURT:  Very good.  Thank you.
25         Anybody else?  All right.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

45

1    All right. Let's talk about the burden of
2 proof. In a criminal case, the burden of proof is by
3 what's called beyond a reasonable doubt. And I will,
4 when I give you the law in this case at the beginning
5 of the trial, define in more precise terms what
6 beyond a reasonable doubt is.
7    But the Government has to prove each element
8 of each offense by proof beyond a reasonable doubt.
9 And it doesn't mean proof beyond all doubt, but it
10 means proof beyond a reasonable doubt. And I will
11 define it for you.
12    And you're going to have to follow my
13 instructions when I define it for you, but here's my
14 concern. I'm guessing you all have watched crime
15 shows on TV and watched movies about crime and you've
16 read in papers about criminal law. And you might
17 have already formed an opinion about what you think
18 about that burden of proof.
19    Some of you might think that that burden of
20 proof is too high and that we ought to have a lower
21 burden of proof, the Government should only have to
22 prove it by a preponderance of the evidence, perhaps.
23    Or maybe some of you think just the
24 opposite. Maybe some of you think that the burden of
25 proof is too low and the Government has to prove its

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

46

1 case beyond all possible doubt whether it's
2 reasonable doubt or not.
3    Do any of you feel like you've had -- you
4 have a belief regarding the burden of proof in this
5 case that is either one of those, that you feel that
6 it's too high or too low? If so, raise your hand.
7 Okay. So I see no hands.
8    You heard that Mr. Stevenson was charged by
9 way of an indictment, which is simply a charging
10 document returned by a grand jury. The United States
11 Constitution requires that before a person can be
12 charged with a felony offense in the Federal system
13 that a group of citizens randomly pulled from the
14 community serving as grand jurors have to determine
15 if there's probable cause to believe that the person
16 committed a crime.
17    But an indictment is simply an accusation.
18 So the Government, through this process of the grand
19 jury, has accused Mr. Stevenson of committing a
20 crime, but it's not proof of anything. And the grand
21 jury most certainly did not decide whether the
22 indictment should be brought or the charge or
23 accusation should be made by proof beyond a
24 reasonable doubt. They simply decided by probable
25 cause, a low standard.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

47

1    And so it's important here that you
2 understand that Mr. Stevenson is afforded the
3 presumption of innocence. Even though the Government
4 has accused him of a crime, in our system of justice,
5 he is presumed to be innocent until and unless the
6 Government can prove his guilt by proof beyond a
7 reasonable doubt.
8    And the fact that he's been accused of
9 something doesn't mean anything. So as I look at
10 Mr. Stevenson right now, I see an innocent man. He
11 remains innocent all the way through this trial
12 and until and unless the Government can prove his
13 guilt beyond a reasonable doubt.
14    Now, if I asked any of you right now, "Look
15 at Mr. Stevenson. Do you think he's guilty or not
16 guilty?" Most of you would probably have the natural
17 reaction of saying, "Well, I don't know. I haven't
18 seen any evidence yet."
19    And that seems like a commonsense reaction.
20 It would be wrong. Because if I've told you that he
21 is presumed innocent, you have to be able to look at
22 Mr. Stevenson right now and say, "I see an innocent
23 man." And he will remain innocent until and unless
24 the Government can prove his guilt beyond a
25 reasonable doubt.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

48

1    Now, that's kind of a tough thing to do
2 sometimes. And some people have a difficult time
3 doing that. But if you are chosen to be jurors in
4 this case, you have to be able to do that.
5    You have to be able to start off this trial
6 recognizing that Mr. Stevenson is innocent and he's
7 presumed to be innocent all the way through trial
8 until you go back to the jury room, and only then, if
9 you conclude that the Government has, in fact, proven
10 his guilt on one or more of the charges with evidence
11 beyond a reasonable doubt.
12    Do any of you think you would have
13 difficulty affording Mr. Stevenson the full benefit
14 of the presumption of innocence in this case? If so,
15 raise your hand. Okay. I see no hands.
16    You will notice that Mr. Stevenson is
17 African American. And there are a few people of
18 color in this courtroom. And so I want to talk about
19 that for a little bit.
20    When I worked out in Washington, D.C., my
21 best friend was an African-American lawyer. And one
22 time his wife invited me over to a surprise birthday
23 party for Monty. And so I went over to his house and
24 showed up. And I found out that I was the only white
25 person at this party. And I realized, for the first

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

Sarah J. Dittmer, CSR, RPR        reportingwhereur@yahoo.com

49

1  time, what it must be like to be a person that has a
2  race different from the majority of everybody else
3  there.
4          And as I walked around the party and talked
5  to people, I realized that they probably made
6  assumptions about me based on the color of my skin.
7  They probably assumed I had certain inherent
8  political beliefs or had some type of upbringing or
9  background simply because of the color of my skin.
10 And I realized that's just very natural for us to
11 make those assumptions.
12         And so we all do that. We all make
13 assumptions based on people's appearance and the
14 color of their skin and their gender and everything
15 else. And we make those assumptions based on our
16 experiences in life.
17         There's nothing wrong with that. But as
18 jurors, it's incredibly important that we base our
19 decisions on the facts and not on somebody's race or
20 gender or religious beliefs or national origin, only
21 on the facts of the case.
22         You know, when we see images of Lady
23 Justice, she has got the scales in one hand and the
24 sword. And if you notice, she's got a blindfold on.
25 And the reason she has a blindfold is because

50

1  justice is supposed to be blind to anything like
2  those matters that -- of race and gender and
3  religious beliefs and so forth.
4          Now, if you are chosen to serve as jurors in
5  this case, I'm going to be asking you to do three
6  things: One, recognize that you probably have some
7  inherent views about race, about other people.
8          Number two is recognize that you have to set
9  that aside and decide the case based only on the
10 facts of this case. And I guarantee you that
11 Mr. Stevenson's race or religious beliefs or national
12 origin will have nothing to do with the facts of this
13 case and whether the Government can prove their case
14 beyond a reasonable doubt.
15         And then, ultimately, you have to decide
16 this case based only on the facts and on the law as I
17 give it to you. Now again, we all have come from
18 different backgrounds. Doing that might be easy for
19 some people. It might be very difficult or
20 impossible for other people to set aside those
21 viewpoints.
22         And so do any of you believe that you would
23 have difficulty setting aside any views and deciding
24 this case based only on the facts and putting aside
25 anything about Mr. Stevenson's race or anything else

51

1  about his religious beliefs or national origin or
2  anything else and just decide the case on the facts?
3  If so, raise your hand, please. Okay. I see no
4  hands.
5          The Fifth Amendment to the United States
6  Constitution guarantees that people accused of a
7  crime have the right to remain silent. And that
8  right continues with them all the way through a
9  trial.
10         And so in this case, Mr. Stevenson has the
11 constitutional right to remain silent. Now, he may
12 testify in this trial or he may not. I don't know
13 what he'll do. But if he chooses not to testify,
14 jurors cannot hold that against him in any way. In
15 fact, you cannot even discuss it back in the jury
16 room.
17         I teach part-time at the law school. And in
18 one of my classes, sometimes we talk about the Fifth
19 Amendment right to remain silent. And I will go to
20 the chalkboard and I'll ask the students to start
21 calling out to me different reasons why somebody
22 might not testify that has absolutely nothing to do
23 with whether they're guilty or not guilty.
24         And somebody will say, "Well, maybe they
25 have a speech impediment." Another person: "English

52

1  is a second language." Another person may say,
2  "Well, they get frightened speaking in public and
3  they'll start being really nervous and sweating, and
4  it will make them look guilty."
5          And we'll go on and on. And I could fill a
6  chalkboard with all the reasons why somebody might
7  not testify that has absolutely nothing to do with
8  whether they're guilty or not guilty of the offense.
9          If you are selected to be jurors in this
10 case, you have to be able to set aside any of your
11 own thoughts about what you would do if you were
12 accused of a crime and you were innocent.
13         And you have to allow Mr. Stevenson and
14 afford him the full benefit of the Fifth Amendment
15 right to remain silent if he choices not to testify
16 in this case. And you can't read anything into it.
17 You can't think it proves anything.
18         You have to decide the case based on the
19 evidence that is presented and not speculate about
20 what isn't presented or why it wasn't presented and
21 not take that into account in any way.
22         Would any of you think you would have
23 difficulty doing that and affording Mr. Stevenson the
24 full benefit of the Fifth Amendment right to remain
25 silent? If so, raise your hand, please. Okay. I

53

1    see no hands.
2            You've heard that this case involves drugs
3    and heroin.  And drugs are prevalent in our society.
4    It has an impact on a lot of people.  It may have had
5    impact on you or your loved ones or people that you
6    know.
7            And let me tell you, first of all, this is
8    not a case about whether drugs are good or not.  It's
9    not a referendum on drugs.  This is a case, again,
10   where the Government has accused Mr. Stevenson of
11   specific acts on specific dates.  And the jury is
12   going to listen to evidence and see if the Government
13   can prove that the defendant committed specific acts
14   on certain dates.  That's what this case is about.
15           And so even though you might be against
16   drugs and you might have a feeling that drugs have
17   affected somebody you know or love, you have to be
18   able to set aside that and just decide this case
19   based on whether the Government can actually prove
20   what they've accused Mr. Stevenson of.
21           Do any of you think that just because this
22   is a drug case that it's going to make it so you
23   can't be a fair and impartial juror and decide the
24   case on the facts of this case?  If so, raise your
25   hand, please.  All right.  I see no hands.

                *Sarah J. Dittmer, CSR, RPR*
                    *1(888)388-2723*

54

1            There is a movement afoot among society
2    right now to try to legalize some drugs, including
3    marijuana.  Now, this case is not about marijuana,
4    but some of you might have strong views about drugs
5    and maybe they need to be legalized.  That would
6    solve all the problems if we'd just legalize drugs
7    and regulate them like we do alcohol or something
8    like that.
9            If you serve as jurors in this case, you
10   have to follow the law as I give it to you.  And the
11   law, as I give it to you, will tell you that it is
12   illegal to distribute drugs and conspire to
13   distribute drugs.  So whether you think it ought to
14   be legalized or not, you have to be able to follow
15   the law as I give it to you.
16           Do any of you think you'd have difficulty
17   doing that because you feel strongly that the laws
18   against drugs and drug distribution are wrong?
19   Anybody feel like -- that way?  If so, raise your
20   hand.
21           All right.  And Mr. Morling?
22           MR. MORLING:  Yes.
23           THE COURT:  Do you feel like all drugs ought
24   to be legalized or just certain drugs?
25           MR. MORLING:  I would say all drugs.

                *Sarah J. Dittmer, CSR, RPR*
                    *1(888)388-2723*

55

1            THE COURT:  All right.  Do you recognize
2    that Congress, representing the people of the United
3    States, has concluded otherwise and that it is -- at
4    least right now the law that all drugs aren't
5    legalized?  Do you recognize that?
6            MR. MORLING:  I do.
7            THE COURT:  All right.  And if I told that
8    that was the law and you have to follow it, could you do
9    that or do you think your views on drugs are so
10   strong that if you went back to the jury room, you
11   would vote to acquit simply because you disagreed
12   with the law?
13           MR. MORLING:  I would be very uncomfortable
14   with potentially handing down a guilty verdict based
15   on something that I view as not being immoral or
16   wrong.
17           THE COURT:  All right.  Do you think that
18   you could do it or do you just think that you
19   wouldn't be able to -- Even if the Government proved
20   the case and you went and you said, "Yep, they proved
21   that on these dates the defendant did these acts with
22   this state of mind, I find it beyond a reasonable
23   doubt, I'm still going to acquit because I just think
24   it's wrong."
25           MR. MORLING:  I would follow the law in this

                *Sarah J. Dittmer, CSR, RPR*
                    *1(888)388-2723*

56

1    instance.
2            THE COURT:  You would?
3            MR. MORLING:  I would.
4            THE COURT:  All right.  Thank you.  Anybody
5    else?
6            All right.  They say that a good
7    characteristic of judges is that they are impartial,
8    that they can wait patiently to hear all the evidence
9    before they make up their mind, that they will follow
10   the law whether they agree with the law or not, and
11   that they will be fair and impartial to both sides in
12   a case.
13           Well, those same attributes that make a good
14   judge also make a good juror.  A good juror keeps an
15   open mind, listens to all the evidence, and doesn't
16   try to make up their mind after the first witness and
17   the second witness or the third witness but waits
18   until all the evidence is in and the lawyers have
19   argued the case to the jury and they went back and
20   they talked to their fellow jurors before they
21   started making up their minds about what the verdict
22   ought to be, and that they are fair and impartial to
23   both sides deciding the case just based on the facts
24   and that they follow the law as given to them by the
25   judge whether they agree with it or not.

                *Sarah J. Dittmer, CSR, RPR*
                    *1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR        reportingwhereur@yahoo.com**

57

1    With that description of a good juror, do
2  any of you think that -- knowing what you do about
3  yourself -- you just can't live up to that kind of
4  standard and you would have difficulty serving as a
5  good juror in this case?  If so, raise your hand.
6  Okay.  I see no hands.
7    All right.  Is there any other thing -- You
8  all know yourself better than anybody else does.  And
9  I've tried to ask some broad questions here, but
10 there may be something that you already know about
11 yourself and your background and your beliefs that
12 you know that would impair your ability to be a fair
13 and impartial juror in this case, and if you were
14 just asked the right question, you would raise your
15 hand and give that out.
16    So now I'm going to ask just a broad
17 question.  Is there anything about you or your
18 background or your beliefs that any of you believe
19 would impair your ability to be a fair and impartial
20 juror in any way?  If so, raise your hand.  Okay.  I
21 see no hands.
22    All right.  Mr. Lammers, you may now
23 question the jury.
24    MR. LAMMERS:  Thank you, Your Honor.  Is
25 this working?  Testing.  Okay.  Thanks.

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

58

1    Good morning.
2    PROSPECTIVE JURORS:  Good morning.
3    MR. LAMMERS:  We're very fortunate today in
4  the fact that Judge Williams did the voir dire this
5  morning.  He covered a lot of the topics that I
6  intended to cover.  I want to follow up on a couple
7  of things.
8    And I'm probably going to try to keep this
9  as short as I can, but there's a couple of concepts
10 that I want to go over as well.  And I may have a
11 couple of specific questions for some folks.
12    If I do, I'm not trying to pry.  I'm not
13 trying to embarrass anyone, but there's some things
14 that you may have answered on your questionnaires
15 that I may follow up on as well.
16    So first of all, as Judge Williams said,
17 this is -- obviously, it's a drug case.  It involves
18 heroin.  It involves crack cocaine.  And again, as
19 Judge Williams said, drugs are prevalent in society.
20    Thank you for your candor in regards to -- I
21 guess I'd call it the Libertarian perspective in
22 regards to -- in regards to drugs.  But I want to
23 delve a little bit more into that.
24    I want to make sure that there's not -- I
25 guess what I'm looking for is I want to make sure

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

59

1  that there aren't folks who are saying, "No, I don't
2  have an opinion" or "I can follow the law in regards
3  to this as instructed, but I really think
4  legalization is the way we need to be going as a
5  society."
6    And is there anybody who feels that, for
7  example, marijuana should be legalized, knowing that
8  it's something like, what, 28 states now or maybe
9  even more that either decriminalized or legalized it?
10 Is there anybody that thinks we should be going down
11 that road in the state of Iowa?  A fair number of
12 you.
13    Okay.  In knowing that -- And I'm not going
14 to -- not going to pick on people here, but knowing
15 that this is not a marijuana case, this is a heroin
16 case and a crack cocaine case, is there anyone who
17 feels that we should be going down the road towards
18 legalization of heroin and crack cocaine?
19    Yes, sir.  I think we've covered that one.
20 I'm not going to ask you any follow-up questions in
21 regard to it.
22    Anyone else?  I just want to make sure that
23 those folks who think that marijuana should be
24 legalized for any reason or no reason or you just
25 think that maybe that's the way to go, that that's

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

60

1  not going -- there's not going to be a spillover into
2  other types of substances, into other types of drugs.
3    Can everybody commit that they will follow
4  the law as the judge instructs you if the law is that
5  the trafficking in these substances or conspiring to
6  traffic in these substances is illegal?  Okay.  Thank
7  you.
8    Who, by a show of hands here, watches CSI or
9  Law & Order or any other of those sort of crime
10 procedural shows at one point or another?  May not be
11 regular viewers, but I assume everybody has seen one
12 of those types of shows.
13    Who, by a show of hands, has heard the
14 expression, "Well, that's circumstantial evidence"?
15    All right.  I am going to sort of pick on a
16 couple of people here.
17    Ms. Hotchkiss?  Okay.  I'm going to ask you
18 a couple of questions in regards to this.  And I --
19 Up in the back.  You've heard the expression, "That's
20 circumstantial."
21    MS. HOTCHKISS:  Yeah.  Yes.
22    MR. LAMMERS:  What do you think that means
23 when you hear that in context, that phrase?
24    MS. HOTCHKISS:  That it is -- You just put
25 me on the spot, but I just went -- Yeah, I lost what

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

61

1  I thought it meant.
2           MR. LAMMERS:  Okay.
3           MS. HOTCHKISS:  Yeah.
4           MR. LAMMERS:  Let me see if I can make a
5  suggestion.
6           MS. HOTCHKISS:  Sure.
7           MR. LAMMERS:  You hear it sort of in a --
8  generally in a way that makes it sound like it's not
9  as important or that, well, you can't rely on that
10 evidence.  That's just circumstantial.
11          MS. HOTCHKISS:  No.  No.  Actually, I would
12 say that it is something that the evidence -- it
13 could be applied to something -- it -- There could be
14 other reasons that evidence -- Actually, I just
15 lost it again what I'm trying to say.
16          MR. LAMMERS:  Sure.
17          MS. HOTCHKISS:  Yeah.
18          MR. LAMMERS:  And I'm not trying to put
19 anybody on the spot here.
20          MS. HOTCHKISS:  Yeah.
21          MR. LAMMERS:  So circumstantial evidence,
22 generally defined, is sort of the circumstances
23 around the event can point to a conclusion.
24          MS. HOTCHKISS:  Yes.
25          MR. LAMMERS:  Right?  So instead of somebody

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

62

1  necessarily watching that event occurring, you could
2  see potentially the results of that event and draw a
3  conclusion --
4           MS. HOTCHKISS:  Uh-huh.
5           MR. LAMMERS:  -- from that.
6           MS. HOTCHKISS:  Okay.
7           MR. LAMMERS:  Okay?
8           MS. HOTCHKISS:  Yep.
9           MR. LAMMERS:  And I'll see if I can
10 illustrate this with a hypothetical.  It's a little
11 bit ridiculous, but I think most people sort of see
12 it.  Do you have a vehicle?
13          MS. HOTCHKISS:  I do.
14          MR. LAMMERS:  Do you ever wash your vehicle?
15          MS. HOTCHKISS:  Yes.
16          MR. LAMMERS:  Ever come out to your car or
17 your -- whatever your vehicle is after it's been
18 freshly washed and see that there's some droppings on
19 the vehicle?
20          MS. HOTCHKISS:  Yes.
21          MR. LAMMERS:  Okay.  Now, if you didn't see
22 the bird that flew over but you saw the results of it
23 after you come out and see your car, are you able to
24 draw a conclusion about what happened?
25          MS. HOTCHKISS:  Yes.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

63

1           MR. LAMMERS:  That's circumstantial
2  evidence; right?
3           MS. HOTCHKISS:  Yes.
4           MR. LAMMERS:  So you can draw a conclusion
5  based on the circumstances, even if somebody didn't
6  see it.
7           MS. HOTCHKISS:  Yes.
8           MR. LAMMERS:  Would you be able to do that
9  in a trial today or the next few days?  If you didn't
10 necessarily have an eyewitness but you had some
11 circumstances that pointed to a conclusion, could you
12 draw a conclusion from that?
13          MS. HOTCHKISS:  Uh-huh.  Yes.
14          MR. LAMMERS:  Now, I'm not asking you to
15 predict whether or not --
16          MS. HOTCHKISS:  Right.
17          MR. LAMMERS:  -- I'm going to have enough
18 evidence.
19          MS. HOTCHKISS:  Sure.
20          MR. LAMMERS:  Because, obviously, you
21 haven't heard everything yet.  I'm just saying, can
22 you listen to and accept that type of evidence and
23 put that in your calculation?
24          MS. HOTCHKISS:  Yes.
25          MR. LAMMERS:  Anybody not be able to do

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

64

1  that?  Anybody that says, "Look, if I don't have a
2  videotape or if I don't have an audiotape or if I
3  don't have an eyewitness, I can't come to a
4  conclusion"?
5           Hang on a second.  We will talk to you in
6  just a minute.  Is it Ms. Morris?
7           MS. MORRIS:  Yes.
8           MR. LAMMERS:  Okay.
9           MS. MORRIS:  Thank you.
10          MR. LAMMERS:  Go ahead.
11          MS. MORRIS:  I would have a difficult time
12 casting my doubt against someone without firm witness
13 or a firm knowledge of what happened.  Circumstantial
14 to me is -- I would be scared of being wrong.
15          MR. LAMMERS:  Sure.  And I think a lot of
16 people -- Because we all sort of think of it that
17 way, especially when we hear that expression about
18 how, oh, it's circumstantial or it's not as
19 important.  But we draw conclusions all the time in
20 our daily life; right?
21          MS. MORRIS:  Yes, we do.
22          MR. LAMMERS:  You know, if you are driving
23 down the road, you ever get a rock chip in your
24 windshield?
25          MS. MORRIS:  Sure.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

65

1        MR. LAMMERS:  Yeah.  It's going so fast you
2   don't see the rock.
3        MS. MORRIS:  Uh-huh.
4        MR. LAMMERS:  But you'd draw a conclusion as
5   to how the chip got there; right?
6        MS. MORRIS:  Yes.
7        MR. LAMMERS:  Okay.  So that's what I'm
8   asking.
9        MS. MORRIS:  Uh-huh.
10       MR. LAMMERS:  Could you consider that type
11  of evidence, maybe in conjunction with other
12  evidence, and reach a conclusion?
13       MS. MORRIS:  Maybe.
14       MR. LAMMERS:  Yeah.  Because if it's --
15       MS. MORRIS:  It's very hard to me in a case
16  where it's involving someone's life.
17       MR. LAMMERS:  Sure.
18       MS. MORRIS:  That's hard for me to equate
19  with a chip in my windshield.
20       MR. LAMMERS:  Absolutely.  And I used the
21  hypotheticals, obviously, as just a way to illustrate
22  the concept.  I don't mean to make light of it or be
23  flip about it.  This is an important thing.  And,
24  obviously, you're all taking it seriously.  And
25  that's important as well.  So --

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

66

1        And I hate to do it, but I'm going to give
2   you another hypothetical.  And this is for the entire
3   jury.  Right.  So let's say that we have a sealed
4   box.  Okay.  And the box has a lid.  And the lid is
5   the only way into the box.  All right?  Inside the
6   box, there's a cat.  The cat's living.  It's not --
7   We're not killing the cat in this scenario.
8        The cat is alive.  The cat is in the box.
9   Okay?  Open the lid, the cat stays in the box.  In
10  goes a mouse.  Put the lid back down.  Come back 20
11  seconds later, you open the lid of the box.  Inside
12  the box, there's a cat.  No more mouse.  Anybody
13  know -- doubt where that mouse went?
14       By a show of hands, is there anybody who
15  says, "Boy, I just don't know what happened to that
16  mouse"?  That's what I'm trying to illustrate with
17  the circumstantial evidence.
18       Obviously, you didn't see it.  You weren't
19  in the box.  I'm wondering if people could draw a
20  conclusion based upon circumstances surrounding an
21  event.  Now, that was pretty cut and dried.
22       MS. MORRIS:  Uh-huh.
23       MR. LAMMERS:  And you have to decide one
24  based on different factors.  I get that.  I just want
25  to make sure that I don't have somebody who says,

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

67

1   "Listen, if I don't have somebody who says that they
2   saw it or a videotape or an audiotape, I just can't
3   make that decision."
4        Knowing that, do you feel -- still feel the
5   same way?
6        MS. MORRIS:  Yes, I do.
7        MR. LAMMERS:  Okay.  Thank you very much.
8        So is it Ms. "Freetag"?
9        MS. FREITAG:  Freitag.
10       MR. LAMMERS:  Freitag.  If you were asked --
11  If you were to sit on this jury and you were asked
12  to -- if you had two competing views of what
13  occurred, would you be able to make a determination
14  as to which one you felt you believed?
15       Again, don't -- not knowing upfront.  You
16  don't know what the evidence is going to be.  You
17  don't know what you're going to hear.  But you hear
18  two competing views.  One of them has to be what
19  happened.
20       MS. FREITAG:  Yes.
21       MR. LAMMERS:  Would you be able to make a
22  determination?
23       MS. FREITAG:  Yes.
24       MR. LAMMERS:  What kind of things would you
25  look at?  Now, what kind of things would you want to

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

68

1   know in order to determine which competing view you
2   could believe?
3        MS. FREITAG:  I mean, like what happened --
4        MR. LAMMERS:  Sure.
5        MS. FREITAG:  -- you know.  I mean, the
6   evidence behind it.
7        MR. LAMMERS:  Yep.  You'd want to know the
8   facts.
9        MS. FREITAG:  Where it's coming from.
10       MR. LAMMERS:  Yeah.
11       MS. FREITAG:  Who it's coming from.
12       MR. LAMMERS:  Yeah.  You'd want to know who
13  it's coming from.  That's an interesting point.  So
14  you'd want to know who's telling you what you know?
15       MS. FREITAG:  Yes.
16       MR. LAMMERS:  Would you want to know if they
17  had some criminal history in their background?
18       MS. FREITAG:  Yes.
19       MR. LAMMERS:  Would you want to know if they
20  may have been a cooperating witness?  In other words,
21  they're hoping to receive something based on their
22  cooperation.
23       MS. FREITAG:  Yes.
24       MR. LAMMERS:  It doesn't mean they're not
25  believable.  But it just means that's something you

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR        reportingwhereur@yahoo.com**

69

1   would want to factor in.  Would that be fair to say?
2           MS. FREITAG:  Absolutely.
3           MR. LAMMERS:  Okay.  I will tell you, you
4   will hear from cooperating witnesses in this case.
5   You will hear from people who either have been
6   charged with a crime and are hoping not to continue
7   with that -- or to not -- or to get out of that
8   charge or potentially that they may be paid for some
9   of their assistance to law enforcement.  You're going
10  to hear those folks.
11          Will you be able to listen to their
12  testimony and fairly evaluate their testimony?
13          MS. FREITAG:  Yes.
14          MR. LAMMERS:  Is there anyone who says,
15  "Whoa.  Wait a second.  Hold on.  The Government's
16  using a paid informant here or the Government's using
17  people that are working off charges?  Nope.  I don't
18  need to hear any more.  I cannot rely on that, and
19  I'm not going to believe it."  By a show of hands,
20  anybody have that view?
21          So what kind of other things might you want
22  to -- might you want to know in determining, you
23  know, which view of the evidence is appropriate?
24          MS. FREITAG:  I mean, I would want to hear
25  both sides.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

70

1           MR. LAMMERS:  Right.
2           MS. FREITAG:  It's important.
3           MR. LAMMERS:  You -- Would you want to know
4   if what the evidence -- or what you're hearing is
5   consistent with other evidence that you've heard --
6           MS. FREITAG:  Yes.
7           MR. LAMMERS:  -- or what you knew?  In other
8   words, if it's corroborated by something else?
9           MS. FREITAG:  Yes.
10          MR. LAMMERS:  That would be a factor you
11  would take into consideration?
12          MS. FREITAG:  Yes.
13          MR. LAMMERS:  Okay.  And again -- And I want
14  to -- I want to be very clear here.  You're going to
15  be hearing folks -- You're going to be hearing from
16  folks who are drug addicts, who have used heroin, who
17  have used crack cocaine, who have had their lives
18  affected by their drug use.  You're going to be
19  hearing from folks who have been charged.  You're
20  going to hear -- be hearing from folks that are
21  cooperators.
22          Can everybody give those kind of witnesses a
23  fair shake?  Is there anybody who says, "All right.
24  I'll try to be fair, but boy, I'm really going to
25  have a hard time with it"?  Anybody?  By a show of

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

71

1   hands.
2           So Judge Williams instructed you a little
3   bit, and appropriately so, in regards to the -- you
4   know, the circumstances that are surrounding this
5   case, the fact that the defendant is an African
6   American.  I just want to make sure that there's --
7   There's a flip side to the coin.  I want to make sure
8   that I'm not going to be held to a higher burden of
9   proof because the defendant is an African American.
10          In other words, I want to make sure, as
11  jurors, you don't say, "Well, listen.  Judge Williams
12  was right.  We have to carefully evaluate our biases.
13  And in so doing, I'm going to -- I'm going to make it
14  even tougher on the United States.
15          "I'm going to hold them -- Just to make sure
16  that I'm being fair, just to make sure that I'm doing
17  everything that I can do to try and root out those
18  biases, I'm going to hold the Government to even a
19  higher burden of proof."
20          Is there anyone that would hold me to a
21  standard above the standard of beyond a reasonable
22  doubt because of the defendant's race?  I mean, we
23  all want to prove that we are absolutely going to be
24  color blind and fair to everyone.  So I want to make
25  sure, knowing that, that that doesn't mean that my

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

72

1   case got tougher.
2           I've had a number of jury trials.  And I've
3   had a couple of them where I've had jurors that will
4   say, at some point, "I'm sorry" -- And it's been
5   after we've gotten through the process.  "I'm sorry,
6   but I can't sit in judgment over someone else.
7   That's not my role.  That's the role of God.  I don't
8   believe that I should sit in judgment."
9           That's okay.  There are many devout people
10  in our country.  And that's fine.  But it might mean
11  that you're not a perfect juror for this particular
12  case or for a case on -- a criminal case.
13          Is there anybody who says "I can't sit in
14  judgment over someone else?"
15          So I want to focus on one other thing that
16  Judge Williams talked about, and then I'm going to do
17  another of my hypotheticals with someone, and then
18  I'm going to sit down.
19          But Judge Williams appropriately told you
20  about the burden of proof.  And he appropriately told
21  you that the defendant is presumed innocent.  The
22  defendant is presumed innocent as he sits here now.
23  Absolutely innocent.
24          But there's a -- there is a "unless and
25  until."  And unless and until means once you have

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

73

1  heard the evidence and have determined -- assuming
2  that you do, determined that I have proved the case
3  to you or the Government has proved the case to you
4  beyond a reasonable doubt, is there anyone who would
5  say, "Sorry.  I just can't -- I can't be in that
6  position of" --
7        And I think, ma'am, you sort of alluded to
8  it a little bit, you know, because it affects someone
9  else's life.  It's a super hard decision to make.
10       Is there anybody who says, "Gee, I just
11  can't do that"?  Even if -- even if it's -- we get to
12  that point, unless and until, just can't do it.  Not
13  something I'm comfortable with.  Don't want to be put
14  in that position.  Anybody?
15       MS. EINCK:  I find it very uncomfortable.
16       MR. LAMMERS:  Yeah.  And I -- If it makes
17  you feel any better, I don't think there's anybody
18  who sits on a jury who doesn't feel --
19       MS. EINCK:  I agree.
20       MR. LAMMERS:  -- a little bit uncomfortable.
21       MS. EINCK:  I agree.
22       MR. LAMMERS:  Can you put that aside, put
23  your discomfort aside, follow the law that the Judge
24  gives you, and make that hard decision if --
25       MS. EINCK:  The only thing I can --

Sarah J. Dittmer, CSR, RPR
1(888)388-2723

74

1        MR. LAMMERS:  -- unless and until happens --
2        COURT REPORTER:  I need one at a time.
3  Please start that question again.
4        MR. LAMMERS:  Sure.  If we get to the unless
5  and until and prove the case beyond a reasonable
6  doubt, can you make that hard decision?
7        MS. EINCK:  I'll try.
8        MR. LAMMERS:  It's a tough thing to do.  I
9  understand.  Anyone else?
10       I forgot.  So we're going to go back to the
11  TV shows for a second, the CSI shows.  By a show of
12  hands, who watches those again?  I'm going to go in
13  the back.
14       And Ms. Gerard?
15       MS. GERARD:  Yep.
16       MR. LAMMERS:  Which ones do you watch?
17       MS. GERARD:  Criminal Minds, NCIS.
18       MR. LAMMERS:  Okay.  Do you like them?
19       MS. GERARD:  Yeah.
20       MR. LAMMERS:  They're enjoyable?
21       MS. GERARD:  (Indicating by nodding.)
22       MR. LAMMERS:  Every episode of those, how do
23  they end?
24       MS. GERARD:  They find the solution.
25       MR. LAMMERS:  They find the solution.

Sarah J. Dittmer, CSR, RPR
1(888)388-2723

75

1  Usually by some sort of really sophisticated
2  scientific test or, you know, there's some sort of
3  a -- you know, they have some sort of satellite
4  imagery that watched what happened and they were able
5  to tap into that particular satellite.  Or they have
6  some sort of, you know, phosphorescent footprint that
7  lead from the crime scene or some sort of just
8  way-out-there technology; right?
9        MS. GERARD:  Uh-huh.
10       MR. LAMMERS:  I'm stating it sort of broadly
11  for effect here, but they rely a lot on really
12  advanced technology in those kind of cases.
13       MS. GERARD:  Uh-huh.
14       MR. LAMMERS:  Would it surprise you to know
15  that most cases aren't like that?
16       MS. GERARD:  Not at all.
17       MR. LAMMERS:  Do I have to prove my case by
18  that kind of method?  Do I have to bring in some
19  drone video or some satellite imagery and prove my
20  case to you to that level?
21       MS. GERARD:  No.
22       MR. LAMMERS:  Okay.  Anybody think that I
23  have to do that?  All right.  Thank you.
24       So I want to just touch base just very
25  briefly on reasonable doubt.  And I want to talk

Sarah J. Dittmer, CSR, RPR
1(888)388-2723

76

1  about reasonable doubt.  And the Judge is going to
2  instruct you, and you need to follow the law in
3  regard to reasonable doubt.
4        But the Judge said something that is -- I
5  think is particularly important.  He mentioned that
6  the standard of reasonable doubt is not beyond all
7  doubt.  And I want to do a quick demonstration, if I
8  could.
9        So anybody want to volunteer to be my guinea
10  pig for this hypothetical?  Yeah, I didn't figure
11  anybody would.  So I'm just going to pick somebody.
12  Mr. Stelken.  Since you're seated right in my line of
13  view, I'm going to pick you for this.
14       So let's say, Mr. Stelken, that there was a
15  rash of people that were trying to sneak in and get
16  on juror duty because they just found the concept so
17  exciting that they wanted to participate.
18       So as attorneys and the Court, we decide,
19  you know, we've got to -- we've got to stop that.
20  We've got to make sure that the people who are
21  sitting here in the box are actually the people that
22  we called.
23       So let's say that we're going to go through
24  this exercise.  And I would say to you, "Mr. Stelken,
25  we have people that are trying to sneak on to juror

Sarah J. Dittmer, CSR, RPR
1(888)388-2723

Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com

77

1  duty.  And we want to prevent that.  So I want to
2  make sure that you are who you say you are."
3      If I asked you to prove that you were, in
4  fact, Mr. Stelken, how would you do that?
5      MR. STELKEN:  An ID.
6      MR. LAMMERS:  An ID.  I will tell you that
7  of the times that I have asked this question in the
8  hypothetical, every single person that I've asked
9  said that first.  Usually they either say driver's
10 license or ID.
11     All right.  So I'm going to just kind of
12 make a brief list here.  And I'll put ID on the first
13 one.  Let's say that I were particularly skeptical
14 today.  And I said to you, "I'm sure that you are who
15 you say you are, Mr. Stelken, but I want -- I just
16 want to double-check, you know.  Sometimes there's
17 fake IDs.
18     What else could you do to provide proof that
19 you were who you said?
20     MR. STELKEN:  Ask someone -- Excuse me.  Ask
21 someone that I know to confirm to you who I am.
22     MR. LAMMERS:  Bring in a witness; right?
23 And again, commonly noted, but usually -- I will tell
24 you, you're an exception here because most people go
25 to number two.  They say other form of ID.  And then

78

1  usually it's three or four where we get to witness,
2  but -- Great.  Let's say witness.
3      Let's say I tell you again, "Yep.  I'm sure
4  you are who you say you are, but I just want to
5  double-check."  What else could you do?
6      MR. STELKEN:  I'm not sure.
7      MR. LAMMERS:  Okay.  Well, I'll supply a
8  suggestion.  Maybe some other type of identification
9  that you might have besides a driver's license or --
10 You could bring that in as well; right?
11     MR. STELKEN:  (Indicating by nodding.)
12     MR. LAMMERS:  So now, I may well be
13 convinced that you are who you say you are; right?
14 Right here at the ID, I may well say, "Yep.  That's
15 all I need to know."  All right?
16     But at some point as you go down that list,
17 at some point it's no longer reasonable to doubt that
18 you are Mr. Stelken; right?
19     MR. STELKEN:  Correct.
20     MR. LAMMERS:  Okay.  If I had to prove my
21 case to you beyond all doubt, I would have to have a
22 videotape of you being born and video of you every
23 second of every day until you walked into this
24 courtroom.  That's beyond all doubt, isn't it?  Now,
25 I don't have to prove my case to you to that level,

79

1  do I?
2      MR. STELKEN:  No.
3      MR. LAMMERS:  Do I have to prove my case to
4  anyone on the panel to the level of beyond all doubt?
5  By a show of hands.  Anybody?  All right.  I don't
6  have anything else.
7      I just want to make sure, ladies and
8  gentlemen, if there's anything that you think that we
9  should know prior -- or I should know as an attorney
10 for the United States about your ability to be fair
11 to both sides in this, now's the time.  Anything at
12 all that you think, "Hey, I've got a concern or a
13 qualm" or "I've got some question; I better raise
14 it."  Anybody?
15     Ms. Beckley.
16     MS. BECKLEY:  Yes.  I didn't know this case
17 was involving something in Dubuque.  And I'm from
18 Dubuque.  And having worked in the court system there
19 for eight or nine years, I'm concerned that someone
20 may come in that I will recognize but I did not know
21 their name when the judge read the names.  I do not
22 recognize the detective from Dubuque, but I wouldn't
23 know what to say if somebody came in and I knew them.
24     MR. LAMMERS:  Okay.  And you didn't
25 recognize -- I will tell you that some of the names

80

1  that the Judge read are law officers.  You didn't
2  recognize any of those names?
3      MS. BECKLEY:  I did not.  But I did not know
4  the names of most officers there, but so many were
5  involved in cases.  And I would recognize their face.
6      MR. LAMMERS:  Okay.  And if the judge were
7  to instruct you that you should treat their testimony
8  as you treat any other witness's testimony, would you
9  be able to do that?
10     MS. BECKLEY:  Yes, I would.
11     MR. LAMMERS:  Thank you.
12     MS. BECKLEY:  Yeah.
13     MR. LAMMERS:  Anything else?  Anybody else
14 have anything that they think we need to -- we need
15 to talk about?
16     Is it Ms. Stephenson?
17     MS. STEPHENSON:  Yes.
18     MR. LAMMERS:  Okay.
19     MS. STEPHENSON:  My brother is -- Sorry.  My
20 brother is a park ranger in Sherrill, Iowa, and gets
21 called to assist with Dubuque police officers
22 sometimes.  I don't think it will affect anything.  I
23 just thought I needed to bring it up.
24     MR. LAMMERS:  Sure.  I appreciate that.  Do
25 you know any of the Dubuque officers?

81

1       MS. STEPHENSON:  No.
2       MR. LAMMERS:  Did you recognize any of the
3   names?
4       MS. STEPHENSON:  No.
5       MR. LAMMERS:  Anything about the fact that
6   your brother is a park ranger that would lead you to
7   be somehow either more partial to law enforcement or
8   maybe doubt law enforcement because you and your
9   brother, you know --
10      MS. STEPHENSON:  No.
11      MR. LAMMERS:  -- fight now and then?
12      MS. STEPHENSON:  We don't even talk about
13  it.
14      MR. LAMMERS:  Fair enough.  Thank you.
15  Appreciate it.
16      Anything else, folks?
17      Yes, ma'am.  It's -- Is it "Loan" or Lown?
18      MS. LOWN:  Lown.
19      MR. LAMMERS:  Lown.
20      MS. LOWN:  Yeah.  I just want to confirm
21  that all the names that were listed are from -- like
22  those people are from Dubuque and not residing in
23  Cedar Rapids?
24      MR. LAMMERS:  I don't believe that any of
25  them reside in Cedar Rapids.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

82

1       MS. LOWN:  Okay.  One of the names just
2   sounds familiar, but she's living in Cedar Rapids, as
3   far as I know.
4       MR. LAMMERS:  All right.  And which name is
5   that?
6       MS. LOWN:  Emily Nelson.
7       MR. LAMMERS:  Yeah.  I can tell you that the
8   Emily Nelson that we're talking about lives now in
9   Dubuque.
10      MS. LOWN:  Okay.
11      MR. LAMMERS:  Does that change anything?
12      MS. LOWN:  No.
13      MR. LAMMERS:  Okay.  Your Honor, I have
14  nothing further.  Thank you.
15      THE COURT:  Do you pass for cause?
16      MR. LAMMERS:  I do, yeah.
17      THE COURT:  All right.  Ladies and
18  gentlemen, we're going to take our morning break now.
19  I promised you a morning break.  We're going to take
20  that now.  We're going to take a 15-minute break.
21      During this break, it's going to be
22  important that you not talk among yourselves or with
23  anybody else about this case.  You haven't even been
24  selected yet as jurors.  You haven't seen any
25  evidence.  And so I don't want you to formulate any

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

83

1   opinions and not talk to anybody about this case or
2   anything about anybody with it.
3       If you are out in the hallway during this
4   break and one of the parties or the lawyers passes by
5   you, they're going to walk right by you and probably
6   not even look at you.  And if you said "Hello" to
7   them, they wouldn't respond.
8       And it's not because we have a bunch of rude
9   lawyers and parties.  It's because they know it's
10  important that we have -- not only that we have
11  justice but the appearance of justice.
12      And if someone were to see you talking with
13  one of the lawyers, even if you were just talking
14  about the weather, somebody might think you were
15  actually talking about the case and may presume
16  something bad about your fairness as jurors.
17      And so during the break, if you happen to
18  run into lawyers or the parties, don't hold it
19  against them if they are not social with you.  They
20  know that they are not to have any contact with you
21  outside of the courtroom.
22      And so we will be on a 15-minute break.
23  It's now 10:40.  And so we'll be on break for 15
24  minutes.  And so the jury is excused.  Hang on just a
25  second.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

84

1       All right.  And when you leave the courtroom
2   here, before you come back in the courtroom, please
3   line up outside in the quorum before you come back
4   in.  You don't have to line up in the same order.
5   But just wait outside until we come get you outside
6   to bring you back in the courtroom.
7       All right.  So we will be in recess.
8       THE CLERK:  All rise.
9       (Prospective jurors exit.)
10      THE COURT:  Please be seated.
11      Mr. Lammers, anything we need to take up
12  during this break?
13      MR. LAMMERS:  I don't believe so, Your
14  Honor.  Thank you.
15      THE COURT:  Mr. Goldensoph?
16      MR. GOLDENSOPH:  No, Judge.
17      THE COURT:  All right.  Very good.  We'll
18  see you in 15 minutes.
19      (Recessed 10:42 a.m.; resumed 11:02 a.m.)
20      THE CLERK:  All rise.
21      THE COURT:  All right.  Are we ready for the
22  jury?
23      MR. GOLDENSOPH:  Yes.
24      THE COURT:  All right.  Just so we have an
25  understanding of where we're going, as soon as Mr.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

85

1  Goldensoph is done with his voir dire, my intent
2  would be to then put the jury on break.  We'll
3  exercise our peremptory strikes.  We'll have the jury
4  brought back in and, if there's enough time, as I
5  think there will be, we'll go ahead and read the
6  instructions to the jury before we take our lunch
7  break.  And then when we come back from lunch, we'll
8  launch into opening statements.  All right?
9         MR. LAMMERS:  Yes, Your Honor.  One
10 question, if I may.  After you've excused the jury,
11 can we have like five minutes to organize our notes?
12        THE COURT:  I suppose.  Yes.
13        MR. LAMMERS:  Well, I will do --
14        THE COURT:  Of course.
15        MR. LAMMERS:  -- it however you choose,
16 obviously.
17        THE COURT:  No, no.  Of course.  I'll give
18 you five to 10 minutes to organize your notes and
19 talk among yourselves to try to figure out what you
20 want to do.  And let me know when you're ready.  And
21 then we'll go ahead and exercise those strikes.  I
22 was just being flippant with you, Mr. Lammers.
23        MR. LAMMERS:  Hey, man.  I understand.
24        THE COURT:  Very good.  All right.  Anything
25 else?

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

86

1         MR. LAMMERS:  No.  Thank you.
2         THE COURT:  All right.  So we can bring in
3  the jury now.
4         (Prospective jury enters.)
5         THE COURT:  You-all feel free to sit down
6  whenever you want to.  We stand out of respect for
7  you, but you go ahead and feel free to sit down when
8  you come in the courtroom.
9         MS. BECKLEY:  Did somebody say all rise for
10 the jury?
11        THE COURT:  Mr. Thompson did earlier this
12 morning.
13        MS. BECKLEY:  Okay.
14        THE COURT:  All right.  Please be seated.
15        Thank you for all coming back from the
16 break.  I actually had a jury selection one time,
17 when we got back from our break, and I was missing a
18 juror.  So thank you for all coming back.
19        When we left off, the Government had
20 finished asking questions.  It's now time for the
21 defense to ask questions of you.
22        And so, Mr. Goldensoph, you may proceed.
23        MR. GOLDENSOPH:  Thank you, Your Honor.
24        Good morning, everyone.
25        PROSPECTIVE JURY:  Good morning.

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

87

1         MR. GOLDENSOPH:  How is everyone today?
2         MS. BECKLEY:  Wonderful.
3         MR. GOLDENSOPH:  Everybody is thrilled to be
4  in juror duty; right?  Let me guess.  You guys are
5  just disappointed that it's not a four-week-long jury
6  trial like Judge Williams had mentioned earlier.
7         I get it.  I understand.  Everybody -- the
8  inconveniences that are placed on everybody when you
9  come here to serve as jurors.
10        But having been a practicing trial attorney
11 for 17 years, I've come to appreciate not only the
12 burdens that are placed on everybody who's in my
13 jury, but just how important it is for our system of
14 justice.  And for all those reasons, I really do
15 appreciate and thank you on behalf of myself and on
16 behalf of Mr. Stevenson, because this trial clearly
17 is very important to Mr. Stevenson.  And so we do
18 appreciate it.
19        So without further ado, you've already
20 been -- you've already filled out the questionnaires.
21 Judge Williams already asked several questions.
22 Mr. Lammers has already asked several questions.  So
23 I anticipate my portion of jury selection being
24 relatively brief.  So we can have that to look
25 forward to, but I do have a few questions.  So --

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

88

1         I am going to actually start off with
2  Mr. Bodenstein [sic].  That's you, correct, sir?
3         MR. BODENSTEINER:  Yes.
4         MR. GOLDENSOPH:  And when -- I think I
5  pronounced it incorrectly.
6         MR. BODENSTEINER:  Bodensteiner.  Sorry.
7  Bodensteiner.
8         MR. GOLDENSOPH:  Bodensteiner.  Okay.  Thank
9  you for correcting me on that.  I'll wait until he
10 gets the microphone to you.
11        Now, Mr. Bodensteiner, my job is to fight
12 zealously or really, really hard for Mr. Stevenson.
13 In fact, I'm ethically obligated to do it.  The rules
14 of lawyer ethics require me to do that.
15        Now, do you feel like you've got a pretty
16 good understanding of what that means?
17        MR. BODENSTEINER:  To zealously or to --
18 your -- you defending him?
19        MR. GOLDENSOPH:  Yeah.  Zealously with
20 respect to fighting for him and whatnot.  Do you feel
21 you've got a general idea of what that means?
22        MR. BODENSTEINER:  Not definitely.
23        MR. GOLDENSOPH:  Okay.  Sure.  Well, one of
24 the things it could mean -- and this is, I guess, the
25 point I'm trying to get to.  We're going to have some

*Sarah J. Dittmer, CSR, RPR*
*1 (888) 388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

89

1 witnesses during this jury trial. And I sometimes
2 have to ask some really tough questions, maybe even a
3 little bit embarrassing questions of those witnesses.
4 And I'm ethically obligated to do that. But --
5        Do you feel like you understand that?
6        MR. BODENSTEINER: Yes.
7        MR. GOLDENSOPH: Now, what I'm worried
8 about, though, is, you know, if I ask questions like
9 this of witnesses, that somebody might hold that
10 against me. "Why are you being so hard on that
11 particular witness?" That sort of thing. Does that
12 make sense?
13       MR. BODENSTEINER: Yes.
14       MR. GOLDENSOPH: So let me ask you this: If
15 I do ask some difficult questions of some particular
16 witnesses, would you be able to not hold that against
17 me or do you think it would be tough for you to do
18 that?
19       MR. BODENSTEINER: Sometimes you have to ask
20 difficult questions to get the real answers, the
21 answers you need. So I wouldn't hold that against
22 you if -- understanding where your heart lies with
23 that, I guess is the way to put it.
24       MR. GOLDENSOPH: Okay. Cool. Thank you.
25       Having heard that exchange, is there anyone

90

1 else here who feels like, "Man, that would be tough
2 for me to -- I would hold that against you"? Is
3 there anybody who's sitting here that would think
4 like that at all? All right. I don't see any hands.
5        So thank you, Mr. Bodenstein.
6        So a question for the entire panel. By a
7 show of hands, has anyone here ever been lied to?
8        MS. BECKLEY: Been what?
9        MR. GOLDENSOPH: Been lied to.
10       MS. BECKLEY: Lied to.
11       MR. GOLDENSOPH: And follow-up question.
12 Has anyone here ever told a lie? Seeing most of the
13 hands, if not all the hands, go up. I'm excited to
14 see that I have a panel of experts on lying. So
15 that's good to know.
16       I am going to pick on -- Who am I going to
17 pick on? Mr. Elzey? Did I pronounce that
18 correctly --
19       MR. ELZEY: Yes, you did.
20       MR. GOLDENSOPH: -- sir?
21       MR. ELZEY: That's correct.
22       MR. GOLDENSOPH: In your experience, why do
23 people lie?
24       MR. ELZEY: I would say either because they
25 don't want the truth, you know, revealed or maybe

91

1 they're embarrassed or something. But, you know,
2 basically they make up something because they don't
3 want the truth --
4        MR. GOLDENSOPH: Okay.
5        MR. ELZEY: -- told.
6        MR. GOLDENSOPH: It could be harmful to that
7 person?
8        MR. ELZEY: It could be, yeah.
9        MR. GOLDENSOPH: Could a lie sometimes
10 produce a favorable result for that person?
11       MR. ELZEY: Yeah. Yeah, I would say so.
12       MR. GOLDENSOPH: Do you think everybody
13 lies?
14       MR. ELZEY: I think so, yeah. I think, you
15 know, to one extent or another.
16       MR. GOLDENSOPH: So do you think there are
17 sometimes people who have really strong motivations
18 to lie?
19       MR. ELZEY: I think so. Like to -- Yeah,
20 probably, you know, to, like, protect somebody else
21 or, you know, a monetary reason why or something like
22 that. So, yeah.
23       MR. GOLDENSOPH: Sure. Now, if you're
24 chosen to be on this jury, do you feel like you would
25 be able to identify a person's motivations to lie or

92

1 to tell the truth? Do you think that that would be
2 something that you might be able to identify?
3        MR. ELZEY: To a certain extent, depending
4 on how good a liar they were.
5        MR. GOLDENSOPH: Yeah. Sure.
6        Okay. Is there anybody here who thinks it
7 would be really, really difficult to identify
8 somebody's motivations for lying?
9        Thank you, sir.
10       So as the Judge said earlier, as
11 Mr. Stevenson sits here today right now, he's
12 innocent; right? That's the presumption of innocence
13 that Judge Williams talked about earlier. And I'm
14 just curious -- We're going to go to -- I'm sorry.
15 I've got to look at my notes here.
16       Ms. Forney, this presumption of innocence --
17 and you can wait to answer my question until you have
18 the microwave -- microphone, but this presumption of
19 innocence, do you think that's fair?
20       MS. FORNEY: Yeah, because people are
21 innocent until they're proven guilty by a court of
22 law.
23       MR. GOLDENSOPH: And why do you think we
24 have that?
25       MS. FORNEY: To be fair to the person being

Sarah J. Dittmer, CSR, RPR
1(888)388-2723

Sarah J. Dittmer, CSR, RPR
1(888)388-2723

Case 2:18-cr-01023-CJW-MAR  Document 126  Filed 12/17/19  Page 23 of 46
Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com

93

1 charged with the crime.
2 MR. GOLDENSOPH: Sure. Is it a big deal or
3 little deal when somebody's charged with a crime?
4 MS. FORNEY: It's a very big deal.
5 MR. GOLDENSOPH: Very big deal. So do you
6 think that's why we have it?
7 MS. FORNEY: Yes.
8 MR. GOLDENSOPH: Okay. Now, as you're
9 sitting here, do you think you're able to do that?
10 MS. FORNEY: I think between myself and my
11 associates here, we would be able to come to an
12 agreement.
13 MR. GOLDENSOPH: Well, I guess what I'm
14 wondering, as you're sitting there right now, are you
15 able to just presume Mr. Stevenson not guilty?
16 MS. FORNEY: I presume that he's innocent as
17 of right now.
18 MR. GOLDENSOPH: Okay. Great. And the
19 reason why I bring it up is, you know, it's obviously
20 very important, but, you know, sometimes it's tough
21 for people to do that.
22 Well, he's sitting there in court. He's
23 charged with a crime. You know, that sort of thing;
24 right? And so I just bring that up to -- I mean, I'm
25 curious. Is there anybody here in the panel

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

94

1 that's -- and it's perfectly natural, by the way. Is
2 there anyone here who's having difficulty doing that?
3 Ms. Hotchkiss?
4 MS. HOTCHKISS: Uh-huh.
5 MR. GOLDENSOPH: So you're having some
6 difficulty with that. Can you explain why?
7 MS. HOTCHKISS: I'd like to say that I don't
8 and that it's real easy for me to just presume
9 innocent. I know that's what I'm supposed to do.
10 But if I'm being totally honest, that's just --
11 that's not my nature. I automatically assume you're
12 probably guilty unless you prove yourself innocent.
13 That's just sort of how I was brought up.
14 MR. GOLDENSOPH: Okay.
15 MS. HOTCHKISS: Truly that you're guilty
16 until you -- until you're proven innocent.
17 MR. GOLDENSOPH: And let me just say, you
18 said that "If I'm being honest." And, frankly,
19 that's exactly what we want. So I really, really
20 appreciate you saying that.
21 MS. HOTCHKISS: Yeah.
22 MR. GOLDENSOPH: So as we sit here now --
23 Well, let's assume you were selected for the jury.
24 MS. HOTCHKISS: Uh-huh.
25 MR. GOLDENSOPH: And the Government presents

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

95

1 their evidence. And you sit through it all. And --
2 Well, let me rephrase that. I apologize.
3 So I guess what I'm hearing from you now is
4 that you're starting off with the position that
5 Mr. Stevenson needs to prove himself innocent?
6 MS. HOTCHKISS: Yeah. That's kind of how
7 it -- Yeah. I mean, it's -- I know that's not what
8 it's supposed to be. And I would tell you that, no,
9 I know that that's not it. And I would say that he's
10 innocent until proven guilty because I know that's
11 the right answer.
12 But I -- I've always sort of -- That's just
13 kind of how I was brought up. You know, even -- You
14 know, I mean, as a child, that's just kind of how I
15 was brought up. You're -- You are accused of
16 something, you're guilty until you've proved yourself
17 innocent -- until you're innocent.
18 MR. GOLDENSOPH: Have you yourself ever been
19 falsely accused of something?
20 MS. HOTCHKISS: Oh, sure. Yeah.
21 MR. GOLDENSOPH: And if -- I don't know.
22 Maybe an example like when you're -- if you have
23 siblings, maybe --
24 MS. HOTCHKISS: Yes.
25 MR. GOLDENSOPH: -- one of your siblings

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

96

1 took a cookie and left crumbs and whatnot. And your
2 mom thought, "Oh, it's you, isn't it"; right?
3 MS. HOTCHKISS: (Indicating by nodding.)
4 MR. GOLDENSOPH: That's a different example
5 than sitting here in court.
6 MS. HOTCHKISS: Uh-huh.
7 MR. GOLDENSOPH: But can you understand why
8 it would be very important?
9 MS. HOTCHKISS: Absolutely. Oh, absolutely.
10 Yeah. And I -- You know, I completely understand why
11 that is absolutely the wrong position and why that's
12 why the system doesn't work that way. And I
13 completely understand that.
14 I just wanted to at least let you know right
15 off the bat where my brain kind of goes immediately
16 just sort of off the bat, kind of where I'm at there.
17 MR. GOLDENSOPH: Sure.
18 MS. HOTCHKISS: I certainly can try to not
19 have that opinion and look at things objectively.
20 But I just want to at least kind of state that, I
21 guess.
22 MR. GOLDENSOPH: Sure.
23 MS. HOTCHKISS: Yeah.
24 MR. GOLDENSOPH: Is it a feeling that you
25 have that, as it stands now, that makes it so

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

                                                              97

1  difficult that you're just not going to be able to do
2  it?
3      MS. HOTCHKISS:  I don't think I -- I don't
4  know if I would say that.  It's just sort of -- it's
5  a knee-jerk reaction.
6      MR. GOLDENSOPH:  Okay.
7      MS. HOTCHKISS:  Just kind of a gut reaction.
8  Kind of sort of a -- to -- that that's what I would
9  say, you know.  That's just immediately what I would
10 say.
11     And then I can step back and kind of go,
12 "Okay.  No.  We need to look at it."  But,
13 ultimately, that's kind of what my knee-jerk reaction
14 would have been.
15     MR. GOLDENSOPH:  Okay.  Thank you so much.
16 I appreciate it.
17     MS. HOTCHKISS:  Yeah.
18     MR. GOLDENSOPH:  Does anybody else feel like
19 that at all?  Okay.  Not seeing any other hands.
20     Okay.  So the Judge has already sort of
21 talked about the burden of proof and whatnot.  And
22 that's something I think you'd find attorneys talk a
23 lot about during jury selection.  So I'm going to
24 talk about it myself.
25     And I'm going to ask that the microphone go

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

                                                              99

1      MR. GOLDENSOPH:  So you're one of the people
2  who thinks marriage is an important decision; is that
3  right?
4      MS. DAVIS:  Yes.
5      MR. GOLDENSOPH:  Just kidding.  So prior to
6  getting married --
7      MS. DAVIS:  Uh-huh.
8      MR. GOLDENSOPH:  Well, first of all, how
9  long have you been married?
10     MS. DAVIS:  Oh, gosh.  Okay.  I've got to
11 think.
12     MR. GOLDENSOPH:  Do the math.
13     MS. DAVIS:  It's -- I know.  This will be
14 our seventh year.
15     MR. GOLDENSOPH:  Okay.  And prior to getting
16 married, were you engaged?  Dating?
17     MS. DAVIS:  Both.
18     MR. GOLDENSOPH:  Both.  And let me ask you
19 this:  What was the span of time you were both dating
20 and engaged?
21     MS. DAVIS:  Three years.
22     MR. GOLDENSOPH:  Three years.  Okay.  All
23 right.  So pretty lengthy period of time; right?
24     MS. DAVIS:  Yep.
25     MR. GOLDENSOPH:  Now, would you say in that

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

                                                              98

1  to Ms. Davis here.
2      Now, Ms. Davis, have you ever heard the
3  phrase, prior to today, "proof beyond a reasonable
4  doubt"?
5      MS. DAVIS:  Yes.  Yes.
6      MR. GOLDENSOPH:  And do you have any idea
7  what that means?
8      MS. DAVIS:  I don't know.  That the material
9  given is showing that the person is either guilty or
10 not guilty and there's not a glaring question on
11 that.  It's very confident that this is how we should
12 proceed.
13     MR. GOLDENSOPH:  That's actually a really
14 good definition.  I like that.  So I like to think
15 about it as it's just a very important decision that
16 the jurors get to make in this case.
17     And, you know, I always think about it like
18 this:  The framers of the Constitution who put this
19 in the Constitution must have thought that a jury
20 trial was a really big deal, a big decision.
21     And let me ask you this:  Have you yourself
22 ever made any really big decisions in your life?
23     MS. DAVIS:  Yes.
24     MR. GOLDENSOPH:  Like what?
25     MS. DAVIS:  Marriage.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

                                                             100

1  time that you were engaged, slash, dating that you
2  learned a lot about your future spouse?
3      MS. DAVIS:  Yes.
4      MR. GOLDENSOPH:  Did you meet his family?
5      MS. DAVIS:  Yes.
6      MR. GOLDENSOPH:  Did you figure out what
7  kind of work he had?
8      MS. DAVIS:  Yes.
9      MR. GOLDENSOPH:  Did you learn, like, his
10 political views?
11     MS. DAVIS:  Yes.  I pretty much interviewed
12 him.
13     MR. GOLDENSOPH:  Oh.  So you interviewed
14 him.  So did you learn about, like, what his favorite
15 sports car was?
16     MS. DAVIS:  Yes.  Sort of.
17     MR. GOLDENSOPH:  "Yes.  Sort of."  What does
18 that mean?
19     MS. DAVIS:  I have a -- I don't think he
20 really likes sports cars, but if I were to ask him
21 which one, I think I could have a --
22     MR. GOLDENSOPH:  Oh.
23     MS. DAVIS:  -- good idea.
24     MR. GOLDENSOPH:  Sure.  Did you figure out
25 what his favorite sports team was?

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com**

---

101

1    MS. DAVIS:  Yes.

2    MR. GOLDENSOPH:  Did you figure out what his

3    favorite meal was?

4    MS. DAVIS:  Yes.

5    MR. GOLDENSOPH:  You figured out a lot about

6    this guy?

7    MS. DAVIS:  Uh-huh.

8    MR. GOLDENSOPH:  Now, did he propose to you

9    or did you propose to him?

10    MS. DAVIS:  He proposed to me.

11    MR. GOLDENSOPH:  And so obviously you said

12    yes --

13    MS. DAVIS:  Uh-huh.

14    MR. GOLDENSOPH:  -- right?

15    So do you feel like you had gathered enough

16    information from him prior to getting married to make

17    this really big decision?

18    MS. DAVIS:  Yes.

19    MR. GOLDENSOPH:  Now, the reason why I bring

20    up this scenario is, again, this trial is a very big

21    decision.  And it requires -- Maybe, you know, we're

22    not going to learn about Mr. Stevenson's favorite

23    meal or anything like that, but it requires -- it's

24    just as important of a decision.  It requires a lot

25    of information.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

102

1    And I like to bring up that example just to

2    emphasize the importance of the decision that you

3    need to make, because most people who haven't sat on

4    a jury before just really don't have a clue as to,

5    you know, "What do I do here?"  "How big of a deal is

6    this?"  So --

7    Thank you.  I just have one more short sort

8    of brief thing here.  And I'm going to -- If I could

9    have the microphone brought down to Ms. Studebaker

10    down here.  She's right here.

11    Ms. -- Am I pronouncing that correctly?

12    MS. STUDEBAKER:  Yep.

13    MR. GOLDENSOPH:  Ms. Studebaker, I have a

14    confession.  I'm really, really nervous about

15    something in this case.

16    During this trial, Mr. Stevenson's actually

17    going to admit to guilt for some of the counts.

18    And -- but he's not going to admit to guilt on all of

19    them.  And so what I wanted to make sure is that --

20    Well, let me ask you this:  If he admits to guilt on

21    some of them, do you think he's necessarily guilty on

22    everything?

23    MS. STUDEBAKER:  No.

24    MR. GOLDENSOPH:  And under what sort of

25    circumstances would you think -- or what sort of

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

103

1    things would you be looking for in this case to

2    determine whether or not he's guilty on everything or

3    just the stuff that he admits to?

4    MS. STUDEBAKER:  I think you would have to

5    presume innocence on each count.  So if he said he

6    was not guilty on some counts, we would have to then

7    look to the evidence.  And if the evidence pointed

8    towards guilt, then I would think those counts were

9    guilt -- guilty.

10    MR. GOLDENSOPH:  As you sit here now,

11    knowing what I've just said, are you -- do you feel

12    like you'll be able to do that?

13    MS. STUDEBAKER:  Yes.

14    MR. GOLDENSOPH:  And you understand that

15    there would be different circumstances for each

16    count; right?

17    MS. STUDEBAKER:  Yes.

18    MR. GOLDENSOPH:  Does anybody here -- Having

19    heard that, does anybody here feel like they would

20    have a difficult time of separating the different

21    counts knowing that?  Everybody here would be able to

22    listen to each -- the evidence on each count and make

23    that evaluation strictly based on that particular set

24    of circumstances, not based on what he says about a

25    different count?

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

104

1    Okay.  Well, I told you I was going to be

2    kind of quick.  And like I said, most of the -- a lot

3    of the questions had already been asked.

4    So, Your Honor, at this time, I'm going to

5    pass for cause.

6    THE COURT:  Thank you.

7    All right.  Ladies and gentlemen, this is

8    the point in the jury selection process I told you

9    about where we need to reduce your numbers from 29

10    down to 13.

11    You guys aren't actually participating in

12    that.  And we really don't need you during this time

13    period.  And I don't want you sitting there twiddling

14    your thumbs.

15    So we're going to put you on break while the

16    lawyers exercise those strikes.  And when we're done,

17    we'll pull you back in here and announce it.  It

18    usually takes 15 to 20 minutes or something like

19    that.

20    And during that time, we're going to have

21    you step back into the jury -- there's actually two

22    jury rooms back here through these doors.  And the

23    court security officer will take you back there.

24    You're free to relax for 15 or 20 minutes.  And when

25    we're done with this process, we'll bring you back

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

105

1  in.
2          For those of you in the back of the
3  courtroom, we don't need your services anymore.
4  We've hit that point where we're not going to be
5  replacing anybody else up here.  We're just going to
6  strike some of the ones that we have.
7          And so you are all free to leave in the back
8  of the courtroom.  Thank you for coming in here
9  today.  It was important that you were here.  And we
10  thank you for your service.
11          The jurors -- prospective jurors up front,
12  you are now excused to go back into the jury room
13  with the court security officer.
14          THE CLERK:  All rise.
15          (Prospective jury exits.)
16          THE COURT:  All right.  Please be seated.
17          Before I give the lawyers some time to
18  consult each other and their clients, Mr. Lammers,
19  any record need to be made regarding jury selection
20  thus far?
21          MR. LAMMERS:  No, Your Honor.  Thank you.
22          THE COURT:  Mr. Goldensoph?
23          MR. GOLDENSOPH:  No, Your Honor.
24          THE COURT:  All right.  Go ahead and take
25  some time, then.  And let me know when you are ready

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

107

1          MR. GOLDENSOPH:  Your Honor.
2          THE COURT:  I'm sorry?
3          MR. GOLDENSOPH:  The defendant's first.
4          THE COURT:  I'm sorry.  Defendant's first.
5          The next one is Ms. Davis.
6          And, Mr. Lammers, does the Government
7  exercise a peremptory strike?
8          MR. LAMMERS:  No, Your Honor.
9          THE COURT:  Mr. Goldensoph?
10          MR. GOLDENSOPH:  No, Your Honor.
11          THE COURT:  All right.  Ms. Davis is Juror
12  Number 1.
13          The next one is Ms. Ihnen.
14          Mr. Goldensoph, do you exercise a peremptory
15  strike?
16          MR. GOLDENSOPH:  Yes, Your Honor.
17          THE COURT:  That would be the second by the
18  defense.
19          And the next one is Mr. -- or yeah --
20  Mr. Bodensteiner.
21          Mr. Lammers, does the Government exercise a
22  strike?
23          MR. LAMMERS:  No, Your Honor.
24          THE COURT:  Mr. Goldensoph?
25          MR. GOLDENSOPH:  No, Your Honor.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

106

1  to proceed.
2          (Recessed 11:30 a.m.; resumed 11:39 a.m.)
3          THE COURT:  Mr. Lammers, are you ready to
4  proceed?
5          MR. LAMMERS:  Yes, Your Honor.
6          THE COURT:  And Mr. Goldensoph?
7          MR. GOLDENSOPH:  As ready as I'll ever be
8  with this jury, Your Honor.
9          THE COURT:  All right.  Very good.
10          So we're going to start in the upper
11  right-hand corner.  The first juror is Mr. Morling.
12          Mr. Lammers, is the Government exercising a
13  peremptory strike?
14          MR. LAMMERS:  Yes, Your Honor.
15          THE COURT:  Mr. Morling is gone.  That's
16  Government's first.
17          The next juror is Ms. Forney.
18          Mr. Goldensoph, are you exercising a
19  peremptory strike?
20          MR. GOLDENSOPH:  Yes, Your Honor.  We are
21  going to exercise a strike.
22          THE COURT:  All right.  Ms. Forney is gone.
23  That's the defendant's second.
24          MR. GOLDENSOPH:  Your Honor.
25          THE COURT:  The next one is Ms. Davis.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

108

1          THE COURT:  That's Juror 2.
2          The next one is Mr. [sic] Gerard -- I'm
3  sorry -- Ms. Gerard.
4          Mr. Goldensoph, do you exercise a peremptory
5  strike?
6          MR. GOLDENSOPH:  No, Your Honor.
7          THE COURT:  That's Juror -- I'm sorry.
8          Mr. Lammers, do you exercise a peremptory
9  strike?
10          MR. LAMMERS:  No, Your Honor.
11          THE COURT:  That's Juror 3.
12          The next one is Ms. Hotchkiss.
13          Mr. Lammers, do you exercise a peremptory
14  strike?
15          MR. LAMMERS:  No, Your Honor.
16          THE COURT:  Mr. Goldensoph?
17          MR. GOLDENSOPH:  Yes, Your Honor.
18          THE COURT:  Ms. Hotchkiss is gone.  And
19  that's the third by the defense.
20          The next one is Ms. Beckley.
21          Mr. Lammers, do you exercise a peremptory
22  strike?  Or I'm sorry.
23          Mr. Goldensoph, do you exercise a peremptory
24  strike?
25          MR. GOLDENSOPH:  Excuse me.  Yes, Your

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR        reportingwhereur@yahoo.com**

109

1  Honor.
2          THE COURT:  That will be the defendant's
3  fourth.
4          The next one is Mr. Hansen.
5          Mr. Lammers, do you exercise a peremptory?
6          MR. LAMMERS:  No, Your Honor.
7          THE COURT:  Mr. Goldensoph?
8          MR. GOLDENSOPH:  No, Your Honor.
9          THE COURT:  That's Juror Number 4.
10         The next one is Ms. Gorter.
11         Mr. Goldensoph, do you exercise a peremptory
12  strike?
13         MR. GOLDENSOPH:  No, Your Honor.
14         THE COURT:  Mr. Lammers?
15         MR. LAMMERS:  No, Your Honor.
16         THE COURT:  That's Juror Number 5.
17         The next one is Mr. "Maccan" -- Machande.
18         Mr. -- let's see -- Goldensoph -- or
19  Lammers -- Lammers, do you exercise a peremptory
20  strike?
21         MR. LAMMERS:  No, Your Honor.
22         THE COURT:  Mr. Goldensoph?
23         MR. GOLDENSOPH:  Yes, Your Honor.
24         THE COURT:  That would be the defendant's
25  fifth.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

110

1          The next one is Ms. -- or I'm sorry --
2  Mr. Stelken.
3          Mr. Goldensoph, do you exercise a peremptory
4  strike?
5          MR. GOLDENSOPH:  No, Your Honor.
6          THE COURT:  Mr. Lammers?
7          MR. LAMMERS:  I'm sorry.  Is it Mr. Stelken?
8          THE COURT:  Stelken.
9          MR. LAMMERS:  Yes.  No, Your Honor.
10         THE COURT:  That would be Juror Number 6.
11         The next one is Norris Rogers.
12         And, Mr. Lammers, does the Government
13  exercise a peremptory strike?
14         MR. LAMMERS:  Yes, Your Honor.
15         THE COURT:  That would be the Government's
16  second.
17         MR. GOLDENSOPH:  Your Honor, at this point,
18  I would assert a Batson challenge.
19         THE COURT:  We'll wait until we get through
20  with the rest of them.  You'll have a better record
21  at that point.
22         And so we will go on to the next one, which
23  is Ms. -- Mr. Dietz at the end of the second row.
24         And, Mr. Goldensoph, do you exercise a
25  peremptory strike?

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

111

1          MR. GOLDENSOPH:  No, Your Honor.
2          THE COURT:  Mr. Lammers?
3          MR. LAMMERS:  Yes, Your Honor.
4          THE COURT:  That would be the Plaintiff's
5  third.
6          The next one is Ms. Stephenson up here in
7  the front on the right-hand side.
8          And, Mr. Lammers, does the Government
9  exercise a peremptory strike?
10         MR. LAMMERS:  No, Your Honor.
11         THE COURT:  Mr. Goldensoph?
12         MR. GOLDENSOPH:  No, Your Honor.
13         THE COURT:  That would be Juror Number 7.
14         The next one is Ms. Einck.
15         And, Mr. Goldensoph, do you exercise a
16  peremptory strike?
17         MR. GOLDENSOPH:  Yes, Your Honor.
18         THE COURT:  That would be the defendant's
19  sixth.
20         Now the next one is Ms. Koch.
21         And, Mr. Lammers, does the Government
22  exercise a peremptory strike?
23         MR. LAMMERS:  No, Your Honor.
24         THE COURT:  Mr. Goldensoph?
25         MR. GOLDENSOPH:  No, Your Honor.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

112

1          THE COURT:  That would be Juror Number 8.
2          The next one is Cheri Francik.
3          And, Mr. Goldensoph, do you exercise a
4  peremptory strike?
5          MR. GOLDENSOPH:  No, Your Honor.
6          THE COURT:  Mr. Lammers?
7          MR. LAMMERS:  No, Your Honor.
8          THE COURT:  That would be Juror Number 9.
9          The next one is Ms. [sic] Elzey.
10         And, Mr. Lammers, does the Government
11  exercise a peremptory strike?
12         MR. LAMMERS:  No, Your Honor.
13         THE COURT:  Mr. Goldensoph?
14         MR. GOLDENSOPH:  No, Your Honor.
15         THE COURT:  That's Juror Number 10.
16         The next one is on the second row from the
17  front on the right-hand side, Mr. Smedley.
18         And, Mr. Goldensoph, do you exercise a
19  peremptory strike?
20         MR. GOLDENSOPH:  Yes, Your Honor.
21         THE COURT:  That would be the defendant's
22  seventh.
23         The next one is Ms. Benda.
24         And Mr. Gold- -- or I'm sorry -- Mr.
25  Lammers, do you exercise a peremptory strike?

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

113

1          MR. LAMMERS:  No, Your Honor.
2          THE COURT:  Mr. Goldensoph?
3          MR. GOLDENSOPH:  Yes, Your Honor.
4          THE COURT:  That would be the defendant's
5    eighth.
6          The next one is Mr. Holmes.
7          And, Mr. Goldensoph, do you exercise a
8    preemptory strike?
9          MR. GOLDENSOPH:  Yes, Your Honor.
10         THE COURT:  That would be the defendant's
11   ninth.
12         And the next one is Ms. Freitag.
13         And, Mr. Lammers, do you exercise a
14   peremptory?
15         MR. LAMMERS:  No, Your Honor.
16         THE COURT:  Mr. Goldensoph?
17         MR. GOLDENSOPH:  No, Your Honor.
18         THE COURT:  That's Juror Number 11.
19         The next one is Ms. Studebaker.
20         And, Mr. Goldensoph, do you exercise a
21   peremptory strike?
22         MR. GOLDENSOPH:  No, Your Honor.
23         THE COURT:  Mr. Lammers?
24         MR. LAMMERS:  Yes, Your Honor.
25         THE COURT:  That would be the

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

114

1    Government's --
2          MR. LAMMERS:  Fourth, I believe.
3          THE COURT:  Fourth.  Yep.
4          The next one is Ms. Hamlyn in the front row,
5    right-hand side.
6          And, Mr. Lammers, does the Government
7    exercise a peremptory strike?
8          MR. LAMMERS:  Yes, Your Honor.
9          THE COURT:  That would be the Government's
10   fifth.
11         The next one is Ms. Taylor.
12         And, Mr. Goldensoph, do you exercise a
13   peremptory strike?
14         MR. GOLDENSOPH:  Yes, Your Honor.
15         THE COURT:  That would be the defendant's
16   10th and last strike.
17         The next one is Mr. [sic] Morris.
18         And does the Government exercise a
19   peremptory strike?
20         MR. LAMMERS:  Your Honor, I believe that's
21   Ms. Morris.
22         THE COURT:  Ms. Morris.  I'm sorry.
23   Demarius.  Yep.
24         MR. LAMMERS:  And, yes, Your Honor, we do
25   exercise a peremptory strike.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

115

1          THE COURT:  That will be the plaintiff's
2    sixth.
3          MR. LAMMERS:  Uh.
4          THE COURT:  No.
5          MR. GOLDENSOPH:  Yes.
6          MR. LAMMERS:  Yes.  Sixth.  Thank you.
7          THE COURT:  All right.  And so I miscounted.
8    And I think the defense has one more strike; is that
9    right?  No.
10         THE CLERK:  No.
11         THE COURT:  Okay.  All right.  So the
12   alternate juror is going to be the last one on the
13   front row on the far side, which is Ms. Lown, Nikki
14   Lown.
15         All right.  So let's talk about the Batson
16   challenge.
17         Mr. Goldensoph, it's the challenger's
18   obligation to make a prima facie case.  So do you
19   want to go ahead and make a record?
20         MR. GOLDENSOPH:  Well, Your Honor, I think
21   just for the purposes of the record, Mr. Rogers was
22   the only -- and everybody else can correct me if I'm
23   wrong, but from my recollection, the only person of
24   any color, the only nonwhite person on the jury.  He
25   is a black man.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

116

1          Nobody asked any questions of him during
2    voir dire, so he didn't provide any sort of answers
3    that seemed way off, left base, or anything like
4    that.
5          And, frankly, there's nothing in his
6    questionnaire that struck me as being off base or bad
7    one way or the other.  He just seemed like a normal
8    guy.  And for these reasons, I believe the Batson
9    challenge is appropriate.
10         THE COURT:  Thank you.
11         Mr. Lammers.
12         MR. LAMMERS:  Well, Your Honor, I don't mean
13   to be flip, but it frankly is not what struck
14   Mr. Goldensoph from his questionnaire that is
15   determinant to the Court to be -- The standard is
16   whether there's race-neutral reasons for the
17   peremptory challenge.
18         As you review the defendant's questionnaire,
19   we have no idea what the defendant's race is.  Yet
20   you look at his questionnaire, and he admits that he
21   has three prior law enforcement contacts, two of
22   which he was acquitted on, one of which he was
23   convicted for.
24         He says that he has a brother who was
25   charged with conspiracy.  And he says that he feels

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

---

**Sarah J. Dittmer, CSR, RPR**          reportingwhereur@yahoo.com

---

117

1  that the legal system, while he likes it, he believes
2  that it can be biased. And that is all facts that
3  were known to the Government and noted by the
4  Government prior to ever stepping in the room today
5  and realizing what the -- what Mr. Rogers' race was.
6       Those are race-neutral reasons for striking
7  a juror. And we exercised an appropriate peremptory
8  challenge.
9       MR. GOLDENSOPH: Your Honor, if I could
10 address or respond?
11      THE COURT: Yeah. And so let me just make a
12 further record, that the Government provided the
13 Court with criminal histories as well. And Juror
14 Number 13, Norris Rogers, was listed among those with
15 criminal histories.
16      And that criminal history was noted that he
17 was convicted of theft, fifth degree, in 1981; a
18 serious assault misdemeanor in 1986; an interference
19 misdemeanor in 1998; and assault causing injury of
20 peace officers and others in 2002.
21      Is that the same individual?
22      MR. LAMMERS: It's the same individual. And
23 I would also note, Your Honor, that that -- those
24 convictions don't match what he described in his
25 questionnaire.

---

118

1       In his questionnaire, I believe he talks
2  about three arrests, one of which was a public intox.
3  The second I think he claimed was alluding. And then
4  he admitted being convicted of an assault. So that's
5  additional race-neutral reasons for the strike.
6       I'm sorry that I didn't mention that. I
7  didn't have the criminal history in front of me that
8  we had provided to the Court.
9       THE COURT: The way that the Batson
10 procedure works is that the defense -- or the
11 challenging party has an obligation to make a prima
12 facie case. I find that Mr. Goldensoph did that.
13      The Government then has to articulate
14 race-neutral reasons for exercising its strike. I
15 find the Government has articulated race-neutral
16 reasons for doing so.
17      It is now -- The burden then shifts back to
18 the challenging party to establish that the
19 race-neutral reasons articulated are pretextual.
20      And so the burden is now back on you, Mr.
21 Goldensoph.
22      MR. GOLDENSOPH: Thank you, Your Honor.
23      I guess what I would state is that I believe
24 Your Honor, during your part of the voir dire, asked
25 the jurors, is there anybody here who has such strong

---

119

1  feelings one way or the other with regards to the
2  criminal justice system or the courts that it would
3  make it difficult for you to sit as a juror in this
4  case, something to that effect. I don't have the
5  exact quote down.
6       But my point is that nobody, including
7  Mr. Norris, raised his hand. So his comments being
8  in there what they are, he still indicated under oath
9  that he would be able to fairly try this case. And
10 so I believe that Mr. Norris should not be struck.
11      THE COURT: All right. I'm going to
12 overrule the Batson challenge.
13      The question before the Court is whether the
14 Government has articulated race-neutral reasons for
15 striking this particular juror.
16      The Government has articulated before it
17 ever came in the courtroom and had any indication of
18 the juror's race that it had made decisions that
19 there were negative things about this juror based on
20 the questionnaire. And there's also criminal history
21 that is a race-neutral reason.
22      The fact that the juror did not raise a hand
23 or suggest that he was biased in some way does not
24 constitute evidence of the Government's race-neutral
25 reason as somehow pretextual.

---

120

1       And so I find that the Government has not
2  improperly struck this particular juror. That will
3  be the Court's ruling on the Batson challenge.
4       Are we ready to have the jury brought back
5  in, then?
6       MR. LAMMERS: Yes, Your Honor.
7       MR. GOLDENSOPH: Yes, Your Honor.
8       THE COURT: All right. We are not going to
9  read instructions before we take our lunch break.
10      (Prospective jury enters.)
11      THE COURT: All right. Please be seated.
12      All right. Ladies and gentlemen, the
13 parties have exercised their peremptory strikes and
14 narrowed you down to 13. And so I'm going to read
15 off the names of those of you who have been selected
16 to serve as jurors in this case.
17      When I read off your name, I'd like you to
18 stand and remain standing until I've finished off
19 reading all the names and have had a chance to check
20 with the lawyers to make sure that I didn't read off
21 the wrong names. All right?
22      And so the first one is Brandi Davis,
23 Spencer Bodensteiner, Amber Gerard, Ryan Hansen,
24 Tamera Gorter, Sean Stelken, Jacqueline Stefen- --
25 Stephenson, Sandra Koch, Cheri Francik, Brian Elzey,

121

1  Megan Freitag, Julie Mooney, and Nikki Lown.
2        Mr. Lammers, is this the jury you selected?
3        MR. LAMMERS:  Yes, Your Honor.
4        THE COURT:  And, Mr. Goldensoph?
5        MR. GOLDENSOPH:  Yes, Your Honor.
6        THE COURT:  All right.  Thank you.  You may
7  all take a seat.
8        Those of you who were not selected to serve
9  on this jury, again, don't take it personally.  This
10 isn't a judgment about whether you're a good or bad
11 person.  The lawyers have to strike some people to
12 get us down to the 13.  And sometimes they may like
13 every one of you, but they have to exercise strikes
14 somehow to get us down to 13.
15       And so thank you for coming in.  Your
16 service was valuable to us.  We needed to have people
17 from whom we could select a jury.  And so -- And
18 except for the people whose names I called, the rest
19 of you are now excused.  And you go with the Court's
20 thanks.
21       THE CLERK:  All rise.
22       MR. ROGERS:  I'm the only peer in here.  Why
23 didn't you pick me?
24       Good luck, Bro.
25       (Prospective jurors not selected exit.)

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

123

1        Mr. Thompson.
2        THE CLERK:  If you can raise your right
3  hand.
4        (Jurors sworn.)
5              *   *   *   *   *
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

122

1        THE COURT:  All right.  Please be seated.
2        All right.  What's going to happen now,
3  ladies and gentlemen, is Mr. Thompson is going to
4  re-seat you back up here in this box where you'll
5  actually be seated during the jury trial.  And so as
6  soon as he gets done with that, then we'll swear you
7  in.
8        So, Mr. Thompson.
9        THE CLERK:  So I can have Ms. Davis here in
10 the first seat, followed by Mr. Bodensteiner here.
11 Ms. Gerard, the third seat.  Mr. Hansen in the fourth
12 seat.  Ms. Gorter, Mr. Stelken, and Ms. Stephenson in
13 that row.  And then coming up to the row behind, Ms.
14 Koch, followed by Ms. Francik, Mr. Elzey, Ms.
15 Freitag, Ms. Mooney, and then Ms. Lown.
16       THE COURT:  All right.  Thank you.
17       Now Mr. Thompson is going to administer an
18 oath to you as jurors.  You took an oath earlier to
19 answer questions as prospective jurors.  You're now
20 going to take an oath as jurors.
21       And as soon as we're done with that, we'll
22 go ahead and take a lunch break.  And when we come
23 back after lunch, I will instruct you on the law.
24 And then the parties will start off with opening
25 statements.

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

124

1              CERTIFICATE
2        I, the undersigned, a Certified Shorthand
3  Reporter and Notary Public of the State of Iowa, do
4  hereby certify that I acted as the Certified
5  Shorthand Reporter in the foregoing matter at the
6  time and place indicated herein; that I took in
7  shorthand the proceedings had at said time and place;
8  that said shorthand notes were reduced to print under
9  my supervision and direction by means of
10 computer-aided transcription; and that the foregoing
11 pages are a full and correct transcript of the
12 shorthand notes so taken.
13
14       IN WITNESS WHEREOF, I have hereunto set my
15 hand this 17th day of December, 2019.
16
17
18
19              _Sarah Dittmer_
20              Sarah J. Dittmer
21              Certified Shorthand Reporter
22
23
24
25

*Sarah J. Dittmer, CSR, RPR*
*1(888)388-2723*

**Sarah J. Dittmer, CSR, RPR        reportingwhereur@yahoo.com**

**1**

**1** [4] - 1:20, 23:20, 24:3, 107:12
**10** [2] - 85:18, 112:15
**10:40** [1] - 83:23
**10:42** [1] - 84:19
**10th** [1] - 114:16
**11** [1] - 113:18
**111** [1] - 1:20
**11:02** [1] - 84:19
**11:30** [1] - 106:2
**11:39** [1] - 106:2
**12** [1] - 9:23
**13** [9] - 9:22, 10:7, 10:17, 10:20, 104:10, 117:14, 120:14, 121:12, 121:14
**15** [4] - 83:23, 84:18, 104:18, 104:24
**15-minute** [2] - 82:20, 83:22
**17** [1] - 87:11
**17th** [1] - 1:25
**18** [1] - 41:24
**18-CR-1023** [1] - 1:4
**1981** [1] - 117:17
**1986** [1] - 117:18
**1998** [1] - 117:19

**2**

**2** [2] - 24:1, 108:1
**20** [5] - 14:8, 22:2, 66:10, 104:18, 104:24
**20-minute** [2] - 13:3, 13:7
**2002** [1] - 117:20
**2017** [4] - 24:3, 24:8, 24:13, 24:18
**2019** [3] - 1:11, 1:25, 1:25
**22** [1] - 41:25
**23** [2] - 22:3, 24:18
**23rd** [2] - 1:11, 24:13
**25th** [1] - 1:25
**28** [1] - 59:8
**29** [4] - 9:21, 10:7, 11:10, 10:9
**2:30** [3] - 12:18, 13:3, 13:7
**2nd** [1] - 24:8

**3**

**3** [2] - 24:6, 108:11
**30** [2] - 3:13, 3:14
**3:00** [1] - 12:21

**4**

**4** [2] - 24:11, 109:9
**40** [1] - 41:24
**425** [1] - 1:22
**45-minute** [1] - 20:10

**5**

**5** [2] - 24:16, 109:16
**50/50** [1] - 21:9
**51101** [1] - 1:17
**52401** [2] - 1:20, 1:23

**6**

**6** [1] - 110:10
**600** [1] - 1:17
**670** [1] - 1:17

**7**

**7** [1] - 111:13

**8**

**8** [1] - 112:1
**803** [1] - 1:22
**81** [1] - 20:18
**81-year-old** [1] - 19:15
**8:30** [3] - 12:17, 13:2, 13:7

**9**

**9** [1] - 112:8
**94** [2] - 3:11, 3:17

**A**

**a.m** [4] - 84:19, 106:2
**ability** [8] - 27:21, 31:8, 32:7, 33:16, 34:19, 57:12, 57:19, 79:10
**able** [29] - 8:18, 19:22, 32:17, 44:11, 47:21, 48:4, 48:5, 52:10, 53:18, 54:14, 55:19, 62:23, 63:8, 63:25, 67:13, 67:21, 69:11, 75:4, 80:9, 89:16, 91:25, 92:2, 93:9, 93:11, 93:15, 97:1, 103:12, 103:21, 119:9
**absolutely** [9] - 51:22, 52:7, 65:20, 69:2, 71:23, 72:23, 96:9, 96:11
**accept** [1] - 63:22
**account** [2] - 32:21, 52:21
**accusation** [2] - 46:17, 46:23
**accused** [9] - 46:19, 47:4, 47:8, 51:6, 52:12, 53:10, 53:20, 95:15, 95:19
**acquit** [2] - 55:11, 55:23
**acquitted** [1] - 116:22
**acted** [1] - 124:4
**activity** [2] - 31:25, 32:5
**acts** [3] - 53:11, 53:13, 55:21
**Adam** [1] - 29:15
**addicts** [1] - 70:16
**additional** [1] - 118:5
**address** [1] - 117:10
**administer** [1] - 122:17
**admit** [2] - 102:17, 102:18
**admits** [3] - 102:20, 103:3, 116:20
**admitted** [1] - 118:4
**ado** [1] - 87:19
**adopted** [2] - 7:15, 7:16
**adult** [1] - 18:20
**advanced** [1] - 75:12
**affect** [1] - 80:22
**affected** [2] - 53:17, 70:18
**affects** [1] - 73:8
**afford** [1] - 52:14
**afforded** [1] - 47:2
**affording** [2] - 48:13, 52:23
**afoot** [1] - 54:1
**afraid** [1] - 16:21
**African** [4] - 48:17, 48:21, 71:5, 71:9
**African-American** [1] - 48:21
**afternoon** [2] - 2:19,
12:24
**age** [1] - 4:8
**aged** [1] - 12:20
**ago** [4] - 18:3, 18:8, 41:22, 41:25
**agree** [4] - 56:10, 56:25, 73:19, 73:21
**agreement** [1] - 93:12
**ahead** [8] - 19:6, 64:10, 85:5, 85:21, 86:7, 105:24, 115:19, 122:22
**aided** [1] - 124:10
**alcohol** [1] - 54:7
**alive** [1] - 66:8
**allegedly** [2] - 9:7, 9:9
**allow** [3] - 12:21, 32:4, 52:13
**allows** [2] - 12:19, 12:23
**alluded** [1] - 73:7
**alluding** [1] - 118:3
**almost** [2] - 18:8, 40:12
**alternate** [6] - 9:25, 10:4, 10:6, 21:17, 35:20, 115:12
**Amber** [1] - 120:23
**Amendment** [4] - 51:5, 51:19, 52:14, 52:24
**America** [4] - 1:3, 6:25, 14:13, 23:14
**American** [4] - 48:17, 48:21, 71:6, 71:9
**amount** [4] - 23:22, 24:4, 24:9, 24:19
**Andy** [1] - 28:25
**announce** [1] - 104:17
**answer** [6] - 5:14, 7:8, 8:2, 92:17, 95:11, 122:19
**answered** [3] - 10:13, 10:14, 58:14
**answering** [2] - 5:16, 16:2
**answers** [7] - 10:24, 11:20, 11:24, 31:12, 89:20, 89:21, 116:2
**anticipate** [2] - 12:8, 87:23
**apologize** [2] - 3:19, 95:2
**appearance** [2] - 49:13, 83:11
**Appearances** [1] - 1:15
**Appellant** [1] - 26:10
**applied** [1] - 61:13
**applies** [1] - 39:17

**appreciate** [9] - 16:16, 17:6, 80:24, 81:15, 87:11, 87:15, 87:18, 94:20, 97:16
**appropriate** [3] - 69:23, 116:9, 117:7
**appropriately** [3] - 71:3, 72:19, 72:20
**April** [1] - 1:11
**area** [1] - 32:1
**argued** [1] - 56:19
**arises** [1] - 21:13
**arms** [2] - 31:3, 34:23
**arrests** [1] - 118:2
**arthritic** [1] - 16:18
**articulate** [1] - 118:13
**articulated** [4] - 118:15, 118:19, 119:14, 119:16
**Ashley** [2] - 26:4, 27:13
**aside** [14] - 28:9, 32:4, 32:15, 32:17, 33:12, 43:8, 50:9, 50:20, 50:23, 50:24, 52:10, 53:18, 73:22, 73:23
**assault** [3] - 117:18, 117:19, 118:4
**assert** [1] - 110:18
**assist** [1] - 80:21
**assistance** [1] - 69:9
**assistant** [6] - 26:2, 26:3, 26:4, 26:5, 26:9, 26:11
**Assistant** [15] - 1:16, 1:19, 25:20, 25:22, 26:7, 26:8, 26:12, 26:17, 26:21, 26:22, 26:23, 26:24, 26:25, 27:2, 27:3
**associate** [1] - 31:5
**associated** [2] - 30:9, 31:16
**associates** [1] - 93:11
**assume** [3] - 60:11, 94:11, 94:23
**assumed** [1] - 49:7
**assuming** [1] - 73:1
**assumptions** [4] - 49:6, 49:11, 49:13, 49:15
**assure** [1] - 37:10
**attendant** [2] - 20:24, 39:23
**attention** [4] - 11:12, 11:18, 30:11, 42:7
**attorney** [2] - 79:9, 87:10
**Attorney** [22] - 1:16, 1:19, 1:22, 25:20,

Case 2:18-cr-01023-CJW-MAR Document 112 Filed 12/17/19 Page 32 of 46

25:22, 26:1, 26:4, 26:5, 26:7, 26:10, 26:11, 26:12, 26:18, 26:22, 26:23, 26:24, 26:25, 27:1, 27:3, 27:4, 28:16
**Attorney's** [1] - 27:19
**attorneys** [4] - 26:14, 28:23, 76:18, 97:22
**attribute** [2] - 37:15, 38:10
**attributes** [1] - 56:13
**audiotape** [2] - 64:2, 67:2
**audited** [1] - 34:6
**August** [2] - 24:13, 24:18
**automatically** [1] - 94:11
**Avenue** [1] - 1:20

## B

**background** [4] - 49:9, 57:11, 57:18, 68:17
**backgrounds** [1] - 50:18
**bad** [5] - 9:5, 34:14, 83:16, 116:6, 121:10
**bar** [1] - 15:15
**barely** [1] - 39:12
**base** [6] - 23:23, 24:14, 49:18, 75:24, 116:3, 116:6
**based** [22] - 8:12, 8:13, 8:19, 28:11, 33:14, 49:6, 49:13, 49:15, 50:9, 50:16, 50:24, 52:18, 53:19, 55:14, 56:23, 63:5, 66:20, 66:24, 68:21, 103:23, 103:24, 119:19
**basement** [1] - 2:24
**basis** [2] - 16:25, 30:6
**bat** [2] - 96:15, 96:16
**Batson** [6] - 110:18, 115:15, 116:8, 118:9, 119:12, 120:3
**Beckley** [5] - 19:11, 38:17, 38:18, 79:15, 108:20
**BECKLEY** [33] - 19:14, 20:1, 20:6, 20:8, 20:11, 20:13, 20:17, 20:21, 20:24, 21:6, 21:11, 21:15, 21:18, 21:20, 21:22,

38:20, 38:22, 38:24, 39:1, 39:5, 39:9, 39:15, 39:19, 39:22, 79:16, 80:3, 80:10, 80:12, 86:9, 86:13, 87:2, 90:8, 90:10
**beginning** [1] - 45:4
**behalf** [2] - 87:15, 87:16
**behind** [4] - 37:19, 41:14, 68:6, 122:13
**belief** [1] - 46:4
**beliefs** [7] - 49:8, 49:20, 50:3, 50:11, 51:1, 57:11, 57:18
**believable** [1] - 68:25
**believes** [2] - 25:4, 117:1
**bench** [2] - 4:5, 4:8
**Benda** [3] - 36:1, 36:3, 112:23
**BENDA** [10] - 36:4, 36:7, 36:10, 36:13, 36:25, 37:3, 37:5, 37:8, 37:13, 37:16
**benefit** [3] - 48:13, 52:14, 52:24
**Berbano** [1] - 29:18
**Berry** [1] - 26:2
**best** [2] - 8:18, 48:21
**better** [5] - 7:20, 57:8, 73:17, 79:13, 110:20
**between** [3] - 7:24, 36:19, 93:10
**beyond** [21] - 45:3, 45:6, 45:8, 45:9, 45:10, 46:1, 46:23, 47:6, 47:13, 47:24, 48:11, 50:14, 55:22, 71:21, 73:4, 74:5, 76:6, 78:21, 78:24, 79:4, 98:3
**biased** [2] - 117:2, 119:23
**biases** [2] - 71:12, 71:18
**big** [9] - 93:2, 93:4, 93:5, 98:20, 98:22, 101:17, 101:20, 102:5
**binding** [2] - 7:3, 7:8
**bird** [1] - 62:22
**birthday** [1] - 48:22
**bit** [17] - 6:16, 6:22, 7:17, 7:20, 12:2, 13:14, 17:16, 17:22, 30:21, 39:18, 48:19, 58:23, 62:11, 71:3, 73:8, 73:20, 89:3
**black** [1] - 115:25

**blazers** [2] - 6:5, 6:11
**blind** [2] - 50:1, 71:24
**blindfold** [2] - 49:24, 49:25
**blue** [1] - 6:5
**Bodenstein** [2] - 88:2, 90:5
**BODENSTEINER** [7] - 88:3, 88:6, 88:17, 88:22, 89:6, 89:13, 89:19
**Bodensteiner** [7] - 88:6, 88:7, 88:8, 88:11, 107:20, 120:23, 122:10
**born** [1] - 78:22
**botching** [3] - 9:7, 9:8, 9:9
**bouts** [1] - 18:1
**Bower** [1] - 29:20
**Box** [1] - 4:17
**box** [13] - 8:4, 8:5, 66:4, 66:5, 66:6, 66:8, 66:9, 66:11, 66:12, 66:19, 76:21, 122:4
**Boy** [1] - 66:15
**boy** [1] - 70:24
**brain** [1] - 96:15
**branch** [1] - 26:20
**Brandi** [1] - 120:22
**break** [21] - 2:19, 12:13, 12:14, 13:1, 82:18, 82:19, 82:20, 82:21, 83:4, 83:17, 83:22, 83:23, 84:12, 85:2, 85:7, 86:16, 86:17, 104:15, 120:9, 122:22
**breaks** [3] - 13:3, 13:6, 13:8
**Brian** [2] - 28:24, 120:25
**brief** [3] - 77:12, 87:24, 102:8
**briefly** [1] - 75:25
**bring** [13] - 13:6, 25:2, 75:18, 77:22, 78:10, 80:23, 84:6, 86:2, 93:19, 93:24, 101:19, 102:1, 104:25
**bringing** [1] - 23:13
**Bro** [1] - 121:24
**broad** [7] - 24:25, 30:2, 31:1, 31:3, 43:18, 57:9, 57:16
**broaden** [1] - 30:15
**broadly** [1] - 75:10
**brother** [5] - 80:19,

80:20, 81:6, 81:9, 116:24
**brought** [7] - 46:22, 85:4, 94:13, 95:13, 95:15, 102:9, 120:4
**bunch** [1] - 83:8
**burden** [14] - 39:7, 45:1, 45:2, 45:18, 45:19, 45:21, 45:24, 46:4, 71:8, 71:19, 72:20, 97:21, 118:17, 118:20
**burdens** [1] - 87:12
**busy** [2] - 4:22, 5:1

## C

**C.J** [2] - 1:13, 2:6
**calculation** [1] - 63:23
**California** [2] - 2:21, 23:2
**candor** [1] - 58:20
**cannot** [3] - 51:14, 51:15, 69:18
**capacity** [2] - 30:2, 30:19
**car** [3] - 62:16, 62:23, 100:15
**care** [1] - 12:25
**careful** [1] - 16:11
**carefully** [1] - 71:12
**caregiver** [1] - 18:12
**cars** [1] - 100:20
**case** [141] - 6:19, 6:21, 7:2, 7:3, 7:22, 8:2, 8:9, 8:11, 8:12, 8:19, 8:20, 9:3, 9:6, 9:13, 9:14, 9:16, 9:17, 9:24, 9:25, 10:2, 10:5, 10:18, 12:4, 12:8, 19:4, 20:3, 22:19, 23:11, 23:12, 23:14, 23:16, 23:17, 23:19, 24:24, 24:25, 25:4, 25:5, 25:8, 25:10, 27:20, 27:22, 28:5, 28:9, 28:11, 31:9, 31:25, 32:6, 32:19, 32:24, 33:7, 33:14, 34:17, 34:19, 35:10, 35:11, 36:8, 36:16, 36:18, 36:19, 36:23, 36:24, 38:1, 38:18, 38:19, 39:7, 39:18, 40:15, 40:23, 41:5, 43:8, 43:11, 43:21, 44:15, 45:2, 45:4, 46:1, 46:5, 48:4, 48:14, 49:21,

50:5, 50:9, 50:10, 50:13, 50:16, 50:24, 51:2, 51:10, 52:10, 52:16, 52:18, 53:2, 53:8, 53:9, 53:14, 53:18, 53:22, 53:24, 54:3, 54:9, 55:20, 56:12, 56:19, 56:23, 57:5, 57:13, 58:17, 59:15, 59:16, 65:15, 69:4, 71:5, 72:1, 72:12, 73:2, 73:3, 74:5, 75:17, 75:20, 78:21, 78:25, 79:3, 79:16, 82:23, 83:1, 83:15, 98:16, 102:15, 103:1, 115:18, 118:12, 119:4, 119:9, 120:16
**caseloads** [1] - 4:23
**cases** [7] - 4:16, 12:24, 32:14, 43:19, 75:12, 75:15, 80:5
**casting** [1] - 64:12
**cat** [6] - 66:6, 66:7, 66:8, 66:9, 66:12
**cat's** [1] - 66:6
**category** [1] - 9:20
**Catellier** [1] - 29:19
**causing** [1] - 117:19
**CEDAR** [1] - 1:2
**Cedar** [13] - 1:10, 1:20, 1:23, 4:1, 4:19, 25:25, 26:18, 31:18, 32:2, 81:23, 81:25, 82:2
**certain** [5] - 4:7, 49:7, 53:14, 54:24, 92:3
**certainly** [4] - 20:20, 30:3, 46:21, 96:18
**CERTIFICATE** [1] - 124:1
**Certified** [3] - 124:2, 124:4, 124:21
**certify** [1] - 124:4
**Chad** [2] - 25:23, 29:15
**chalkboard** [2] - 51:20, 52:6
**challenge** [7] - 110:18, 115:16, 116:9, 116:17, 117:8, 119:12, 120:3
**challenger's** [1] - 115:17
**challenging** [2] - 118:11, 118:18
**chance** [4] - 21:9, 29:14, 43:24, 120:19
**chances** [1] - 21:7

change [1] - 82:11
changed [1] - 7:17
characteristic [1] - 56:7
charge [3] - 23:13, 46:22, 69:8
charged [13] - 23:20, 24:2, 24:7, 24:12, 24:17, 46:8, 46:12, 69:6, 70:19, 93:1, 93:3, 93:23, 116:25
charges [3] - 23:19, 48:10, 69:17
charging [1] - 46:9
check [3] - 77:16, 78:5, 120:19
Cheri [2] - 112:2, 120:25
Chicago [1] - 23:2
Chief [2] - 26:9, 26:10
chief [3] - 3:24, 26:3, 26:20
child [2] - 43:9, 95:14
children [1] - 30:17
China [1] - 7:6
chip [3] - 64:23, 65:5, 65:19
choice [1] - 10:19
choices [1] - 52:15
choose [1] - 85:15
chooses [1] - 51:13
chosen [3] - 48:3, 50:4, 91:24
circumstances [9] - 20:15, 61:22, 63:5, 63:11, 66:20, 71:4, 102:25, 103:15, 103:24
circumstantial [8] - 60:14, 60:20, 61:10, 61:21, 63:1, 64:13, 64:18, 66:17
citizen [1] - 7:14
citizens [6] - 7:7, 8:16, 14:17, 14:18, 23:7, 46:13
City [6] - 1:17, 3:25, 4:2, 4:20, 26:14, 26:20
civic [1] - 16:16
Civil [1] - 26:9
civil [14] - 7:12, 35:11, 36:9, 36:18, 36:19, 36:24, 37:25, 38:21, 38:22, 40:10, 40:23, 41:18, 42:16, 43:11
claim [1] - 13:18
claimed [1] - 118:3
classes [1] - 51:18
clear [1] - 70:14

clearly [1] - 87:16
clerk [1] - 5:24
CLERK [10] - 11:5, 22:2, 22:6, 84:8, 84:20, 105:14, 115:10, 121:21, 122:9, 123:2
clerks [1] - 5:21
client [2] - 28:18, 29:6
clients [1] - 105:18
close [5] - 30:16, 30:17, 30:18, 30:19, 31:6
clouded [1] - 16:22
clue [1] - 102:4
cocaine [8] - 23:23, 23:24, 24:13, 24:14, 58:18, 59:16, 59:18, 70:17
coin [1] - 71:7
Colin [1] - 29:16
color [6] - 48:18, 49:6, 49:9, 49:14, 71:24, 115:24
comfortable [3] - 15:22, 16:1, 73:13
coming [9] - 17:5, 68:9, 68:11, 68:13, 86:15, 86:18, 105:8, 121:15, 122:13
comments [1] - 119:7
commit [1] - 60:3
committed [2] - 46:16, 53:13
committing [2] - 36:17, 46:19
common [1] - 7:16
commonly [3] - 23:23, 24:14, 77:23
commonsense [1] - 47:19
community [5] - 7:2, 8:17, 14:6, 14:10, 46:14
company [2] - 30:8, 30:9
compare [1] - 33:5
compensation [1] - 36:21
competing [3] - 67:12, 67:18, 68:1
complete [1] - 2:16
completed [1] - 3:4
completely [3] - 32:16, 96:10, 96:13
computer [1] - 124:10
computer-aided [1] - 124:10
concentrate [1] - 19:4
concept [2] - 65:22,

76:16
concepts [1] - 58:9
concern [4] - 18:13, 20:3, 45:14, 79:12
concerned [2] - 3:22, 79:19
concerns [1] - 31:14
conclude [1] - 48:9
concluded [1] - 55:3
conclusion [10] - 61:23, 62:3, 62:24, 63:4, 63:11, 63:12, 64:4, 65:4, 65:12, 66:20
conclusions [2] - 40:1, 64:19
condition [1] - 17:4
conditions [1] - 17:4
conferences [1] - 22:23
confession [1] - 102:14
confident [1] - 98:11
confirm [2] - 77:21, 81:20
Congress [1] - 55:2
conjunction [1] - 65:11
consider [2] - 30:18, 65:10
consideration [1] - 70:11
considering [1] - 15:2
consistent [1] - 70:5
conspiracy [2] - 23:21, 116:25
conspire [1] - 54:12
conspiring [1] - 60:5
constant [4] - 18:3, 18:12, 18:24, 18:25
constitute [4] - 13:11, 15:8, 22:8, 119:24
Constitution [4] - 46:11, 51:6, 98:18, 98:19
constitutional [1] - 51:11
consult [1] - 105:18
contact [1] - 83:20
contacts [1] - 116:21
containing [4] - 23:22, 24:4, 24:9, 24:19
context [1] - 60:23
continue [3] - 4:10, 18:6, 69:6
continues [1] - 51:8
controlled [6] - 23:23, 23:24, 24:5, 24:10, 24:15, 24:20
conversation [2] -

15:17, 16:5
convicted [3] - 116:23, 117:17, 118:4
convictions [1] - 117:24
convinced [1] - 78:13
cookie [1] - 96:1
cool [1] - 89:24
cooperating [2] - 68:20, 69:4
cooperation [1] - 68:22
cooperators [1] - 70:21
Corkery [5] - 26:4, 27:13, 27:15, 27:18, 28:10
corner [1] - 106:11
correct [5] - 78:19, 88:2, 90:21, 115:22, 124:11
correcting [1] - 88:9
corrections [1] - 30:4
correctly [2] - 90:18, 102:11
corroborated [1] - 70:8
Cory [3] - 1:21, 28:16, 28:21
Counsel [2] - 26:6, 26:8
Count [5] - 23:20, 24:1, 24:6, 24:11, 24:16
count [4] - 103:5, 103:16, 103:22, 103:25
country [6] - 3:17, 4:23, 4:25, 14:22, 22:24, 72:10
counts [4] - 102:17, 103:6, 103:8, 103:21
county [3] - 3:8, 3:15, 31:22
couple [5] - 5:24, 16:19, 21:25, 58:6, 58:9, 58:11, 60:16, 60:18, 72:3
course [3] - 29:12, 85:14, 85:17
Court [7] - 2:4, 2:7, 76:18, 116:15, 117:13, 118:8, 119:13
COURT [207] - 1:1, 2:2, 11:7, 16:8, 16:14, 16:24, 17:2, 17:8, 17:10, 17:13, 17:14, 17:15, 17:19,

17:21, 17:24, 18:13, 18:18, 18:23, 19:5, 19:8, 19:10, 19:13, 19:25, 20:2, 20:7, 20:9, 20:12, 20:14, 20:20, 20:23, 21:4, 21:7, 21:12, 21:16, 21:19, 21:21, 21:24, 22:4, 22:7, 22:11, 22:17, 26:15, 27:5, 27:12, 27:14, 27:17, 27:25, 28:5, 28:7, 28:13, 29:3, 31:19, 31:24, 32:13, 33:19, 33:22, 33:25, 35:10, 35:13, 35:15, 35:17, 35:20, 35:22, 35:25, 36:5, 36:8, 36:11, 36:14, 37:1, 37:4, 37:6, 37:9, 37:14, 37:18, 37:22, 37:25, 38:3, 38:5, 38:7, 38:9, 38:13, 38:21, 38:23, 38:25, 39:3, 39:6, 39:10, 39:16, 39:20, 40:3, 40:11, 40:14, 40:18, 40:20, 40:23, 41:4, 41:7, 41:12, 41:18, 41:20, 41:22, 42:1, 42:4, 42:9, 42:13, 42:16, 42:18, 42:20, 42:23, 43:3, 44:4, 44:6, 44:8, 44:17, 44:24, 54:23, 55:1, 55:7, 55:17, 56:2, 56:4, 74:2, 82:15, 82:17, 84:10, 84:15, 84:17, 84:21, 84:24, 85:12, 85:14, 85:17, 85:24, 86:2, 86:5, 86:11, 86:14, 104:6, 105:16, 105:22, 105:24, 106:3, 106:6, 106:9, 106:15, 106:22, 106:25, 107:2, 107:4, 107:9, 107:11, 107:17, 107:24, 108:1, 108:7, 108:11, 108:16, 108:18, 109:2, 109:7, 109:9, 109:14, 109:16, 109:22, 109:24, 110:6, 110:8, 110:10, 110:15, 110:19, 111:2, 111:4, 111:11, 111:13, 111:18, 111:24, 112:1,

112:6, 112:8, 112:13, 112:15, 112:21, 113:2, 113:4, 113:10, 113:16, 113:18, 113:23, 113:25, 114:3, 114:9, 114:15, 114:22, 115:1, 115:4, 115:7, 115:11, 116:10, 117:11, 118:9, 119:11, 120:8, 120:11, 121:4, 121:6, 122:1, 122:16

**court** [32] - 2:11, 3:2, 3:6, 3:7, 3:10, 3:23, 3:24, 4:3, 4:4, 4:16, 5:1, 5:6, 6:3, 12:17, 16:14, 17:9, 19:9, 20:24, 21:23, 35:7, 35:8, 36:6, 39:23, 40:7, 41:16, 42:14, 79:18, 92:21, 93:22, 96:5, 104:23, 105:13

**Court's** [3] - 17:6, 120:3, 121:19

**Courthouse** [1] - 1:10

**courthouse** [3] - 2:24, 3:25, 14:8

**courthouses** [2] - 3:9, 4:1

**courtroom** [21] - 2:12, 2:25, 5:5, 5:7, 5:8, 6:9, 6:13, 6:14, 11:3, 11:11, 11:16, 48:18, 78:24, 83:21, 84:1, 84:2, 84:6, 86:8, 105:3, 105:8, 119:17

**courts** [4] - 2:20, 3:8, 119:2

**cousins** [1] - 30:18

**cover** [1] - 58:6

**covered** [2] - 58:5, 59:19

**crack** [6] - 23:24, 24:14, 58:18, 59:16, 59:18, 70:17

**crime** [14] - 36:17, 45:14, 45:15, 46:16, 46:20, 47:4, 51:7, 52:12, 60:9, 69:6, 75:7, 93:1, 93:3, 93:23

**crimes** [1] - 24:22

**criminal** [33] - 7:11, 23:12, 26:3, 34:17, 35:10, 35:12, 36:8, 36:10, 36:14, 36:23, 36:25, 37:25, 38:2, 38:21, 39:18, 40:10,

40:15, 41:18, 41:19, 42:16, 42:17, 43:11, 45:2, 45:16, 68:17, 72:12, 74:17, 117:13, 117:15, 117:16, 118:7, 119:2, 119:20

**cross** [2] - 14:5, 14:10

**crumbs** [1] - 96:1

**CSI** [2] - 60:8, 74:11

**curious** [2] - 92:14, 93:25

**custody** [1] - 43:9

**cut** [1] - 66:21

# D

**D.C** [1] - 48:20

**daily** [1] - 64:20

**damages** [1] - 36:21

**Dan** [1] - 26:11

**dates** [3] - 53:11, 53:14, 55:21

**dating** [3] - 99:16, 99:19, 100:1

**David** [1] - 29:16

**Davis** [7] - 98:1, 98:2, 106:25, 107:5, 107:11, 120:22, 122:9

**DAVIS** [24] - 98:5, 98:8, 98:23, 98:25, 99:4, 99:7, 99:10, 99:13, 99:17, 99:21, 99:24, 100:3, 100:5, 100:8, 100:11, 100:16, 100:19, 100:23, 101:1, 101:4, 101:7, 101:10, 101:13, 101:18

**days** [7] - 2:24, 12:5, 13:1, 14:25, 22:8, 41:2, 63:9

**deal** [9] - 18:9, 21:7, 32:13, 93:2, 93:3, 93:4, 93:5, 98:20, 102:5

**deals** [1] - 18:3

**December** [1] - 1:25

**decide** [22] - 7:3, 7:12, 8:1, 8:6, 8:12, 8:19, 9:24, 10:5, 18:7, 28:10, 32:6, 33:14, 44:15, 46:21, 50:9, 50:15, 51:2, 52:18, 53:18, 53:23, 66:23, 76:18

**decided** [4] - 5:23,

8:5, 18:19, 46:24

**deciding** [4] - 6:19, 32:10, 50:23, 56:23

**decision** [12] - 18:18, 67:3, 73:9, 73:24, 74:6, 98:15, 98:20, 99:2, 101:17, 101:21, 101:24, 102:2

**decisions** [3] - 49:19, 98:22, 119:18

**decriminalized** [1] - 59:9

**Deegan** [1] - 26:2

**Defendant** [7] - 1:7, 1:23, 23:20, 24:1, 24:6, 24:11, 24:16

**defendant** [9] - 23:15, 24:21, 36:15, 53:13, 55:21, 71:5, 71:9, 72:21, 72:22

**defendant's** [14] - 36:16, 71:22, 106:23, 107:3, 107:4, 109:2, 109:24, 111:18, 112:21, 113:4, 113:10, 114:15, 116:18, 116:19

**defending** [1] - 88:18

**defense** [5] - 86:21, 107:18, 108:19, 115:8, 118:10

**define** [3] - 45:5, 45:11, 45:13

**defined** [1] - 61:22

**definitely** [1] - 88:22

**definition** [1] - 98:14

**degree** [1] - 117:17

**deliberation** [1] - 35:23

**delivered** [1] - 1:25

**delve** [1] - 58:23

**Demarius** [1] - 114:23

**democracy** [1] - 6:24

**demonstration** [1] - 76:7

**deputy** [1] - 6:12

**describe** [2] - 2:13, 3:6

**described** [2] - 39:11, 117:24

**describing** [1] - 2:11

**description** [4] - 23:17, 24:25, 39:14, 57:1

**Despite** [1] - 41:9

**detectable** [4] - 23:22, 24:4, 24:9, 24:19

**detective** [1] - 79:22

**determinant** [1] - 116:15

**determination** [2] - 67:13, 67:22

**determine** [4] - 9:2, 46:14, 68:1, 103:2

**determined** [2] - 73:1, 73:2

**determining** [1] - 69:22

**developed** [2] - 7:17, 7:19

**devout** [1] - 72:9

**diabetic** [1] - 10:3

**diagnosed** [2] - 17:18, 17:25

**Dietz** [1] - 110:23

**difference** [1] - 36:12

**different** [11] - 2:20, 39:17, 44:14, 49:2, 50:18, 51:21, 66:24, 96:4, 103:15, 103:20, 103:25

**difficult** [11] - 5:6, 43:20, 48:2, 50:19, 64:11, 89:15, 89:20, 92:7, 97:1, 103:20, 119:3

**difficulty** [7] - 48:13, 50:23, 52:23, 54:16, 57:4, 94:2, 94:6

**dire** [6] - 8:23, 8:25, 58:4, 85:1, 116:2, 118:24

**DIRE** [1] - 1:6

**directing** [1] - 11:9

**direction** [1] - 124:9

**disagreed** [1] - 55:11

**disappointed** [1] - 87:5

**discomfort** [1] - 73:23

**discuss** [1] - 51:15

**discussed** [1] - 31:23

**dispute** [5] - 7:24, 8:7, 34:5, 34:7, 34:10

**distribute** [3] - 23:21, 54:12, 54:13

**distributing** [4] - 24:3, 24:8, 24:13, 24:18

**distribution** [1] - 54:18

**district** [9] - 3:11, 3:21, 3:23, 3:24, 4:3, 4:4, 4:22, 20:25

**DISTRICT** [2] - 1:1, 1:1

**District** [8] - 2:4, 2:7, 3:11, 3:15, 3:20, 25:21, 25:23

**districts** [1] - 3:17

**Dittmer** [3] - 5:5, 5:18,

124:20

**DIVISION** [1] - 1:2

**divorce** [1] - 43:9

**doctor** [2] - 9:7, 29:20

**document** [1] - 46:10

**done** [6] - 36:21, 85:1, 104:16, 104:25, 122:6, 122:21

**doors** [2] - 6:8, 104:22

**double** [2] - 77:16, 78:5

**double-check** [2] - 77:16, 78:5

**doubt** [30] - 45:3, 45:6, 45:8, 45:9, 45:10, 46:1, 46:2, 46:24, 47:7, 47:13, 47:25, 48:11, 50:14, 55:23, 64:12, 66:13, 71:22, 73:4, 74:6, 75:25, 76:1, 76:3, 76:6, 76:7, 78:17, 78:21, 78:24, 79:4, 81:8, 98:4

**down** [33] - 5:7, 5:10, 5:11, 10:7, 10:17, 10:20, 15:12, 16:19, 18:11, 22:12, 30:24, 31:3, 34:25, 42:10, 43:15, 44:1, 55:14, 59:10, 59:17, 64:23, 66:10, 72:18, 78:16, 86:5, 86:7, 102:9, 102:10, 104:10, 119:5, 120:14, 121:12, 121:14

**draw** [7] - 62:2, 62:24, 63:4, 63:12, 64:19, 65:4, 66:19

**dried** [1] - 66:21

**drive** [1] - 20:12

**driver's** [2] - 77:9, 78:9

**driving** [1] - 64:22

**drone** [1] - 75:19

**droppings** [1] - 62:18

**drug** [6] - 31:21, 53:22, 54:18, 58:17, 70:16, 70:18

**drug-related** [1] - 31:21

**drugs** [21] - 31:23, 53:2, 53:3, 53:8, 53:9, 53:16, 54:2, 54:4, 54:6, 54:12, 54:13, 54:18, 54:23, 54:24, 54:25, 55:4, 55:9, 58:19, 58:22, 60:2

**Duax** [1] - 26:21

Dubuque [12] - 20:8, 20:9, 25:24, 32:1, 32:8, 79:17, 79:18, 79:22, 80:21, 80:25, 81:22, 82:9
Duff [2] - 16:6, 16:10
DUFF [4] - 16:13, 16:16, 17:1, 17:6
Dupuich [1] - 26:18
during [18] - 6:10, 10:12, 10:23, 11:13, 13:6, 19:22, 82:21, 83:3, 83:17, 84:12, 89:1, 97:23, 102:16, 104:12, 104:20, 116:1, 118:24, 122:5
duties [3] - 7:13, 14:13, 14:16
duty [3] - 13:17, 14:18, 16:16, 76:16, 77:1, 87:4

## E

easy [2] - 50:18, 94:8
eat [1] - 13:6
effect [2] - 75:11, 119:4
efficiently [1] - 5:2
eight [2] - 20:25, 79:19
eighth [1] - 113:5
Einck [10] - 27:10, 27:12, 31:11, 44:5, 44:6, 44:10, 44:13, 44:18, 44:20, 111:14
EINCK [20] - 27:11, 27:13, 27:16, 27:24, 28:3, 28:6, 28:12, 31:17, 31:20, 32:8, 33:18, 33:20, 33:24, 44:7, 44:23, 73:15, 73:19, 73:21, 73:25, 74:7
either [14] - 8:10, 22:21, 29:11, 30:7, 31:6, 34:18, 43:10, 46:5, 59:9, 69:5, 77:9, 81:7, 90:24, 98:9
element [1] - 45:7
Elzey [4] - 90:17, 112:9, 120:25, 122:14
ELZEY [9] - 90:19, 90:21, 90:24, 91:5, 91:8, 91:11, 91:14, 91:19, 92:3
embarrass [1] - 58:13

embarrassed [1] - 91:1
embarrassing [1] - 89:3
Emily [4] - 26:7, 29:17, 82:6, 82:8
emphasize [1] - 102:2
employed [1] - 13:24
employers [1] - 13:23
end [6] - 12:9, 21:12, 22:3, 38:17, 74:23, 110:23
ended [5] - 10:3, 19:2, 41:1, 41:2, 44:10
ending [1] - 21:8
enforcement [14] - 30:1, 30:19, 31:7, 31:16, 32:25, 33:8, 33:16, 34:13, 34:14, 34:16, 69:9, 81:7, 81:8, 116:21
engaged [3] - 99:16, 99:20, 100:1
England [1] - 7:15
English [1] - 51:25
enjoyable [1] - 74:20
enters [2] - 86:4, 120:10
entire [3] - 3:4, 66:2, 90:6
episode [1] - 74:22
episodes [1] - 18:2
equate [1] - 65:18
ER [1] - 19:2
Eric [1] - 29:16
especially [2] - 18:19, 64:17
essentially [3] - 3:12, 3:15, 4:10
establish [1] - 118:18
estimated [1] - 12:4
ethically [2] - 88:13, 89:4
ethics [1] - 88:14
evaluate [2] - 69:12, 71:12
evaluation [1] - 103:23
evenly [1] - 13:8
event [4] - 61:23, 62:1, 62:2, 66:21
evidence [37] - 2:18, 18:16, 32:18, 32:23, 33:5, 39:8, 45:22, 47:18, 48:10, 52:19, 53:12, 56:8, 56:15, 56:18, 60:14, 61:10, 61:12, 61:14, 61:21, 63:2, 63:18, 63:22, 65:11, 65:12, 66:17,

67:16, 68:6, 69:23, 70:4, 70:5, 73:1, 82:25, 95:1, 103:7, 103:22, 119:24
evolved [1] - 8:16
exact [1] - 119:5
exactly [1] - 94:19
example [5] - 9:5, 59:7, 95:22, 96:4, 102:1
except [1] - 121:18
exception [1] - 77:24
excerpt [1] - 1:9
exchange [1] - 89:25
excited [1] - 90:13
exciting [1] - 76:17
excuse [8] - 11:14, 15:5, 17:3, 19:6, 21:5, 21:16, 23:5, 108:25
Excuse [1] - 77:20
excused [7] - 22:20, 23:9, 83:24, 85:10, 105:12, 121:19
excuses [3] - 13:16, 14:11, 23:1
exercise [37] - 10:9, 10:16, 10:19, 76:24, 85:3, 85:21, 104:16, 106:21, 107:7, 107:14, 107:21, 108:4, 108:8, 108:13, 108:21, 108:23, 109:5, 109:11, 109:19, 110:3, 110:13, 110:24, 111:9, 111:15, 111:22, 112:3, 112:11, 112:18, 112:25, 113:7, 113:13, 113:20, 114:7, 114:12, 114:18, 114:25, 121:13
exercised [2] - 117:7, 120:13
exercising [3] - 106:12, 106:18, 118:14
exhibit [1] - 32:20
exit [2] - 84:9, 121:25
exits [1] - 105:15
experience [5] - 22:22, 34:13, 34:14, 41:10, 90:22
experienced [1] - 40:11
experiences [1] - 49:16
experts [1] - 90:14

explain [1] - 94:6
exposed [1] - 41:10
expression [3] - 60:14, 60:19, 64:17
extended [1] - 16:22
extent [2] - 91:15, 92:3
extra [1] - 35:19
extreme [5] - 13:12, 15:5, 15:9, 22:8, 22:15
extremely [1] - 16:18
eye [1] - 19:18
eyewitness [2] - 63:10, 64:3

## F

face [1] - 80:5
facie [2] - 115:18, 118:12
fact [12] - 24:23, 27:18, 31:5, 47:8, 48:9, 51:15, 58:4, 71:5, 77:4, 81:5, 88:13, 119:22
factor [2] - 28:1, 32:10, 69:1, 70:10
factors [1] - 66:24
facts [21] - 6:19, 7:23, 8:1, 8:11, 8:12, 8:19, 24:24, 28:11, 32:6, 33:14, 49:19, 49:21, 50:10, 50:12, 50:16, 50:24, 51:2, 53:24, 56:23, 68:8, 117:2
fair [5] - 8:18, 9:2, 9:12, 9:18, 14:5, 14:9, 27:22, 31:8, 34:19, 43:20, 53:23, 56:11, 56:22, 57:12, 57:19, 59:11, 69:1, 70:23, 70:24, 71:16, 71:24, 79:10, 81:14, 92:19, 92:25
fairest [1] - 8:6
Fairfield [1] - 26:22
fairly [2] - 69:12, 119:9
fairness [1] - 83:16
fake [1] - 77:17
falsely [1] - 95:19
familiar [3] - 32:8, 32:9, 82:2
family [5] - 27:16, 30:16, 31:6, 43:8, 100:4
far [7] - 3:22, 5:6, 14:23, 38:17, 82:3, 105:20, 115:13

farmland [1] - 34:7
fast [1] - 65:1
favor [1] - 37:9
favorable [1] - 91:10
favorite [4] - 100:14, 100:25, 101:3, 101:22
February [2] - 24:3, 24:8
Federal [16] - 1:10, 3:2, 3:7, 3:8, 3:10, 34:5, 34:10, 35:7, 36:5, 36:7, 37:23, 38:18, 40:6, 41:16, 42:14, 46:12
feelings [1] - 119:1
fellow [1] - 56:20
felony [1] - 46:12
felt [1] - 67:14
few [4] - 4:21, 48:17, 63:9, 87:25
field [1] - 30:7
Fifth [4] - 51:5, 51:18, 52:14, 52:24
fifth [3] - 109:25, 114:10, 117:17
fight [2] - 81:11, 88:11
fighting [1] - 88:20
figure [6] - 9:20, 76:10, 85:19, 100:6, 100:24, 101:2
figured [1] - 101:5
fill [1] - 52:5
filled [1] - 87:20
financial [2] - 14:2, 36:20
fine [3] - 20:17, 21:20, 72:10
finished [2] - 86:20, 120:18
firm [4] - 44:12, 44:21, 64:12, 64:13
first [20] - 3:6, 5:5, 11:22, 13:15, 26:2, 31:11, 35:7, 48:25, 53:7, 56:16, 58:16, 77:9, 77:12, 99:8, 106:11, 106:16, 107:3, 107:4, 120:22, 122:10
First [1] - 31:15
fit [1] - 9:20
five [3] - 19:19, 85:11, 85:18
Fletcher [1] - 26:23
flew [1] - 62:22
flip [3] - 65:23, 71:7, 116:13
flippant [1] - 85:22
focus [1] - 72:15

folks [10] - 25:25, 58:11, 59:1, 59:23, 69:10, 70:15, 70:16, 70:19, 70:20, 81:16
follow [17] - 30:25, 34:1, 45:12, 54:10, 54:14, 55:8, 55:25, 56:9, 56:24, 58:6, 58:15, 59:2, 59:20, 60:3, 73:23, 76:2, 90:11
follow-up [4] - 30:25, 34:1, 59:20, 90:11
followed [2] - 122:10, 122:14
follows [1] - 23:19
food [1] - 13:6
footprint [1] - 75:6
FOR [1] - 1:1
Forde [1] - 26:22
foregoing [2] - 124:5, 124:10
foreperson [7] - 35:18, 37:7, 38:7, 39:4, 40:21, 42:2, 42:21
forever [1] - 3:1
forget [1] - 32:16
forgot [2] - 26:16, 74:10
form [1] - 77:25
formed [1] - 45:17
forms [1] - 6:24
formulate [1] - 82:25
Forney [5] - 41:14, 41:15, 92:16, 106:17, 106:22
FORNEY [12] - 41:17, 41:19, 41:21, 41:24, 42:3, 42:6, 92:20, 92:25, 93:4, 93:7, 93:10, 93:16
forth [1] - 50:3
fortunate [1] - 58:3
forward [1] - 87:25
four [12] - 12:5, 12:6, 12:7, 13:10, 14:24, 18:2, 22:8, 31:4, 32:9, 78:1, 87:5
four-day [1] - 13:10
four-week-long [1] - 87:5
fourth [4] - 109:3, 114:2, 114:3, 122:11
Fourth [1] - 1:17
framers [1] - 98:18
FRANCIK [7] - 37:21, 37:24, 38:2, 38:4, 38:6, 38:8, 38:11
Francik [6] - 37:21,

37:22, 37:23, 112:2, 120:25, 122:14
Franic [1] - 37:20
frankly [7] - 6:18, 6:23, 18:14, 33:11, 94:18, 116:5, 116:13
free [9] - 4:11, 17:10, 19:6, 20:4, 34:23, 86:5, 86:7, 104:24, 105:7
Freetag [1] - 67:8
Freitag [7] - 22:3, 22:13, 67:9, 67:10, 113:12, 121:1, 122:15
FREITAG [18] - 22:16, 67:9, 67:20, 67:23, 68:3, 68:5, 68:9, 68:11, 68:15, 68:18, 68:23, 69:2, 69:13, 69:24, 70:2, 70:6, 70:9, 70:12
French [1] - 8:24
freshly [1] - 62:18
Friday [2] - 12:17, 13:2
friend [5] - 2:21, 27:16, 30:19, 31:6, 48:21
friends [2] - 30:18, 31:22
friendship [2] - 33:15, 44:13
friendships [1] - 33:13
frightened [1] - 52:2
front [18] - 5:17, 9:22, 11:3, 11:10, 11:14, 27:6, 30:14, 34:4, 35:2, 44:1, 105:11, 111:7, 112:17, 114:4, 115:13, 118:7
full [5] - 4:9, 48:13, 52:14, 52:24, 124:11
fully [1] - 5:18
fundamental [2] - 6:24, 7:11
future [1] - 100:2

## G

Gary [1] - 29:18
gathered [1] - 101:15
gathering [2] - 7:1, 8:16
Gee [1] - 73:10
gender [3] - 49:14, 49:20, 50:2
general [1] - 88:21
generally [2] - 61:8,

61:22
gentlemen [6] - 6:11, 79:8, 82:18, 104:7, 120:12, 122:3
Gerard [5] - 74:14, 108:2, 108:3, 120:23, 122:11
GERARD [9] - 74:15, 74:17, 74:19, 74:21, 74:24, 75:9, 75:13, 75:16, 75:21
given [5] - 8:13, 17:4, 28:8, 56:24, 98:9
glad [1] - 31:13
glaring [1] - 98:10
God [1] - 72:7
gold [1] - 112:24
Goldensoph [41] - 1:21, 28:16, 28:17, 28:21, 29:4, 29:6, 29:7, 84:15, 85:1, 86:22, 105:22, 106:6, 106:18, 107:9, 107:14, 107:24, 108:4, 108:16, 108:23, 109:7, 109:11, 109:18, 109:22, 110:3, 110:24, 111:11, 111:15, 111:24, 112:3, 112:13, 112:18, 113:2, 113:7, 113:16, 113:20, 114:12, 115:17, 116:14, 118:12, 118:21, 121:4
GOLDENSOPH [110] - 28:20, 84:16, 84:23, 86:23, 87:1, 87:3, 88:4, 88:8, 88:19, 88:23, 89:7, 89:14, 89:24, 90:9, 90:11, 90:20, 90:22, 91:4, 91:6, 91:9, 91:12, 91:16, 91:23, 92:5, 92:23, 93:2, 93:5, 93:8, 93:13, 93:18, 94:5, 94:14, 94:17, 94:22, 94:25, 95:18, 95:21, 95:25, 96:4, 96:7, 96:17, 96:22, 96:24, 97:6, 97:15, 97:18, 98:6, 98:13, 98:24, 99:1, 99:5, 99:8, 99:12, 99:15, 99:18, 99:22, 99:25, 100:4, 100:6, 100:9, 100:13, 100:17, 100:22, 100:24,

101:2, 101:5, 101:8, 101:11, 101:14, 101:19, 102:13, 102:24, 103:10, 103:14, 103:18, 105:23, 106:7, 106:20, 106:24, 107:1, 107:3, 107:10, 107:16, 107:25, 108:6, 108:17, 108:25, 109:8, 109:13, 109:23, 110:5, 110:17, 111:1, 111:12, 111:17, 111:25, 112:5, 112:14, 112:20, 113:3, 113:9, 113:17, 113:22, 114:14, 115:5, 115:20, 117:9, 118:22, 120:7, 121:5
golfing [1] - 4:14
Gorter [3] - 109:10, 120:24, 122:12
gosh [1] - 99:10
Government [38] - 7:4, 36:15, 36:18, 45:7, 45:21, 45:25, 46:18, 47:3, 47:6, 47:12, 47:24, 48:9, 50:13, 53:10, 53:12, 53:19, 55:19, 71:18, 73:3, 86:19, 94:25, 106:12, 107:6, 107:21, 110:12, 111:8, 111:21, 112:10, 114:6, 114:18, 117:3, 117:4, 117:12, 118:13, 118:15, 119:14, 119:16, 120:1
government [6] - 7:7, 7:8, 14:19, 30:9, 34:6, 34:11
Government's [7] - 69:15, 69:16, 106:16, 110:15, 114:1, 114:9, 119:24
government-associated [1] - 30:9
grand [4] - 46:10, 46:14, 46:18, 46:20
granting [1] - 13:16
great [3] - 9:13, 41:12, 93:18
Great [1] - 78:2
greater [1] - 14:23
Greenwood [1] - 27:4

group [7] - 7:1, 7:6, 8:16, 8:18, 10:8, 34:3, 46:13
Guam [1] - 3:18
guarantee [1] - 50:10
guarantees [1] - 51:6
Guard [1] - 30:6
guess [12] - 26:9, 37:16, 38:11, 58:21, 58:25, 87:4, 88:24, 89:23, 93:13, 95:3, 96:21, 118:23
guessing [1] - 45:14
guilt [9] - 47:6, 47:13, 47:24, 48:10, 102:17, 102:18, 102:20, 103:8, 103:9
guilty [26] - 24:21, 35:16, 36:17, 37:5, 38:6, 40:19, 42:19, 47:15, 47:16, 51:23, 52:4, 52:8, 55:14, 92:21, 93:15, 94:12, 94:15, 95:10, 95:16, 98:9, 98:10, 102:21, 103:2, 103:6, 103:9
guinea [1] - 76:9
gut [1] - 97:7
guy [2] - 101:6, 116:8
guys [2] - 87:4, 104:11

## H

H-A-U-P-E-R-T [1] - 29:17
half [3] - 3:12, 21:1
hallway [1] - 83:3
Hamlyn [1] - 114:4
hand [34] - 5:15, 23:4, 23:8, 27:9, 29:8, 29:24, 30:10, 30:20, 31:10, 31:13, 34:11, 34:20, 41:13, 43:22, 44:18, 46:6, 48:15, 49:23, 51:3, 52:25, 53:25, 54:20, 57:5, 57:15, 57:20, 106:11, 111:7, 112:17, 114:5, 119:7, 119:22, 123:3, 124:15
handing [1] - 55:14
hands [41] - 11:5, 13:13, 15:7, 15:11, 25:7, 25:9, 29:8, 29:24, 29:25, 30:14, 30:23, 31:4, 34:11, 34:20, 34:21, 34:23, 34:24, 34:25, 35:5,

43:6, 43:13, 43:23, 46:7, 48:15, 51:4, 53:1, 53:25, 57:6, 57:21, 60:8, 60:13, 66:14, 69:19, 71:1, 74:12, 79:5, 90:4, 90:7, 90:13, 97:19
**hang** [3] - 16:9, 64:5, 83:24
**Hansen** [5] - 40:5, 40:6, 109:4, 120:23, 122:11
**HANSEN** [8] - 40:8, 40:13, 40:17, 40:19, 40:22, 40:25, 41:6, 41:9
**happy** [1] - 20:21
**hard** [9] - 19:3, 65:15, 65:18, 70:25, 73:9, 73:24, 74:6, 88:12, 89:10
**hardship** [11] - 13:12, 13:16, 13:18, 14:11, 15:3, 15:9, 15:20, 15:21, 22:9, 22:15, 23:1
**harm's** [1] - 14:20
**harmful** [1] - 91:6
**Harris** [1] - 29:19
**hate** [1] - 66:1
**Haupert** [2] - 29:16, 29:17
**Hayden** [1] - 27:1
**headphones** [1] - 16:8
**hear** [22] - 5:11, 5:18, 8:12, 15:19, 16:15, 17:14, 17:20, 23:1, 31:25, 56:8, 60:23, 61:7, 64:17, 67:17, 69:4, 69:5, 69:10, 69:18, 69:24, 70:20
**heard** [16] - 3:9, 25:3, 25:8, 31:20, 32:15, 32:21, 46:8, 53:2, 60:13, 60:19, 63:21, 70:5, 73:1, 89:25, 98:2, 103:19
**hearing** [8] - 2:18, 32:11, 70:4, 70:15, 70:19, 70:20, 95:3
**hearings** [1] - 12:23
**heart** [1] - 89:22
**Heidi** [1] - 29:18
**held** [2] - 1:9, 71:8
**Hello** [1] - 83:6
**help** [4] - 6:1, 6:7, 6:10, 41:5
**helpful** [1] - 7:18
**helps** [1] - 11:17
**hereby** [1] - 124:4

**herein** [1] - 124:6
**hereunto** [1] - 124:14
**heroin** [9] - 23:22, 24:5, 24:10, 24:20, 53:3, 58:18, 59:15, 59:18, 70:16
**hi** [1] - 44:7
**high** [2] - 45:20, 46:6
**higher** [2] - 71:8, 71:19
**highest** [2] - 4:22, 4:24
**Highway** [2] - 3:13, 3:14
**himself** [2] - 19:21, 95:5
**hire** [1] - 26:17
**hires** [1] - 27:1
**histories** [2] - 117:13, 117:15
**history** [4] - 68:17, 117:16, 118:7, 119:20
**hit** [1] - 105:4
**hold** [13] - 5:16, 12:17, 12:23, 51:14, 69:15, 71:15, 71:18, 71:20, 83:18, 89:9, 89:16, 89:21, 90:2
**Holmes** [1] - 113:6
**home** [8] - 12:19, 12:20, 18:4, 18:9, 19:15, 19:21, 20:4, 20:16
**honest** [2] - 94:10, 94:18
**honor** [1] - 7:10
**Honor** [72] - 17:14, 17:19, 25:17, 26:13, 28:20, 57:24, 82:13, 84:14, 85:9, 86:23, 104:4, 105:21, 105:23, 106:5, 106:8, 106:14, 106:20, 106:24, 107:1, 107:8, 107:10, 107:16, 107:23, 107:25, 108:6, 108:10, 108:15, 108:17, 109:1, 109:6, 109:8, 109:13, 109:15, 109:21, 109:23, 110:5, 110:9, 110:14, 110:17, 111:1, 111:3, 111:10, 111:12, 111:17, 111:23, 111:25, 112:5, 112:7, 112:12,

112:14, 112:20, 113:1, 113:3, 113:9, 113:15, 113:17, 113:22, 113:24, 114:8, 114:14, 114:20, 114:24, 115:20, 116:12, 117:9, 117:23, 118:22, 118:24, 120:6, 120:7, 121:3, 121:5
**hoping** [1] - 68:21, 69:6
**horror** [1] - 2:22
**hospital** [1] - 10:4
**Hotchkiss** [4] - 60:17, 94:3, 108:12, 108:18
**HOTCHKISS** [37] - 60:21, 60:24, 61:3, 61:6, 61:11, 61:17, 61:20, 61:24, 62:4, 62:6, 62:8, 62:13, 62:15, 62:20, 62:25, 63:3, 63:7, 63:13, 63:16, 63:19, 63:24, 94:4, 94:7, 94:15, 94:21, 94:24, 95:6, 95:20, 95:24, 96:3, 96:6, 96:9, 96:18, 96:23, 97:3, 97:7, 97:17
**hour** [3] - 20:11, 20:12, 23:4
**hour-and-15-minute** [1] - 20:10
**house** [1] - 48:23
**hung** [1] - 41:21
**husband** [4] - 17:17, 17:25, 19:15, 21:13
**hypothetical** [4] - 62:10, 66:2, 76:10, 77:8
**hypotheticals** [2] - 65:21, 72:17

**I**

**ID** [6] - 77:5, 77:6, 77:10, 77:12, 77:25, 78:14
**idea** [5] - 25:5, 88:21, 98:6, 100:23, 116:19
**identification** [1] - 78:8
**identify** [3] - 91:25, 92:2, 92:7
**IDs** [1] - 77:17
**Ihnen** [5] - 42:11, 42:12, 42:13, 107:13

**IHNEN** [6] - 42:12, 42:15, 42:17, 42:19, 42:22, 42:25
**illegal** [2] - 54:12, 60:6
**illness** [1] - 18:1
**illustrate** [3] - 62:10, 65:21, 66:16
**imagery** [2] - 75:4, 75:19
**images** [1] - 49:22
**imagine** [3] - 7:5, 9:5, 9:11
**immediately** [2] - 96:15, 97:9
**immoral** [1] - 55:15
**impact** [2] - 53:4, 53:5
**impair** [3] - 31:8, 57:12, 57:19
**impartial** [14] - 8:19, 9:3, 9:12, 9:18, 27:22, 31:9, 34:19, 43:21, 53:23, 56:7, 56:11, 56:22, 57:13, 57:19
**impediment** [1] - 51:25
**importance** [1] - 102:2
**important** [29] - 6:15, 6:17, 7:13, 14:12, 21:2, 37:15, 39:20, 39:24, 41:8, 42:4, 42:23, 47:1, 49:18, 61:9, 64:19, 65:23, 65:25, 70:2, 76:5, 82:22, 83:10, 87:13, 87:17, 93:20, 96:8, 98:15, 99:2, 101:24, 105:9
**impossible** [1] - 50:20
**improperly** [1] - 120:2
**IN** [2] - 1:1, 124:14
**includes** [1] - 11:2
**including** [4] - 3:18, 5:3, 54:2, 119:6
**inconveniences** [1] - 87:8
**incorrectly** [1] - 88:5
**increase** [1] - 16:20
**incredibly** [1] - 49:18
**indicated** [4] - 10:23, 25:10, 119:8, 124:6
**Indicating** [3] - 74:21, 78:11, 96:3
**indication** [1] - 119:17
**indictment** [3] - 46:9, 46:17, 46:22
**individual** [2] - 117:21, 117:22
**infinitive** [1] - 8:24
**influence** [6] - 27:21,

28:2, 32:7, 33:16, 34:18, 44:15
**influenced** [1] - 44:22
**informant** [1] - 69:16
**information** [2] - 101:16, 101:25
**inherent** [2] - 49:7, 50:7
**injuries** [1] - 36:21
**injury** [1] - 117:19
**innocence** [6] - 47:3, 48:14, 92:12, 92:16, 92:19, 103:5
**innocent** [22] - 47:5, 47:10, 47:11, 47:21, 47:22, 47:23, 48:6, 48:7, 52:12, 72:21, 72:22, 72:23, 92:12, 92:21, 93:16, 94:9, 94:12, 94:16, 95:5, 95:10, 95:17
**inside** [2] - 2:25, 66:5, 66:11
**instance** [1] - 56:1
**instead** [4] - 8:8, 18:15, 21:19, 61:25
**instruct** [3] - 76:2, 80:7, 122:23
**instructed** [2] - 59:3, 71:2
**instructions** [3] - 45:13, 85:6, 120:9
**instructs** [1] - 60:4
**intended** [1] - 58:6
**intent** [1] - 85:1
**intentionally** [5] - 13:15, 24:22, 24:7, 24:12, 24:17
**interest** [1] - 8:9
**interested** [1] - 43:9
**interesting** [1] - 68:13
**interference** [1] - 117:18
**interviewed** [2] - 100:11, 100:13
**intox** [1] - 118:2
**introduce** [1] - 5:4, 6:15, 25:14, 28:17
**introducing** [1] - 2:11
**investigator** [1] - 27:8
**invited** [1] - 48:22
**involved** [5] - 30:4, 31:7, 32:3, 33:15, 80:5
**involves** [3] - 53:2, 58:17, 58:18
**involving** [2] - 65:16, 79:17
**IOWA** [1] - 1:1
**Iowa** [15] - 1:10, 1:17,

*Sarah J. Dittmer, CSR, RPR*
*(888) 388-2723*
Sarah J. Dittmer, CSR, RPR          reportingwhereur@yahoo.com
Case 2:18-cr-01023-CJW-MAR Document 123 Filed 12/17/19 Page 38 of 46

1:20, 1:23, 2:5, 3:12,
3:16, 3:20, 23:7,
25:21, 25:23, 59:11,
80:20, 124:3
**IRS** [1] - 34:6
**Islands** [2] - 3:19, 3:20
**issue** [1] - 10:1
**issues** [2] - 7:13,
22:21

### J

**Jack** [2] - 25:13, 25:19
**Jacob** [1] - 26:9
**Jacobsen** [1] - 28:25
**Jacqueline** [1] -
120:24
**Jeremy** [1] - 29:18
**jerk** [2] - 97:5, 97:13
**job** [5] - 5:7, 6:5,
12:22, 28:23, 88:11
**jobs** [3] - 6:5, 6:6,
13:22
**John** [3] - 1:16, 28:24,
29:15
**Johnson** [1] - 28:24
**judge** [19] - 3:23, 3:24,
4:3, 4:4, 4:17, 4:22,
4:24, 6:14, 8:14,
32:24, 39:6, 39:10,
56:14, 56:25, 60:4,
79:21, 80:6, 87:21
**Judge** [20] - 1:13, 2:7,
4:4, 4:13, 58:4,
58:16, 58:19, 71:2,
71:11, 72:16, 72:19,
73:23, 76:1, 76:4,
80:1, 84:16, 87:6,
92:10, 92:13, 97:20
**judges** [7] - 3:22,
4:18, 4:21, 6:19,
22:23, 23:1, 56:7
**judgment** [7] - 7:2,
9:4, 16:22, 72:6,
72:8, 72:14, 121:10
**judicial** [1] - 20:25
**Julie** [1] - 121:1
**juries** [4] - 6:23, 7:12,
35:6, 39:24
**juror** [39] - 9:12, 9:13,
9:16, 9:24, 10:3,
10:11, 15:4, 15:6,
22:13, 27:20, 32:17,
37:15, 39:21, 40:11,
41:8, 42:5, 42:24,
43:21, 53:23, 56:14,
57:1, 57:5, 57:13,
57:20, 72:11, 76:16,
76:25, 86:18, 87:4,

106:11, 106:17,
115:12, 117:7,
119:3, 119:15,
119:19, 119:22,
120:2
**Juror** [13] - 107:11,
108:1, 108:7,
108:11, 109:9,
109:16, 110:10,
111:13, 112:1,
112:8, 112:15,
113:18, 117:13
**juror's** [1] - 119:18
**JURORS** [1] - 58:2
**Jurors** [1] - 123:4
**jurors** [46] - 2:18,
6:20, 7:18, 7:21, 8:3,
8:23, 11:6, 11:14,
11:17, 13:17, 14:6,
14:7, 14:19, 15:18,
20:2, 22:1, 22:18,
27:6, 29:22, 32:14,
33:10, 37:11, 38:10,
46:14, 48:3, 49:18,
50:4, 51:14, 52:9,
54:9, 56:20, 71:11,
72:3, 82:24, 83:16,
84:9, 87:9, 98:16,
105:11, 118:25,
120:16, 121:25,
122:18, 122:19,
122:20
**JURY** [1] - 86:25
**jury** [91] - 2:10, 2:13,
2:22, 3:4, 5:3, 5:12,
6:6, 6:7, 6:8, 6:10,
6:23, 7:15, 7:17,
8:15, 8:21, 9:23,
10:13, 11:13, 12:12,
13:4, 13:10, 13:17,
13:24, 13:25, 14:24,
15:3, 15:8, 16:17,
18:15, 21:8, 21:13,
22:8, 22:14, 22:25,
34:22, 35:13, 35:18,
36:3, 36:16, 37:2,
37:23, 40:2, 41:21,
43:6, 44:10, 46:10,
46:19, 46:21, 48:8,
51:15, 53:11, 55:10,
56:19, 57:23, 66:3,
67:11, 72:2, 73:18,
83:24, 84:22, 85:2,
85:3, 85:6, 85:10,
86:3, 86:4, 86:10,
86:16, 87:5, 87:13,
87:23, 89:1, 91:24,
94:23, 97:23, 98:19,
102:4, 104:8,
104:21, 104:22,

105:12, 105:15,
105:19, 106:8,
115:24, 120:4,
120:10, 121:2,
121:9, 121:17, 122:5
**Justice** [1] - 49:23
**justice** [9] - 7:11, 7:12,
14:4, 47:4, 50:1,
83:11, 87:14, 119:2
**Justin** [2] - 26:3,
29:19

### K

**Katie** [1] - 27:1
**keep** [8] - 15:11,
30:20, 30:23, 34:22,
41:11, 42:25, 43:13,
58:8
**keeping** [1] - 42:6
**keeps** [1] - 56:14
**Kelly** [2] - 4:20, 29:16
**Kevin** [1] - 26:23
**kidding** [2] - 12:5,
99:5
**kids** [1] - 12:20
**killing** [1] - 66:7
**kind** [27] - 4:6, 13:5,
13:8, 13:11, 16:25,
18:9, 48:1, 57:3,
67:24, 67:25, 69:21,
70:22, 75:12, 75:18,
77:11, 95:6, 95:13,
95:14, 96:15, 96:16,
96:20, 97:7, 97:8,
97:11, 97:13, 100:7,
104:2
**knee** [2] - 97:5, 97:13
**knee-jerk** [2] - 97:5,
97:13
**knowing** [12] - 27:18,
28:4, 34:15, 57:2,
59:7, 59:13, 59:14,
67:4, 67:15, 71:25,
103:11, 103:21
**knowingly** [4] - 24:2,
24:7, 24:12, 24:17
**knowledge** [2] - 8:10,
64:13
**known** [2] - 18:21,
117:3
**Koch** [3] - 111:20,
120:25, 122:14
**Kyndra** [1] - 1:19,
25:13, 25:21

### L

**ladies** [5] - 79:7,

82:17, 104:7,
120:12, 122:3
**Lady** [1] - 49:22
**Lammers** [36] - 1:16,
25:13, 25:14, 25:19,
27:5, 27:7, 27:9,
57:22, 84:11, 85:22,
87:22, 105:18,
106:3, 106:12,
107:6, 107:21,
108:8, 108:13,
108:21, 109:5,
109:14, 109:19,
110:6, 110:12,
111:2, 111:8,
111:21, 112:6,
112:10, 112:25,
113:13, 113:23,
114:6, 116:11, 121:2
**LAMMERS** [130] -
25:17, 26:16, 57:24,
58:3, 60:22, 61:2,
61:4, 61:7, 61:16,
61:18, 61:21, 61:25,
62:5, 62:7, 62:9,
62:14, 62:16, 62:21,
63:1, 63:4, 63:8,
63:14, 63:17, 63:20,
63:25, 64:8, 64:10,
64:15, 64:22, 65:1,
65:4, 65:7, 65:10,
65:14, 65:17, 65:20,
66:23, 67:7, 67:10,
67:21, 67:24, 68:4,
68:7, 68:10, 68:12,
68:16, 68:19, 68:24,
69:3, 69:14, 70:1,
70:3, 70:7, 70:10,
70:13, 73:16, 73:20,
73:22, 74:1, 74:4,
74:8, 74:16, 74:18,
74:20, 74:22, 74:25,
75:10, 75:14, 75:17,
75:22, 77:6, 77:22,
78:7, 78:12, 78:20,
79:3, 79:24, 80:6,
80:11, 80:13, 80:18,
80:24, 81:2, 81:5,
81:11, 81:14, 81:19,
81:24, 82:4, 82:7,
82:11, 82:13, 82:16,
84:13, 85:9, 85:13,
85:15, 85:23, 86:1,
105:21, 106:5,
106:14, 107:8,
107:23, 108:10,
108:15, 109:6,
109:15, 109:21,
110:7, 110:9,
110:14, 111:3,
111:10, 111:23,

112:7, 112:12,
113:1, 113:15,
113:24, 114:2,
114:8, 114:20,
114:24, 115:3,
115:6, 116:12,
117:22, 120:6, 121:3
**language** [1] - 52:1
**last** [5] - 10:2, 12:6,
19:1, 114:16, 115:12
**launch** [1] - 85:8
**Law** [2] - 1:22, 60:9
**law** [42] - 5:21, 5:24,
5:25, 7:16, 8:13,
30:1, 30:19, 31:7,
31:16, 32:25, 33:8,
33:15, 34:13, 34:14,
34:16, 43:8, 45:4,
45:16, 50:16, 51:17,
54:10, 54:11, 54:15,
55:4, 55:8, 55:12,
55:25, 56:10, 56:24,
59:2, 60:4, 69:9,
73:23, 76:2, 80:1,
81:7, 81:8, 92:22,
116:21, 122:23
**laws** [1] - 54:17
**lawyer** [3] - 5:22,
48:21, 88:14
**lawyers** [17] - 9:2,
10:15, 16:1, 21:10,
30:24, 33:25, 43:14,
56:18, 83:4, 83:9,
83:13, 83:18,
104:16, 105:17,
120:20, 121:11
**lead** [3] - 29:9, 75:7,
81:6
**learn** [4] - 9:1, 100:9,
100:14, 101:22
**learned** [1] - 100:2
**least** [3] - 55:4, 96:14,
96:20
**leave** [3] - 17:10, 84:1,
105:7
**leaves** [1] - 6:1
**left** [3] - 86:19, 96:1,
116:3
**legal** [1] - 117:1
**legalization** [2] - 59:4,
59:18
**legalize** [2] - 54:2,
54:6
**legalized** [7] - 54:5,
54:14, 54:24, 55:5,
59:7, 59:9, 59:24
**legitimate** [2] - 22:20,
23:8
**Leitzen** [2] - 25:24,
29:15

length [2] - 12:4, 16:20
lengthy [1] - 99:23
Leonard [1] - 3:24
level [3] - 75:20, 78:25, 79:4
levels [1] - 16:20
liar [1] - 92:4
Libertarian [1] - 58:21
license [2] - 77:10, 78:9
lid [5] - 66:4, 66:9, 66:10, 66:11
lie [5] - 90:12, 90:23, 91:9, 91:18, 91:25
lied [3] - 90:7, 90:9, 90:10
lies [2] - 89:22, 91:13
life [7] - 4:9, 32:16, 49:16, 64:20, 65:16, 73:9, 98:22
light [1] - 65:22
Lightfoot [1] - 26:3
Linda [1] - 4:13
line [3] - 76:12, 84:3, 84:4
Lisa [1] - 26:12
list [4] - 25:18, 29:10, 77:12, 78:16
listed [2] - 81:21, 117:14
listen [8] - 11:12, 11:23, 39:25, 53:12, 63:22, 69:11, 71:11, 103:22
Listen [1] - 67:1
listening [3] - 37:16, 38:11, 42:7
listens [1] - 56:15
literally [1] - 5:7
Litigation [2] - 26:6, 26:8
live [3] - 20:7, 37:12, 57:3
lived [2] - 14:7, 32:9
lives [2] - 70:17, 82:8
living [2] - 66:6, 82:2
Liz [1] - 26:18
Loan [1] - 81:17
local [1] - 32:5
logistics [1] - 12:4
Look [2] - 47:14, 64:1
look [14] - 32:18, 32:23, 33:1, 47:9, 47:21, 52:4, 67:25, 83:6, 87:24, 92:15, 96:19, 97:12, 103:7, 116:20
looking [4] - 29:13, 36:20, 58:25, 103:1

looks [2] - 31:2, 43:17
loss [1] - 19:17
lost [2] - 60:25, 61:15
love [1] - 53:17
loved [3] - 14:22, 22:21, 53:5
low [3] - 45:25, 46:6, 46:25
lower [1] - 45:20
Lown [7] - 81:17, 81:18, 81:19, 115:13, 115:14, 121:1, 122:15
LOWN [6] - 81:18, 81:20, 82:1, 82:6, 82:10, 82:12
luck [1] - 121:24
lunch [8] - 2:19, 12:13, 12:25, 85:6, 85:7, 120:9, 122:22, 122:23
Lundquist [5] - 1:19, 25:13, 25:15, 25:21, 27:7
lying [2] - 90:14, 92:8

## M

ma'am [2] - 73:7, 81:17
Maccan [1] - 109:17
Machande [1] - 109:17
magistrate [1] - 4:18
Mahoney [1] - 4:20
majority [1] - 49:2
malpractice [1] - 9:6
man [4] - 47:10, 47:23, 85:23, 115:25
Man [1] - 90:1
marijuana [3] - 54:3, 59:7, 59:15, 59:23
mark [1] - 15:11
Mark [2] - 4:19, 26:10
marriage [2] - 98:25, 99:2
married [4] - 99:6, 99:9, 99:16, 101:16
marshals [1] - 6:13
Marty [1] - 26:5
match [1] - 117:24
matches [1] - 33:6
material [1] - 98:8
math [1] - 99:12
matter [2] - 32:25, 124:5
matters [4] - 6:2, 15:22, 43:8, 50:2
McLaughlin [1] - 26:5
meal [1] - 101:3,

101:23
mean [16] - 45:9, 47:9, 65:22, 68:3, 68:5, 68:24, 69:24, 71:22, 71:25, 72:10, 88:24, 93:24, 95:7, 95:14, 100:18, 116:12
meaning [1] - 10:10
means [8] - 45:10, 60:22, 68:25, 72:25, 88:16, 88:21, 98:7, 124:9
meant [1] - 61:1
medical [4] - 9:6, 17:4, 22:20, 22:21
medication [1] - 18:10
meet [1] - 100:4
Megan [2] - 22:3, 121:1
member [1] - 31:6
members [1] - 30:17
memory [1] - 19:17
mental [1] - 18:1
mentally [1] - 32:17
mention [1] - 118:6
mentioned [2] - 76:5, 87:6
merits [1] - 8:20
method [1] - 75:18
Miami [1] - 5:22
Michael [9] - 1:6, 23:15, 23:20, 24:1, 24:6, 24:11, 24:16, 28:21, 29:19
microphone [19] - 5:15, 5:17, 16:11, 17:16, 22:4, 22:12, 35:1, 36:1, 37:19, 38:14, 40:4, 41:13, 42:10, 43:4, 44:18, 88:10, 92:18, 97:25, 102:9
microwave [2] - 13:5, 92:18
midafternoon [1] - 12:15
midmorning [1] - 12:14
might [23] - 8:3, 9:2, 15:5, 15:6, 28:1, 28:2, 29:14, 45:16, 45:19, 50:18, 50:19, 51:22, 52:6, 53:15, 53:16, 54:4, 69:21, 69:22, 72:10, 78:9, 83:14, 89:9, 92:2
migraine [1] - 19:1
migraines [1] - 19:1
Mikala [1] - 26:25
military [1] - 30:5

mind [11] - 41:11, 42:6, 42:25, 44:11, 44:16, 44:21, 44:23, 55:22, 56:9, 56:15, 56:16
minds [1] - 56:21
Minds [1] - 74:17
minor [1] - 18:4
minute [3] - 15:11, 25:18, 64:6
minutes [8] - 14:8, 19:20, 83:24, 84:18, 85:11, 85:18, 104:18, 104:24
miscounted [1] - 115:7
misdemeanor [2] - 117:18, 117:19
miss [1] - 43:5
missed [1] - 21:24
missing [1] - 86:17
mixture [4] - 23:21, 24:3, 24:9, 24:18
mobile [1] - 19:16
mom [1] - 96:2
moment [1] - 18:4
monetary [1] - 91:21
money [1] - 14:1
months [2] - 12:7, 14:21
Monty [1] - 48:23
Mooney [6] - 44:2, 44:4, 44:9, 44:22, 121:1, 122:15
MOONEY [3] - 44:3, 44:5, 44:16
Morfitt [1] - 26:6
Morling [3] - 54:21, 106:11, 106:15
MORLING [6] - 54:22, 54:25, 55:6, 55:13, 55:25, 56:3
morning [18] - 2:9, 2:14, 3:5, 10:21, 12:12, 12:14, 17:13, 19:13, 19:14, 25:19, 58:1, 58:2, 58:5, 82:18, 82:19, 86:12, 86:24, 86:25
Morris [4] - 64:6, 114:17, 114:21, 114:22
MORRIS [13] - 64:7, 64:9, 64:11, 64:21, 64:25, 65:3, 65:6, 65:9, 65:13, 65:15, 65:18, 66:22, 67:6
most [17] - 5:6, 6:14, 6:24, 7:13, 7:16, 9:2, 9:12, 9:18, 46:21,

47:16, 62:11, 75:15, 77:24, 80:4, 90:12, 102:3, 104:2
motivations [3] - 91:17, 91:25, 92:8
Mount [1] - 20:13
mouse [4] - 66:10, 66:12, 66:13, 66:16
move [6] - 5:25, 16:24, 17:1, 34:2, 36:1, 37:19
movement [1] - 54:1
movies [1] - 45:15
MR [282] - 16:13, 16:16, 17:1, 17:6, 22:10, 25:17, 26:16, 28:20, 40:8, 40:13, 40:17, 40:19, 40:22, 40:25, 41:6, 41:9, 54:22, 54:25, 55:6, 55:13, 55:25, 56:3, 57:24, 58:3, 60:22, 61:2, 61:4, 61:7, 61:16, 61:18, 61:21, 61:25, 62:5, 62:7, 62:9, 62:14, 62:16, 62:21, 63:1, 63:4, 63:8, 63:14, 63:17, 63:20, 63:25, 64:8, 64:10, 64:15, 64:22, 65:1, 65:4, 65:7, 65:10, 65:14, 65:17, 65:20, 66:23, 67:7, 67:10, 67:21, 67:24, 68:4, 68:7, 68:10, 68:12, 68:16, 68:19, 68:24, 69:3, 69:14, 70:1, 70:3, 70:7, 70:10, 70:13, 73:16, 73:20, 73:22, 74:1, 74:4, 74:8, 74:16, 74:18, 74:20, 74:22, 74:25, 75:10, 75:14, 75:17, 75:22, 77:5, 77:6, 77:20, 77:22, 78:6, 78:7, 78:11, 78:12, 78:19, 78:20, 79:2, 79:3, 79:24, 80:6, 80:11, 80:13, 80:18, 80:24, 81:2, 81:5, 81:11, 81:14, 81:19, 81:24, 82:4, 82:7, 82:11, 82:13, 82:16, 84:13, 84:16, 84:23, 85:9, 85:13, 85:15, 85:23, 86:1, 86:23, 87:1, 87:3, 88:3, 88:4, 88:6, 88:8, 88:17, 88:19, 88:22, 88:23, 89:6,

89:7, 89:13, 89:14,
89:19, 89:24, 90:9,
90:11, 90:19, 90:20,
90:21, 90:22, 90:24,
91:4, 91:5, 91:6,
91:8, 91:9, 91:11,
91:12, 91:14, 91:16,
91:19, 91:23, 92:3,
92:5, 92:23, 93:2,
93:5, 93:8, 93:13,
93:18, 94:5, 94:14,
94:17, 94:22, 94:25,
95:18, 95:21, 95:25,
96:4, 96:7, 96:17,
96:22, 96:24, 97:6,
97:15, 97:18, 98:6,
98:13, 98:24, 99:1,
99:5, 99:8, 99:12,
99:15, 99:18, 99:22,
99:25, 100:4, 100:6,
100:9, 100:13,
100:17, 100:22,
100:24, 101:2,
101:5, 101:8,
101:11, 101:14,
101:19, 102:13,
102:24, 103:10,
103:14, 103:18,
105:21, 105:23,
106:5, 106:7,
106:14, 106:20,
106:24, 107:1,
107:3, 107:8,
107:10, 107:16,
107:23, 107:25,
108:6, 108:10,
108:15, 108:17,
112:8, 109:6,
109:8, 109:13,
109:15, 109:21,
109:23, 110:5,
110:7, 110:9,
110:14, 110:17,
111:1, 111:3,
111:10, 111:12,
111:17, 111:23,
111:25, 112:5,
112:7, 112:12,
112:14, 112:20,
113:1, 113:3, 113:9,
113:15, 113:17,
113:22, 113:24,
114:2, 114:8,
114:14, 114:20,
114:24, 115:3,
115:5, 115:6,
115:20, 116:12,
117:9, 117:22,
118:22, 120:6,
120:7, 121:3, 121:5,
121:22

**MS** [223] - 17:17,
17:23, 17:25, 18:17,
18:19, 18:24, 19:7,
19:14, 20:1, 20:6,
20:8, 20:11, 20:13,
20:17, 20:21, 20:24,
21:6, 21:11, 21:15,
21:18, 21:20, 21:22,
22:16, 27:11, 27:13,
27:16, 27:24, 28:3,
28:6, 28:12, 31:17,
31:20, 32:8, 33:18,
33:20, 33:24, 35:9,
35:12, 35:14, 35:16,
35:19, 35:21, 35:24,
36:4, 36:7, 36:10,
36:13, 36:25, 37:3,
37:5, 37:8, 37:13,
37:16, 37:21, 37:24,
38:2, 38:4, 38:6,
38:8, 38:11, 38:20,
38:22, 38:24, 39:1,
39:5, 39:9, 39:15,
39:19, 39:22, 41:17,
41:19, 41:21, 41:24,
42:3, 42:6, 42:12,
42:15, 42:17, 42:19,
42:22, 42:25, 44:3,
44:5, 44:7, 44:16,
44:23, 60:21, 60:24,
61:3, 61:6, 61:11,
61:17, 61:20, 61:24,
62:4, 62:6, 62:8,
62:13, 62:15, 62:20,
62:25, 63:3, 63:7,
63:13, 63:16, 63:19,
63:24, 64:7, 64:9,
64:11, 64:21, 64:25,
65:3, 65:6, 65:9,
65:13, 65:15, 65:18,
66:22, 67:6, 67:9,
67:20, 67:23, 68:3,
68:5, 68:9, 68:11,
68:15, 68:18, 68:23,
69:2, 69:13, 69:24,
70:2, 70:6, 70:9,
70:12, 73:15, 73:19,
73:21, 73:25, 74:7,
74:15, 74:17, 74:19,
74:21, 74:24, 75:9,
75:13, 75:16, 75:21,
79:16, 80:3, 80:10,
80:12, 80:17, 80:19,
81:1, 81:4, 81:10,
81:12, 81:18, 81:20,
82:1, 82:6, 82:10,
82:12, 86:9, 86:13,
87:2, 90:8, 90:10,
92:20, 92:25, 93:4,
93:7, 93:10, 93:16,
94:4, 94:7, 94:15,

94:21, 94:24, 95:6,
95:20, 95:24, 96:3,
96:6, 96:9, 96:18,
96:23, 97:3, 97:7,
97:17, 98:5, 98:8,
98:23, 98:25, 99:4,
99:7, 99:10, 99:13,
99:17, 99:21, 99:24,
100:3, 100:5, 100:8,
100:11, 100:16,
100:19, 100:23,
101:1, 101:4, 101:7,
101:10, 101:13,
101:18, 102:12,
102:23, 103:4,
103:13, 103:17
**multiple** [1] - 9:9
**Murphy** [1] - 26:6
**must** [2] - 49:1, 98:19

## N

**name** [6] - 2:6, 25:19,
28:21, 79:21, 82:4,
120:17
**names** [18] - 27:8,
29:10, 29:11, 29:23,
30:24, 31:2, 43:15,
79:21, 79:25, 80:2,
80:4, 81:3, 81:21,
82:1, 120:15,
120:19, 120:21,
121:18
**Nancy** [1] - 44:5
**narrowed** [1] - 120:14
**National** - 30:6
**national** [3] - 49:20,
50:11, 51:1
**natural** [3] - 47:16,
49:10, 94:1
**nature** [1] - 94:11
**NCIS** [1] - 74:17
**necessarily** [5] -
27:24, 28:1, 62:1,
63:10, 102:21
**necessary** [1] - 11:12
**need** [30] - 8:8, 9:22,
10:7, 11:24, 12:25,
13:22, 14:5, 15:2,
16:24, 17:1, 17:15,
17:21, 23:9, 39:25,
54:5, 59:4, 69:18,
74:2, 76:2, 78:15,
80:14, 84:11, 89:21,
97:12, 102:3, 104:9,
104:12, 105:3,
105:19
**needed** [2] - 80:23,
121:16

**needs** [2] - 18:11, 95:5
**negative** [1] - 119:19
**Nelson** [3] - 29:17,
82:6, 82:8
**nephew** [1] - 31:17
**nervous** [2] - 52:3,
102:14
**neutral** [8] - 8:11,
116:16, 117:6,
118:5, 118:14,
118:15, 118:19,
119:14, 119:21,
119:24
**new** [2] - 22:13, 27:1
**New** [1] - 23:2
**newspaper** [1] - 25:6
**next** [32] - 15:4, 15:6,
36:2, 40:4, 63:9,
106:17, 106:25,
107:5, 107:13,
107:19, 108:2,
108:12, 108:20,
109:4, 109:10,
109:17, 110:1,
110:11, 110:22,
111:6, 111:14,
111:20, 112:2,
112:9, 112:16,
112:23, 113:6,
113:12, 113:19,
114:4, 114:11,
114:17
**Nikki** [2] - 115:13,
121:1
**nine** [1] - 79:19
**ninth** [1] - 113:11
**nobody** [2] - 116:1,
119:6
**noise** [1] - 15:16
**none** [1] - 43:22
**nonwhite** [1] - 115:24
**noon** [1] - 2:16
**normal** [1] - 116:7
**Norris** [4] - 110:11,
117:14, 119:7,
119:10
**north** [1] - 3:14
**Northern** [6] - 2:4,
3:11, 3:15, 3:20,
25:21, 25:23
**NORTHERN** [1] - 1:1
**Notary** [1] - 124:3
**note** [1] - 117:23
**noted** [3] - 77:23,
117:3, 117:16
**notes** [5] - 85:11,
85:18, 92:15, 124:8,
124:12
**nothing** [7] - 28:9,
49:17, 50:12, 51:22,

52:7, 82:14, 116:5
**notice** [2] - 48:16,
49:24
**November** [1] - 1:25
**now's** [1] - 79:11
**number** [9] - 3:22, 4:5,
4:8, 22:2, 22:3, 50:8,
59:11, 72:2, 77:25
**Number** [10] - 107:12,
109:9, 109:16,
110:10, 111:13,
112:1, 112:8,
112:15, 113:18,
117:14
**numbers** [1] - 104:9
**Nydle** [1] - 26:7

## O

**oath** [6] - 10:25, 11:1,
119:8, 122:18,
122:20
**objectively** [1] - 96:19
**obligated** [2] - 88:13,
89:4
**obligation** [2] -
115:18, 118:11
**obviously** [8] - 58:17,
63:20, 65:21, 65:24,
66:18, 85:16, 93:19,
101:11
**occasions** [1] - 40:9
**occurred** [1] - 67:13
**occurring** [1] - 62:1
**OF** [1] - 1:1
**offense** [3] - 45:8,
46:12, 52:8
**Office** [1] - 27:19
**office** [6] - 25:25,
26:19, 26:20, 28:23,
29:2, 29:7
**officer** [7] - 25:24,
30:3, 30:5, 31:18,
33:1, 104:23, 105:13
**officers** [10] - 6:3,
33:9, 34:13, 34:15,
34:16, 80:1, 80:4,
80:21, 80:25, 117:20
**often** [2] - 2:20, 22:24
**once** [2] - 4:7, 72:25
**one** [93] - 3:10, 3:23,
4:18, 4:19, 4:22, 5:2,
5:10, 5:21, 6:6, 6:24,
7:13, 9:24, 11:14,
11:16, 12:19, 18:2,
21:9, 22:21, 23:13,
23:23, 24:5, 24:10,
24:20, 31:1, 36:15,
36:18, 39:12, 40:9,

40:10, 40:25, 43:15,
44:1, 46:5, 48:10,
48:21, 49:23, 50:6,
51:18, 59:19, 60:10,
60:11, 66:23, 67:14,
67:18, 72:15, 74:2,
77:13, 82:1, 83:4,
83:13, 85:9, 86:16,
88:23, 91:15, 95:25,
99:1, 100:21, 102:7,
106:25, 107:5,
107:13, 107:19,
108:2, 108:12,
108:20, 109:4,
109:10, 109:17,
110:1, 110:11,
110:22, 111:6,
111:14, 111:20,
112:2, 112:9,
112:16, 112:23,
113:6, 113:12,
113:19, 114:4,
114:11, 114:17,
115:8, 115:12,
116:7, 116:22,
118:2, 119:1,
120:22, 121:13

**ones** [4] - 14:22, 53:5,
74:16, 105:6
**open** [10] - 6:8, 17:9,
19:9, 21:23, 41:11,
42:6, 42:25, 56:15,
66:9, 66:11
**opening** [2] - 85:8,
122:24
**opinion** [3] - 45:17,
59:2, 96:19
**opinions** [1] - 83:1
**opposite** [1] - 45:24
**option** [1] - 18:5
**order** [2] - 68:1, 84:4
**Order** [1] - 60:9
**ordered** [1] - 1:25
**organize** [2] - 85:11,
85:18
**origin** [3] - 49:20,
50:12, 51:1
**originally** [1] - 7:21
**Orville** [1] - 29:18
**otherwise** [1] - 55:3
**ought** [4] - 45:20,
54:13, 54:23, 56:22
**outside** [4] - 83:21,
84:3, 84:5
**overrule** [1] - 119:12
**overseas** [1] - 14:20
**own** [6] - 28:24, 44:11,
44:16, 44:20, 44:23,
52:11

# P

**pages** [1] - 124:11
**paid** [4] - 4:11, 4:15,
69:8, 69:16
**pain** [1] - 16:20
**panel** [6] - 37:10,
43:25, 79:4, 90:6,
90:14, 93:25
**Pape** [1] - 29:18
**papers** [1] - 45:16
**parents** [1] - 30:17
**park** [2] - 80:20, 81:6
**part** [3] - 30:6, 51:17,
118:24
**part-time** [2] - 30:6,
51:17
**parted** [1] - 14:21
**partial** [1] - 81:7
**participate** [1] - 76:17
**participating** [1] -
104:11
**particular** [9] - 9:17,
18:10, 72:11, 75:5,
89:11, 89:15,
103:23, 119:15,
120:2
**particularly** [2] - 76:5,
77:13
**parties** [11] - 6:15,
7:23, 10:9, 25:10,
36:20, 42:8, 83:4,
83:9, 83:18, 120:13,
122:24
**party** [5] - 48:23,
48:25, 49:4, 118:11,
118:18
**pass** [6] - 22:12, 40:4,
42:10, 43:3, 82:15,
104:5
**passes** [1] - 83:4
**past** [3] - 32:22, 34:10,
41:9
**Pat** [1] - 26:8
**patiently** [1] - 56:8
**Patrick** [2] - 5:21, 27:4
**pay** [3] - 4:9, 11:12,
13:23
**paying** [4] - 7:14,
11:18, 30:11, 42:7
**peace** [2] - 30:3,
117:20
**peer** [1] - 121:22
**people** [62] - 2:11, 5:4,
6:17, 7:1, 7:3, 7:21,
7:24, 7:25, 8:8, 8:18,
9:22, 9:23, 11:9,
14:6, 14:20, 15:22,
21:2, 25:16, 25:18,

28:18, 29:6, 29:10,
29:14, 29:23, 33:11,
33:15, 37:10, 39:24,
42:11, 48:2, 48:17,
49:5, 50:7, 50:19,
50:20, 51:6, 53:4,
53:5, 55:2, 59:14,
60:16, 62:11, 64:16,
66:19, 69:5, 69:17,
72:9, 76:15, 76:20,
76:21, 76:25, 77:24,
81:22, 90:23, 91:17,
92:20, 93:21, 99:1,
102:3, 121:11,
121:16, 121:18
**people's** [1] - 49:13
**per** [2] - 4:22, 4:24
**per-judge** [2] - 4:22,
4:24
**peremptory** [35] -
10:10, 10:16, 10:20,
85:3, 106:13,
106:19, 107:7,
107:14, 108:4,
108:8, 108:13,
108:21, 108:23,
109:5, 109:11,
109:19, 110:3,
110:13, 110:25,
111:9, 111:16,
111:22, 112:4,
112:11, 112:19,
112:25, 113:14,
113:21, 114:7,
114:13, 114:19,
114:25, 116:17,
117:7, 120:13
**perfect** [2] - 36:2,
72:11
**perfectly** [1] - 94:1
**perhaps** [1] - 45:22
**period** [3] - 16:22,
99:23, 104:13
**person** [21] - 5:10,
5:11, 9:5, 9:11, 9:12,
25:15, 46:11, 46:15,
48:25, 49:1, 51:25,
52:1, 77:8, 91:7,
91:10, 92:25, 98:9,
115:23, 115:24,
121:11
**person's** [1] - 91:25
**personal** [1] - 15:22
**personally** [1] - 121:9
**perspective** [1] -
58:21
**Pete** [1] - 26:2
**phosphorescent** [1] -
75:6
**phrase** [2] - 60:23,

98:3
**pick** [8] - 12:12, 59:14,
60:15, 76:11, 76:13,
90:16, 90:17, 121:23
**pig** [1] - 76:10
**pills** [1] - 19:23
**place** [4] - 11:1, 32:1,
124:6, 124:7
**placed** [2] - 87:8,
87:12
**places** [2] - 7:6, 13:21
**Plaintiff** [1] - 1:4
**plaintiff** [1] - 23:13
**plaintiff's** [1] - 115:1
**Plaintiff's** [1] - 111:4
**pleaded** [1] - 24:21
**point** [18] - 10:12,
10:21, 11:13, 22:24,
23:3, 60:10, 61:23,
68:13, 72:4, 73:12,
78:16, 78:17, 88:25,
104:8, 105:4,
110:17, 110:21,
119:6
**pointed** [2] - 63:11,
103:7
**Pointer** [1] - 29:21
**police** [5] - 25:24,
30:5, 31:17, 32:2,
80:21
**political** [2] - 49:8,
100:10
**portion** [1] - 87:23
**position** [4] - 73:6,
73:14, 95:4, 96:11
**positive** [1] - 34:12
**possible** [1] - 46:1
**potentially** [3] - 55:14,
62:2, 69:8
**practice** [7] - 5:25,
25:16, 25:18, 26:1,
28:18, 28:24, 29:1
**practician** [1] - 28:22
**practicing** [2] - 5:22,
87:10
**precise** [1] - 45:5
**predict** [1] - 63:15
**preemptory** [1] -
113:8
**preponderance** [2] -
39:8, 45:22
**presented** [4] - 32:19,
52:19, 52:20
**presents** [1] - 94:25
**presides** [1] - 3:25
**presiding** [1] - 2:7
**presume** [5] - 83:15,
93:15, 93:16, 94:8,
103:5
**presumed** [5] - 47:5,

47:21, 48:7, 72:21,
72:22
**presumption** [5] -
47:3, 48:14, 92:12,
92:16, 92:18
**pretextual** [2] -
118:19, 119:25
**pretty** [4] - 66:21,
88:15, 99:23, 100:11
**prevalent** [1] - 53:3,
58:19
**prevent** [1] - 77:1
**previously** [1] - 34:22
**prima** [2] - 115:18,
118:11
**print** [1] - 124:8
**private** [3] - 15:17,
16:5, 30:8
**probable** [2] - 46:15,
46:24
**problems** [1] - 54:6
**procedural** [1] - 60:10
**procedure** [1] - 118:10
**procedures** [1] - 41:3
**proceed** [4] - 86:22,
98:12, 106:1, 106:4
**proceeding** [1] - 43:10
**proceedings** [2] - 1:9,
124:7
**process** [22] - 2:13,
2:15, 3:4, 5:13, 6:23,
7:10, 8:15, 8:21,
9:20, 10:13, 10:21,
10:23, 11:13, 11:18,
12:1, 12:11, 35:23,
37:12, 46:18, 72:5,
104:8, 104:25
**produce** [1] - 91:10
**professional** [1] -
40:12
**promised** [1] - 82:19
**pronounce** [1] - 90:17
**pronounced** [1] - 88:5
**pronouncing** [1] -
102:11
**proof** [21] - 24:24,
39:7, 45:2, 45:8,
45:9, 45:10, 45:18,
45:20, 45:21, 45:25,
46:4, 46:20, 46:23,
47:6, 71:9, 71:19,
72:20, 77:18, 97:21,
98:3
**propose** [2] - 101:8,
101:9
**proposed** [1] - 101:10
**prosecutors** [1] -
25:12
**prospective** [9] - 8:23,
11:6, 84:9, 86:4,

105:11, 105:15,
120:10, 121:25,
122:19
**PROSPECTIVE** [2] -
58:2, 86:25
**protect** [1] - 91:20
**prove** [19] - 45:7,
45:22, 45:25, 47:6,
47:12, 47:24, 50:13,
53:13, 53:19, 71:23,
74:5, 75:17, 75:19,
77:3, 78:20, 78:25,
79:3, 94:12, 95:5
**proved** [5] - 55:19,
55:20, 73:2, 73:3,
95:16
**proven** [4] - 48:9,
92:21, 94:16, 95:10
**proves** [1] - 52:17
**provide** [2] - 77:18,
116:2
**provided** [2] - 117:12,
118:8
**pry** [1] - 58:12
**psychotic** [1] - 18:2
**Public** [1] - 124:3
**public** [3] - 16:2, 52:2,
118:2
**Puerto** [1] - 3:18
**pull** [2] - 11:16, 104:17
**pulled** [5] - 8:17, 9:21,
11:21, 30:13, 46:13
**purposes** [1] - 115:21
**put** [14] - 31:3, 34:25,
60:24, 61:18, 63:23,
66:10, 73:13, 73:22,
77:12, 85:2, 89:23,
98:18, 104:15
**putting** [1] - 50:24

## Q

**qualm** [1] - 79:13
**questioner** [2] - 5:19,
5:20
**questioning** [1] -
15:24
**questionnaire** [7] -
116:6, 116:14,
116:18, 116:20,
117:25, 118:1,
119:20
**questionnaires** [2] -
58:14, 87:20
**questions** [33] - 8:22,
10:14, 10:15, 10:24,
11:8, 11:9, 11:19,
11:23, 11:25, 30:12,
30:23, 30:25, 34:1,

35:4, 35:5, 43:1,
57:9, 58:11, 59:20,
60:18, 86:20, 86:21,
87:21, 87:22, 87:25,
89:2, 89:3, 89:8,
89:15, 89:20, 104:3,
116:1, 122:19
**quick** [2] - 76:7, 104:2
**quickly** [1] - 3:3
**quite** [4] - 6:18, 6:23,
7:9, 18:14
**quorum** [1] - 84:3
**quote** [1] - 119:5

## R

**race** [19] - 49:2, 49:19,
50:2, 50:7, 50:11,
50:25, 71:22,
116:16, 116:19,
117:5, 117:6, 118:5,
118:14, 118:15,
118:19, 119:14,
119:18, 119:21,
119:24
**race-neutral** [9] -
116:16, 117:6,
118:5, 118:14,
118:15, 118:19,
119:14, 119:21,
119:24
**raise** [23] - 11:5, 23:8,
27:9, 29:8, 29:24,
30:9, 30:20, 31:10,
34:11, 34:20, 43:21,
46:6, 48:15, 51:3,
52:25, 53:24, 54:19,
57:5, 57:14, 57:20,
79:13, 119:22, 123:2
**raised** [5] - 31:4,
31:13, 35:5, 43:22,
119:7
**raises** [1] - 23:3
**randomly** [4] - 7:1,
8:16, 11:15, 46:13
**ranger** [2] - 80:20,
81:6
**RAPIDS** [1] - 1:2
**Rapids** [13] - 1:10,
1:20, 1:23, 4:1, 4:19,
25:25, 26:18, 31:18,
32:2, 81:23, 81:25,
82:2
**rash** [1] - 76:15
**re** [1] - 122:4
**re-seat** [1] - 122:4
**reach** [11] - 4:7, 10:12,
35:13, 37:1, 38:3,
38:23, 40:15, 40:24,

41:20, 42:18, 65:12
**reaction** [6] - 10:3,
47:17, 47:19, 97:5,
97:7, 97:13
**read** [14] - 23:16,
26:13, 27:9, 29:9,
29:23, 45:16, 52:16,
79:21, 80:1, 85:5,
120:9, 120:14,
120:17, 120:20
**Reade** [1] - 4:13
**readily** [1] - 14:11
**reading** [1] - 120:19
**ready** [7] - 6:9, 84:21,
85:20, 105:25,
106:3, 106:7, 120:4
**real** [2] - 89:20, 94:8
**realized** [3] - 48:25,
49:5, 49:10
**realizing** [1] - 117:5
**really** [30] - 7:9, 8:8,
8:10, 13:20, 14:5,
16:17, 18:5, 52:3,
59:3, 70:24, 75:1,
75:11, 87:14, 88:12,
89:2, 91:17, 92:7,
94:19, 98:13, 98:20,
98:22, 100:20,
101:17, 102:4,
102:14, 104:12
**reason** [11] - 10:11,
12:18, 25:2, 49:25,
59:24, 91:21, 93:19,
101:19, 119:21,
119:25
**reasonable** [21] - 45:3,
45:6, 45:8, 45:10,
46:2, 46:24, 47:7,
47:13, 47:25, 48:11,
50:14, 55:22, 71:21,
73:4, 74:5, 75:25,
76:1, 76:3, 76:6,
78:17, 98:3
**reasons** [15] - 5:2,
12:18, 23:9, 51:21,
52:6, 61:14, 87:14,
116:8, 116:16,
117:6, 118:5,
118:14, 118:16,
118:19, 119:14
**receive** [1] - 68:21
**recent** [1] - 26:17
**recently** [1] - 17:17
**recess** [1] - 84:7
**recessed** [2] - 84:19,
106:2
**recognize** [10] - 50:6,
50:8, 55:1, 55:5,
79:20, 79:22, 79:25,
80:2, 80:5, 81:2

**recognizing** [1] - 48:6
**recollection** [1] -
115:23
**record** [6] - 4:24,
105:19, 110:20,
115:19, 115:21,
117:12
**reduce** [1] - 104:9
**reduced** [1] - 124:8
**referendum** [1] - 53:9
**refrigerator** [1] - 13:4
**regard** [2] - 59:21,
76:3
**regarding** [2] - 46:4,
105:19
**regards** [7] - 58:20,
58:22, 59:2, 60:18,
71:3, 119:1
**regular** [2] - 16:25,
60:11
**regulate** [1] - 54:7
**Reinert** [1] - 26:8
**related** [2] - 31:21,
43:25
**relatively** [1] - 87:24
**relax** [1] - 104:24
**religious** [4] - 49:20,
50:3, 50:11, 51:1
**rely** [3] - 61:9, 69:18,
75:11
**remain** [11] - 47:23,
51:7, 51:11, 51:19,
52:15, 52:24, 120:18
**remains** [1] - 47:11
**remarkable** [1] - 7:9
**remarkably** [2] -
34:12, 34:14
**remember** [4] - 19:20,
39:6, 39:10, 39:14
**remove** [2] - 10:10,
10:16
**rephrase** [1] - 95:2
**replace** [3] - 11:17,
11:21, 22:1
**replacing** [1] - 105:5
**reported** [1] - 25:5
**reporter** [2] - 5:6,
16:14
**Reporter** [3] - 124:3,
124:5, 124:21
**REPORTER** [3] -
17:14, 17:19, 74:2
**represented** [2] -
25:12, 28:15
**representing** [1] -
55:2
**require** [1] - 88:14
**requires** [4] - 46:11,
101:21, 101:23,
101:24

**reside** [1] - 81:25
**residing** [1] - 81:22
**respect** [2] - 86:6,
88:20
**respond** [2] - 83:7,
117:10
**rest** [7] - 4:9, 15:18,
15:24, 37:10, 40:2,
110:20, 121:18
**result** [1] - 91:10
**results** [2] - 62:2,
62:22
**resumed** [2] - 84:19,
106:2
**retire** [1] - 4:8
**retired** [1] - 14:9
**returned** [1] - 46:10
**revealed** [1] - 90:25
**review** [1] - 116:18
**Rich** [1] - 26:6
**Rico** [1] - 3:18
**ridiculous** [1] - 62:11
**right-hand** [4] -
106:11, 111:7,
112:17, 114:5
**rights** [1] - 14:14
**rise** [5] - 84:8, 84:20,
86:9, 105:14, 121:21
**Road** [1] - 20:13
**road** [3] - 59:11,
59:17, 64:23
**Robert** [1] - 22:2
**Roberts** [1] - 4:19
**rock** [2] - 64:23, 65:2
**Rogers** [3] - 110:11,
115:21, 117:14
**ROGERS** [1] - 121:22
**Rogers'** [1] - 117:5
**role** [3] - 7:20, 72:7
**room** [9] - 2:23, 6:8,
6:17, 13:4, 48:8,
51:16, 55:10,
105:12, 117:4
**rooms** [1] - 104:22
**root** [1] - 71:17
**roughly** [1] - 3:14
**row** [7] - 35:2, 110:23,
112:16, 114:4,
115:13, 122:13
**rude** [1] - 83:8
**rules** [1] - 88:13
**ruling** [1] - 120:3
**run** [1] - 83:18
**running** [1] - 4:24
**Russia** [1] - 7:6
**Ryan** [1] - 120:23

Case 2:18-cr-01023-CJW-MAR Document 123 Filed 12/17/19 Page 43 of 46

## S

**sacrifice** [3] - 14:2, 14:23
**Sade** [1] - 29:20
**Sandra** [1] - 120:25
**Sarah** [2] - 5:5, 124:20
**sat** [1] - 102:3
**satellite** [3] - 75:3, 75:5, 75:19
**saw** [2] - 62:22, 67:2
**scales** [2] - 39:13, 49:23
**scared** [1] - 64:14
**scenario** [2] - 66:7, 101:20
**scene** [1] - 75:7
**schedule** [6] - 13:11, 23:22, 24:5, 24:10, 24:14, 24:20
**scheduled** [2] - 16:18, 23:24
**Scholtes** [1] - 29:20
**school** [3] - 12:20, 12:21, 51:17
**school-aged** [1] - 12:20
**Schunk** [1] - 26:9
**scientific** [1] - 75:2
**SE** [2] - 1:20, 1:22
**sealed** [1] - 66:3
**Sean** [2] - 26:2, 120:24
**seat** [7] - 22:2, 22:3, 121:7, 122:4, 122:10, 122:11, 122:12
**seated** [8] - 2:2, 76:12, 84:10, 86:14, 105:16, 120:11, 122:1, 122:5
**second** [14] - 16:9, 52:1, 56:17, 64:5, 69:15, 74:11, 78:23, 83:25, 106:23, 107:17, 110:16, 110:23, 112:16, 118:3
**Second** [1] - 1:22
**seconds** [1] - 66:11
**section** [2] - 14:5, 14:10
**security** [5] - 6:3, 30:7, 104:23, 105:13
**see** [41] - 6:11, 8:25, 9:21, 15:10, 25:3, 25:9, 29:8, 29:24, 30:13, 33:6, 34:11, 34:20, 43:6, 46:7,

47:10, 47:22, 48:15, 49:22, 51:3, 53:1, 53:12, 53:25, 57:6, 57:21, 61:4, 62:2, 62:9, 62:11, 62:18, 62:21, 62:23, 63:6, 65:2, 66:18, 83:12, 84:18, 90:4, 90:14, 109:18
**seeing** [3] - 2:25, 90:12, 97:19
**select** [1] - 121:17
**selected** [11] - 2:17, 6:20, 7:1, 27:20, 52:9, 82:24, 94:23, 120:15, 121:2, 121:8, 121:25
**selecting** [1] - 8:17
**selection** [17] - 2:10, 2:13, 2:23, 3:4, 5:3, 5:12, 6:23, 8:15, 8:21, 10:13, 11:13, 22:25, 86:16, 87:23, 97:23, 104:8, 105:19
**self** [1] - 13:24
**self-employed** [1] - 13:24
**semiretired** [1] - 4:6
**Senior** [1] - 26:7
**senior** [5] - 4:3, 4:10, 4:13, 4:16, 26:6
**sense** [1] - 89:12
**separate** [1] - 40:8
**separating** [1] - 103:20
**sequester** [1] - 19:25
**sequestered** [1] - 19:23
**series** [1] - 35:4
**serious** [3] - 34:5, 34:10, 117:18
**seriously** [1] - 65:24
**serve** [22] - 2:17, 9:23, 14:7, 14:18, 14:24, 16:17, 22:19, 23:7, 23:10, 35:17, 37:6, 38:7, 39:3, 39:24, 40:20, 42:1, 42:20, 50:4, 54:9, 87:9, 120:16, 121:8
**served** [9] - 4:5, 34:22, 35:6, 36:3, 37:11, 43:5, 43:7, 43:11, 43:19
**service** [4] - 13:25, 41:1, 105:10, 121:16
**services** [1] - 105:3
**serving** [11] - 13:9, 13:24, 14:6, 14:20, 14:22, 15:8, 18:15,

22:7, 22:14, 46:14, 57:4
**set** [11] - 28:9, 32:4, 32:14, 32:17, 33:12, 50:8, 50:20, 52:10, 53:18, 103:23, 124:14
**setting** [2] - 30:7, 50:23
**settled** [1] - 41:4
**settlement** [1] - 41:3
**Seventh** [1] - 1:20
**seventh** [2] - 99:14, 112:22
**several** [3] - 4:23, 87:21, 87:22
**severe** [6] - 13:12, 15:5, 15:8, 18:1, 22:8, 22:14
**shake** [1] - 70:23
**Shannon** [1] - 29:20
**share** [2] - 28:23, 29:2
**shares** [1] - 29:7
**Shawn** [1] - 26:24
**sheriff** [1] - 18:8
**Sherrill** [1] - 80:20
**shifts** [1] - 118:17
**short** [4] - 12:8, 19:17, 58:9, 102:7
**short-term** [1] - 19:17
**Shorthand** [2] - 124:2, 124:5, 124:21
**shorthand** [3] - 124:7, 124:8, 124:12
**show** [13] - 13:13, 15:7, 25:7, 29:25, 34:21, 60:8, 60:13, 66:14, 69:19, 70:25, 74:11, 79:5, 90:7
**showed** [1] - 48:24
**showing** [1] - 98:9
**shows** [5] - 45:15, 60:10, 60:12, 74:11
**siblings** [3] - 30:17, 95:23, 95:25
**sic** [4] - 29:19, 108:2, 112:9, 114:17
**sic]** [2] - 23:15, 88:2
**sick** [1] - 9:25
**side** [13] - 8:10, 15:15, 15:18, 36:15, 36:19, 39:12, 39:13, 71:7, 111:7, 112:17, 114:5, 115:13
**sidebar** [7] - 15:14, 16:3, 16:4, 16:7, 17:12, 19:12, 39:23
**sides** [8] - 27:22, 31:9, 38:12, 40:1, 56:11, 56:23, 69:25, 79:11

**sight** [1] - 19:18
**silent** [5] - 51:7, 51:11, 51:19, 52:15, 52:25
**simply** [6] - 24:25, 46:9, 46:17, 46:24, 49:9, 55:11
**single** [1] - 77:8
**Sioux** [6] - 1:17, 3:25, 4:2, 4:19, 26:13, 26:20
**sit** [17] - 2:23, 7:2, 9:12, 16:19, 33:12, 35:23, 67:11, 72:6, 72:8, 72:13, 72:18, 86:5, 86:7, 94:22, 95:1, 103:10, 119:3
**sits** [3] - 72:22, 73:18, 92:11
**sitting** [11] - 8:3, 11:3, 11:14, 15:6, 76:21, 90:3, 93:9, 93:14, 93:22, 96:5, 104:13
**six** [2] - 5:23, 19:1
**six-day** [1] - 19:1
**sixth** [3] - 111:19, 115:2, 115:6
**skeptical** [1] - 77:13
**skilled** [1] - 5:9
**skin** [3] - 49:6, 49:9, 49:14
**slash** [1] - 100:1
**Slight** [1] - 29:19
**slightly** [1] - 39:11
**small** [1] - 3:21
**Smedley** [4] - 22:2, 22:5, 22:7, 112:17
**SMEDLEY** [1] - 22:10
**sneak** [2] - 76:15, 76:25
**social** [1] - 83:19
**society** [4] - 53:3, 54:1, 58:19, 59:5
**sole** [1] - 28:22
**solution** [2] - 74:24, 74:25
**solve** [1] - 54:6
**someone** [9] - 64:12, 72:6, 72:14, 72:17, 73:8, 77:20, 77:21, 79:19, 83:12
**sometime** [1] - 6:1
**sometimes** [3] - 3:9, 12:7, 14:21, 15:21, 48:2, 51:18, 77:16, 80:22, 89:1, 89:19, 91:9, 91:17, 93:20, 121:12
**son** [1] - 32:9
**soon** [3] - 84:25, 122:6, 122:21

**sophisticated** [1] - 75:1
**sorry** [18] - 17:23, 26:16, 36:2, 44:7, 72:4, 72:5, 88:6, 92:14, 107:2, 107:4, 108:3, 108:7, 108:22, 110:1, 110:7, 112:24, 114:22, 118:6
**Sorry** [2] - 73:5, 80:19
**sort** [28] - 19:24, 29:1, 60:9, 60:15, 61:7, 61:22, 62:11, 64:16, 73:7, 75:1, 75:2, 75:3, 75:6, 75:7, 75:10, 89:11, 93:23, 94:13, 95:12, 96:16, 97:4, 97:8, 97:20, 100:16, 100:17, 102:7, 102:25, 116:2
**sound** [1] - 61:8
**sounds** [2] - 21:20, 82:2
**space** [3] - 28:23, 29:2, 29:7
**spaced** [1] - 13:8
**span** [1] - 99:19
**speaking** [1] - 52:2
**Special** [2] - 26:17, 27:3
**specific** [4] - 53:11, 53:13, 58:11
**speculate** [1] - 52:19
**speech** [1] - 51:25
**speed** [1] - 11:18
**speeds** [1] - 11:25
**Spencer** [1] - 120:23
**spillover** [1] - 60:1
**sports** [3] - 100:15, 100:20, 100:25
**spot** [2] - 60:25, 61:19
**spouse** [1] - 100:2
**stand** [3] - 32:20, 86:6, 120:18
**standard** [6] - 46:25, 57:4, 71:21, 76:6, 116:15
**standards** [1] - 39:17
**standing** [1] - 120:18
**stands** [1] - 96:25
**start** [12] - 2:10, 2:15, 2:18, 16:6, 38:16, 48:5, 51:20, 52:3, 74:3, 88:1, 106:10, 122:24
**started** [2] - 27:2, 56:21
**starting** [2] - 27:2, 95:4

Case 2:18-cr-01023-CJW-MAR Document 123 Filed 12/17/19 Page 44 of 46

**state** [10] - 3:13, 35:9, 37:24, 38:20, 41:17, 42:15, 55:22, 59:11, 96:20, 118:23
**State** [12] - 2:20, 3:8, 20:25, 35:8, 36:5, 37:23, 38:19, 40:6, 40:9, 41:15, 42:14, 124:3
**statement** [3] - 23:16, 24:23
**statements** [2] - 85:8, 122:25
**STATES** [1] - 1:1
**states** [1] - 59:8
**States** [25] - 1:3, 2:4, 2:7, 3:7, 23:14, 25:11, 25:12, 25:20, 25:22, 26:1, 26:10, 26:11, 26:12, 26:21, 26:22, 26:23, 26:24, 26:25, 27:3, 27:4, 46:10, 51:5, 55:3, 71:14, 79:10
**stating** [1] - 75:10
**status** [3] - 4:6, 4:10, 4:14
**stays** [1] - 66:9
**Steenholdt** [1] - 26:25
**Stefen** [1] - 120:24
**Stelken** [1] - 76:12, 76:14, 76:24, 77:4, 77:15, 78:18, 110:2, 110:7, 110:8, 120:24, 122:12
**STELKEN** [6] - 77:5, 77:20, 78:6, 78:11, 78:19, 79:2
**step** [2] - 97:11, 104:21
**Stephenson** [4] - 80:16, 111:6, 120:25, 122:12
**STEPHENSON** [6] - 80:17, 80:19, 81:1, 81:4, 81:10, 81:12
**stepping** [1] - 117:4
**Steve** [1] - 29:16
**Stevens** [2] - 23:15, 25:11
**Stevenson** [29] - 1:6, 23:20, 24:1, 24:6, 24:11, 24:16, 25:9, 28:15, 28:22, 46:8, 46:19, 47:2, 47:10, 47:15, 47:22, 48:6, 48:13, 48:16, 51:10, 52:13, 52:23, 53:10, 53:20, 87:16, 87:17, 88:12, 92:11, 93:15,

95:5
**Stevenson's** [4] - 50:11, 50:25, 101:22, 102:16
**stiff** [1] - 17:2
**still** [5] - 4:15, 17:19, 55:23, 67:4, 119:8
**stop** [1] - 76:19
**stories** [2] - 2:22, 31:20
**Strand** [2] - 3:24, 4:4
**Street** [2] - 1:17, 1:22
**stress** [2] - 18:25, 19:2
**strictly** [1] - 103:23
**strike** [35] - 105:6, 106:13, 106:19, 106:21, 107:7, 107:15, 107:22, 108:5, 108:9, 108:14, 108:22, 108:24, 109:12, 109:20, 110:4, 110:13, 110:25, 111:9, 111:16, 111:22, 112:4, 112:11, 112:19, 112:25, 113:8, 113:21, 114:7, 114:13, 114:16, 114:19, 114:25, 115:8, 118:5, 118:14, 121:11
**strikes** [7] - 10:10, 10:16, 85:3, 85:21, 104:16, 120:13, 121:13
**striking** [2] - 117:6, 119:15
**stroke** [1] - 19:15
**strong** [4] - 54:4, 55:10, 91:17, 118:25
**strongly** [1] - 54:17
**struck** [5] - 21:9, 116:6, 116:13, 119:10, 120:2
**Studebaker** [3] - 102:9, 102:13, 113:19
**STUDEBAKER** [5] - 102:12, 102:23, 103:4, 103:13, 103:17
**students** [1] - 51:20
**stuff** [1] - 103:3
**submitted** [1] - 12:9
**substance** [9] - 23:21, 23:23, 23:25, 24:4, 24:5, 24:9, 24:10, 24:15, 24:19
**substances** [4] -

24:20, 60:2, 60:5, 60:6
**succeeding** [2] - 12:16, 13:1
**sued** [2] - 9:7, 9:9
**suffered** [1] - 36:21
**suggest** [1] - 119:23
**suggestion** [2] - 61:5, 78:8
**suicidal** [1] - 18:3
**Suite** [2] - 1:17, 1:22
**suits** [1] - 6:11
**Sulzner** [1] - 17:11
**SULZNER** [7] - 17:17, 17:23, 17:25, 18:17, 18:19, 18:24, 19:7
**summer** [1] - 6:1
**super** [1] - 73:9
**supervision** [1] - 124:9
**supply** [1] - 78:7
**support** [1] - 40:2
**suppose** [2] - 29:17, 85:12
**supposed** [3] - 50:1, 94:9, 95:8
**surgeon** [1] - 9:8
**surgery** [3] - 9:8, 9:10, 16:18
**surprise** [2] - 48:22, 75:14
**surrounding** [2] - 66:20, 71:4
**swear** [1] - 122:6
**sweating** [1] - 52:3
**switch** [1] - 34:24
**sword** [1] - 49:24
**sworn** [3] - 11:6, 30:3, 123:4
**sympathetic** [1] - 13:19
**system** [14] - 7:11, 7:12, 7:15, 7:17, 14:4, 14:12, 30:4, 46:12, 47:4, 79:18, 87:13, 96:12, 117:1, 119:2

## T

**table** [1] - 25:15
**talks** [1] - 118:1
**Tamera** [1] - 120:24
**tap** [1] - 75:5
**taxes** [1] - 7:14
**TAYLOR** [7] - 35:9, 35:12, 35:14, 35:16, 35:19, 35:21, 35:24
**Taylor** [1] - 35:2, 35:3,

114:11
**teach** [1] - 51:17
**team** [1] - 100:25
**technology** [2] - 75:8, 75:12
**tendencies** [1] - 18:4
**term** [1] - 19:17
**terms** [1] - 45:5
**test** [1] - 75:2
**testify** [7] - 8:4, 29:11, 51:12, 51:13, 51:22, 52:7, 52:15
**testifying** [2] - 33:3, 34:16
**testimony** [5] - 33:1, 69:12, 80:7, 80:8
**testing** [1] - 57:25
**THE** [215] - 1:1, 1:1, 2:2, 11:5, 11:7, 16:8, 16:14, 16:24, 17:2, 17:8, 17:10, 17:13, 17:15, 17:21, 17:24, 18:13, 18:18, 18:23, 19:5, 19:8, 19:10, 19:13, 19:25, 20:2, 20:7, 20:9, 20:12, 20:14, 20:20, 20:23, 21:4, 21:7, 21:12, 21:16, 21:19, 21:21, 21:24, 22:2, 22:4, 22:6, 22:7, 22:11, 22:17, 26:15, 27:5, 27:12, 27:14, 27:17, 27:25, 28:5, 28:7, 28:13, 29:3, 31:19, 31:24, 32:13, 33:19, 33:22, 33:25, 35:10, 35:13, 35:15, 35:17, 35:20, 35:22, 35:25, 36:5, 36:8, 36:11, 36:14, 37:1, 37:4, 37:6, 37:9, 37:14, 37:18, 37:22, 37:25, 38:3, 38:5, 38:7, 38:9, 38:13, 38:21, 38:23, 38:25, 39:3, 39:6, 39:10, 39:16, 39:20, 40:3, 40:11, 40:14, 40:18, 40:20, 40:23, 41:4, 41:7, 41:12, 41:18, 41:20, 41:22, 42:1, 42:4, 42:9, 42:13, 42:16, 42:18, 42:20, 42:23, 43:3, 44:4, 44:6, 44:8, 44:17, 44:24, 54:23, 55:1, 55:7, 55:17, 56:2, 56:4, 82:15, 82:17, 84:8, 84:10, 84:15, 84:17,

84:20, 84:21, 84:24, 85:12, 85:14, 85:17, 85:24, 86:2, 86:5, 86:11, 86:14, 104:6, 105:14, 105:16, 105:22, 105:24, 106:3, 106:6, 106:9, 106:15, 106:22, 106:25, 107:2, 107:4, 107:9, 107:11, 107:17, 107:24, 108:1, 108:7, 108:11, 108:16, 108:18, 109:2, 109:7, 109:9, 109:14, 109:16, 109:22, 109:24, 110:6, 110:8, 110:10, 110:15, 110:19, 111:2, 111:4, 111:11, 111:13, 111:18, 111:24, 112:1, 112:6, 112:8, 112:13, 112:15, 112:21, 113:2, 113:4, 113:10, 113:16, 113:18, 113:23, 113:25, 114:3, 114:9, 114:15, 114:22, 115:1, 115:4, 115:7, 115:10, 115:11, 116:10, 117:11, 118:9, 119:11, 120:8, 120:11, 121:4, 121:6, 121:21, 122:1, 122:9, 122:16, 123:2
**theft** [1] - 117:17
**there'll** [1] - 5:13
**they've** [3] - 25:3, 31:2, 53:20
**thinking** [6] - 7:23, 11:19, 12:1, 15:3, 18:14, 18:16
**thinks** [5] - 25:3, 44:22, 59:10, 92:6, 99:2
**third** [4] - 56:17, 108:19, 111:5, 122:11
**Thompson** [16] - 5:21, 5:22, 11:1, 11:4, 15:16, 21:25, 35:1, 38:15, 38:16, 43:4, 44:2, 86:11, 122:3, 122:8, 122:17, 123:1
**thoughts** [1] - 52:11
**three** [12] - 15:10,

18:2, 28:23, 41:2,
43:16, 43:22, 50:5,
78:1, 99:21, 99:22,
116:21, 118:2
**thrilled** [1] - 87:3
**throughout** [1] - 6:2
**thumbs** [1] - 104:14
**Thursday** [1] - 13:2
**Tim** [1] - 26:21
**Timmons** [1] - 27:3
**tips** [2] - 39:12, 39:13
**tired** [1] - 34:23
**today** [14] - 2:8, 2:16,
2:18, 12:12, 15:25,
17:5, 58:3, 63:9,
77:14, 87:1, 92:11,
98:3, 105:9, 117:4
**Tony** [1] - 26:6
**took** [6] - 3:13, 4:6,
32:1, 96:1, 122:18,
124:6
**top** [1] - 3:12
**topics** [1] - 58:5
**totally** [1] - 94:10
**touch** [1] - 75:24
**tough** [7] - 13:15,
48:1, 74:8, 89:2,
89:17, 90:1, 93:20
**tougher** [2] - 71:14,
72:1
**towards** [2] - 59:17,
103:8
**traffic** [1] - 60:6
**trafficking** [1] - 60:5
**Transcript** [3] - 1:9,
1:25, 1:25
**transcript** [1] - 124:11
**transcription** [1] -
124:10
**treat** [2] - 33:7, 80:7,
80:8
**Tremmel** [1] - 26:10
**trial** [26] - 2:8, 4:24,
6:2, 6:6, 8:13, 12:5,
12:8, 12:10, 13:10,
29:11, 29:12, 45:5,
47:11, 48:5, 48:7,
51:9, 51:12, 63:9,
87:6, 87:10, 87:16,
89:1, 98:20, 101:20,
102:16, 122:5
**trials** [3] - 6:10, 12:6,
72:2
**tried** [2] - 10:2, 57:9
**truly** [1] - 94:15
**trust** [1] - 28:4
**truth** [4] - 33:4, 90:25,
91:3, 92:1
**try** [15] - 5:19, 5:20,
33:18, 33:23, 33:24,

42:25, 54:2, 56:16,
58:8, 70:24, 71:17,
74:7, 85:19, 96:18,
119:9
**trying** [10] - 9:15, 9:19,
58:12, 58:13, 61:15,
61:18, 66:16, 76:15,
76:25, 88:25
**turn** [1] - 15:16
**TV** [2] - 45:15, 74:11
**Tvedt** [1] - 26:11
**twiddling** [1] - 104:13
**two** [24] - 4:1, 4:18,
7:24, 12:18, 13:3,
13:7, 15:10, 18:1,
22:1, 22:19, 23:24,
24:14, 25:12, 27:1,
31:21, 36:19, 40:8,
42:10, 50:8, 67:12,
67:18, 77:25,
104:21, 116:21
**type** [11] - 9:13, 9:14,
9:16, 9:17, 30:1,
36:20, 49:8, 63:22,
65:10, 78:8
**types** [3] - 60:2, 60:12

**U**

**U.S** [7] - 6:12, 26:4,
26:5, 26:7, 26:17,
27:19
**ultimately** [7] - 6:20,
9:23, 10:5, 31:25,
50:15, 97:13
**uncomfortable** [3] -
55:13, 73:15, 73:20
**under** [7] - 10:25,
11:1, 17:4, 20:15,
102:24, 119:8, 124:8
**undersigned** [1] -
124:2
**unemployed** [1] - 14:9
**UNITED** [1] - 1:1
**United** [25] - 1:3, 2:3,
2:6, 3:7, 23:14,
25:11, 25:12, 25:20,
25:22, 26:1, 26:9,
26:11, 26:12, 26:21,
26:22, 26:23, 26:24,
26:25, 27:3, 27:4,
46:10, 51:5, 55:2,
71:14, 79:10
**unless** [10] - 30:12,
47:5, 47:12, 47:23,
72:24, 72:25, 73:12,
74:1, 74:4, 94:12
**Up** [1] - 60:19
**up** [70] - 3:12, 6:2, 6:8,

7:21, 8:4, 9:21, 10:3,
10:8, 11:3, 11:9,
11:10, 11:14, 11:17,
11:18, 11:21, 11:25,
15:11, 17:1, 17:15,
17:21, 19:2, 19:16,
21:8, 21:12, 25:2,
27:6, 29:12, 30:13,
30:14, 30:20, 30:23,
30:25, 33:6, 34:1,
34:3, 34:23, 43:13,
43:25, 44:10, 44:11,
44:16, 44:20, 44:23,
48:24, 56:9, 56:16,
56:21, 57:3, 58:6,
58:15, 59:20, 80:23,
84:3, 84:4, 84:11,
90:11, 90:13, 91:2,
93:19, 93:24, 94:13,
95:13, 95:15,
101:20, 102:1,
105:5, 105:11,
111:6, 122:4, 122:13
**upbringing** [1] - 49:8
**upfront** [1] - 67:15
**upper** [1] - 106:10
**urgent** [1] - 12:24
**US** [2] - 1:16, 1:19
**USA** [1] - 1:20
**USDA** [1] - 34:6

**V**

**valuable** [1] - 121:16
**van** [1] - 18:21
**vehicle** [4] - 62:12,
62:14, 62:17, 62:19
**verbs** [1] - 8:24
**verdict** [15] - 35:13,
35:15, 37:1, 37:4,
38:3, 38:5, 38:23,
38:25, 40:16, 40:18,
40:24, 41:20, 42:18,
55:14, 56:21
**Vernon** [1] - 20:13
**video** [2] - 75:19,
78:22
**videotape** [1] - 64:2,
67:2, 78:22
**view** [5] - 55:15, 68:1,
69:20, 69:23, 76:13
**viewers** [1] - 60:11
**viewpoints** [1] - 50:21
**views** [7] - 50:7,
50:23, 54:4, 55:9,
67:12, 67:18, 100:10
**Virgin** [2] - 3:18, 3:19
**VOIR** [1] - 1:6
**voir** [6] - 8:23, 8:24,

58:4, 85:1, 116:2,
118:24
**volunteer** [1] - 76:9
**vote** [1] - 55:11
**voting** [1] - 7:14
**vs** [1] - 1:5

**W**

**wait** [6] - 56:8, 69:15,
84:5, 88:9, 92:17,
110:19
**waits** [1] - 56:17
**Walgren** [1] - 29:16
**walk** [1] - 83:5
**walked** [2] - 49:4,
78:23
**wall** [1] - 6:12
**wash** [1] - 62:14
**washed** [1] - 62:18
**Washington** [1] -
48:20
**watch** [1] - 74:16
**watched** [3] - 45:14,
45:15, 75:4
**watches** [2] - 60:8,
74:12
**watching** [1] - 62:1
**way-out-there** [1] -
75:8
**weather** [1] - 83:14
**Wednesday** [1] - 13:2
**week** [5] - 10:2, 12:9,
18:8, 19:1, 87:5
**weeks** [4] - 12:5, 12:7,
16:19, 18:3
**Wehde** [1] - 26:24
**weigh** [1] - 33:2
**welcome** [2] - 2:3,
13:5
**whatnot** [3] - 88:20,
96:1, 97:21
**WHEREOF** [1] -
124:14
**white** [2] - 15:16,
48:24
**Whoa** [1] - 69:15
**Wiezorek** [1] - 28:25
**wife** [1] - 48:22
**William** [1] - 29:20
**Williams** [14] - 1:13,
2:6, 26:12, 29:15,
58:4, 58:16, 58:19,
71:2, 71:11, 72:16,
72:19, 87:6, 87:21,
92:13
**willing** [2] - 22:19,
23:7
**willingness** [1] - 23:10

**windshield** [2] -
64:24, 65:19
**wins** [1] - 39:13
**WITNESS** [1] - 124:14
**witness** [12] - 43:8,
43:12, 43:19, 56:16,
56:17, 64:12, 68:20,
77:22, 78:1, 78:2,
89:11
**witness's** [1] - 80:8
**witnesses** [9] - 19:25,
32:24, 33:8, 69:4,
70:22, 89:1, 89:3,
89:9, 89:16
**wonderful** [2] - 9:16,
87:2
**wondering** [2] - 66:19,
93:14
**Woodyard** [1] - 29:18
**word** [1] - 5:8
**words** [3] - 68:20,
70:8, 71:10
**works** [6] - 4:7, 4:16,
21:1, 27:18, 30:7,
118:10
**worried** [1] - 89:7

**Y**

**year** [1] - 99:14
**years** [13] - 4:5, 4:8,
4:23, 5:23, 5:24,
14:21, 21:1, 32:9,
41:25, 79:19, 87:11,
99:21, 99:22
**York** [1] - 23:2
**you-all** [3] - 12:19,
13:21, 86:5
**yourself** [8] - 28:18,
57:3, 57:8, 57:11,
94:12, 95:16, 95:18,
98:21
**yourselves** [2] -
82:22, 85:19

**Z**

**zealously** [3] - 88:12,
88:17, 88:19