United States Court of Appeals

For the Eighth Circuit

_____

No. 19-3224
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Stevenson

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque
_____

Submitted: June 19, 2020
Filed: November 4, 2020
_____

Before LOKEN and GRASZ, Circuit Judges, and CLARK,[1] District Judge.
_____

LOKEN, Circuit Judge.

    A jury convicted Michael Stevenson of five controlled substance offenses, three of which he admitted committing in his opening statement and trial testimony. The district court sentenced Stevenson to 200 months imprisonment. On appeal, he

---

[1]The Honorable Stephen R. Clark, Sr., United States District Judge for the Eastern District of Missouri, sitting by designation.

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 1 of 12
Appellate Case: 19-3224   Page: 1   Date Filed: 11/04/2020 Entry ID: 4972616

argues the evidence was insufficient to convict him of conspiring to distribute heroin and cocaine base ("Count 1") and of distributing heroin on or about February 1, 2017 ("Count 2"). He further argues the district court[2] erred in rejecting his challenge to the government's peremptory strike of the only prospective juror of color, see Batson v. Kentucky, 476 U.S. 79 (1986); and abused its discretion in responding to a question from the jury during its deliberations. We affirm.

## I. Sufficiency of the Evidence.

Stevenson argues the jury lacked sufficient evidence to convict him of the offenses charged in Counts 1 and 2. "We review the sufficiency of the evidence in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt, even if the evidence rationally supports two conflicting hypotheses." United States v. Morris, 791 F.3d 910, 913 (8th Cir. 2015) (cleaned up).

A. The Count 1 Conspiracy Charge. Stevenson argues the evidence was insufficient because the government introduced "no specific evidence that Mr. Stevenson had conspired, *i.e.* reached an agreement or understanding with anyone to distribute heroin or crack cocaine." An agreement to join a conspiracy need not be explicit, it may be inferred from the facts and circumstances of the case. United States v. Conway, 754 F.3d 580, 587 (8th Cir.), cert. denied, 574 U.S. 1054 (2014). "It is settled in our circuit that the evidence is sufficient to support a conspiracy [to distribute] where the drugs were purchased for resale." United States v. Slagg, 651 F.3d 832, 842 (8th Cir. 2011) (cleaned up).

---

[2]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

-2-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 2 of 12
Appellate Case: 19-3224   Page: 2   Date Filed: 11/04/2020 Entry ID: 4972616

The government's trial witnesses included Chad Leitzen, an investigator with the Dubuque, Iowa Drug Task Force, and E.N., a confidential informant ("CI") working with Leitzen. E.N. testified that in late 2016 she began purchasing heroin from a new dealer named "Lo."[3] When Lo inadvertently left his Illinois identification card in E.N.'s car, E.N. sent Leitzen a picture of the card, which identified Stevenson by name. On the morning of February 2, 2017, Leitzen responded to a 911 call that an unresponsive man, A.B., had been found with a needle in his arm and was cold to the touch. A.B. was transported to a hospital where he died. A toxicology report found heroin in his bloodstream. A.B. had been released from jail on January 3, 2017. In his room, officers found a digital scale, syringes, a ZTE cell phone, an Alcatel One Touch cell phone, marijuana, methamphetamine, and heroin.

Accessing the ZTE phone, Leitzen saw "Lo" listed as a contact, leading him to suspect Stevenson was A.B.'s source of heroin. The Alcatel phone contained numerous text messages between A.B. and Stevenson, all of which were admitted into evidence. Six days after his release from jail, A.B. texted Stevenson, "Man, I really appreciate you helping out. I really need to get rolling again bro. Starting off new always sucks." Stevenson replied, "The quicker you grind, the quicker you shine," and "Just gotta work be patient and smart." Leitzen surmised they were discussing A.B. distributing drugs for Stevenson. The texts reflected that, on two occasions,

---

[3]Stevenson argues the district court erred in admitting E.N.'s hearsay testimony that another heroin user told E.N. she knew a person who could get heroin from Stevenson. The court conditionally admitted this testimony and later ruled it admissible as a co-conspirator statement made during and in furtherance of the conspiracy. See United States v. Bell, 573 F.2d 1040 (8th Cir. 1978); Fed. R. Evid. 801(d)(2)(E). The issue is not properly before us because Stevenson did not include it in his statement of the issues presented for review. See Fed. R. App. P. 28(a)(5); United States v. Mejia-Perez, 635 F.3d 351, 353-54 (8th Cir. 2011). In any event, we agree with the government that any error was harmless given the overwhelming evidence supporting the Count 1 conviction. See United States v. Erickson, 610 F.3d 1049, 1054 (8th Cir. 2010).

-3-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 3 of 12
Appellate Case: 19-3224   Page: 3   Date Filed: 11/04/2020 Entry ID: 4972616

Stevenson sold A.B. a half-gram of heroin on a "player deal," a cheaper price reserved for drug dealers. On January 13 and January 18, A.B. asked Stevenson for a full gram to distribute to acquaintances. Leitzen testified a gram quantity is consistent with distribution. On January 26, Stevenson texted A.B., "Hot fresh tasty pizza straight out the oven." Leitzen identified this as a message Stevenson sent to tell potential heroin customers he had acquired a new supply.

J.W., another CI working with Leitzen, testified that he initially met Stevenson when he delivered heroin J.W. purchased from Michael Greenwood. Eventually, J.W. ordered heroin directly from Stevenson. J.W. knew heroin addict A.B. for several years; they occasionally pooled money to purchase heroin from Stevenson. After A.B.'s death, J.W. resumed buying heroin from Stevenson. On multiple occasions, someone else delivered the heroin. After one transaction, Stevenson called J.W. to tell him his payment was $5 short.

S.S., another CI managed by Leitzen, testified that, in August 2017, she informed Leitzen she had purchased cocaine base from a dealer named "Mike-Mike," whom she later identified as Stevenson. S.S. initially purchased cocaine base from a man named Rick, who turned out to be Stevenson's roommate. Stevenson sometimes delivered cocaine base to S.S. She would call either Stevenson or Rick to arrange a purchase. One of them would deliver, regardless whom she called.

Stevenson testified in his own defense. He admitted selling heroin and cocaine base but denied working with anyone. He admitted driving out of state to purchase heroin and cocaine base in bulk that he distributed in Dubuque. He admitted committing three charged distribution offenses involving heroin and cocaine base.

The testimony of Stevenson and the government's cooperating witnesses was more than sufficient evidence for a reasonable jury to convict him of Count 1. Stevenson's testimony alone was likely all the jury needed to convict. See Slagg, 651

-4-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 4 of 12
Appellate Case: 19-3224   Page: 4   Date Filed: 11/04/2020 Entry ID: 4972616

F.3d at 840-42. But there was far more. If the jury found S.S. credible, her testimony established that Stevenson conspired with roommate Rick to distribute cocaine base. Stevenson's text messages with A.B. were evidence that A.B. distributed heroin for Stevenson. J.W. testified that Stevenson worked with Greenwood to deliver heroin and collect drug proceeds. The jury was presented substantial evidence that Stevenson and multiple persons agreed to distribute heroin and cocaine base. See United States v. Mayfield, 909 F.3d 956, 963 (8th Cir. 2018), cert. denied, 139 S. Ct. 2628 (2019). "We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses." Morris, 791 F.3d at 913 (cleaned up).

Stevenson further argues the government failed to establish that he participated in a conspiracy between January and September 2017, the period charged in the indictment. This contention is without merit. "A variance between the date set forth in the indictment and the proof at trial is not fatal as long as the acts alleged were committed within the statute of limitations and before the date of the indictment." United States v. Harris, 344 F.3d 803, 805 (8th Cir. 2003), cert. denied, 540 U.S. 1201 (2004). It is undisputed that the acts in question occurred within the five-year statute of limitations, see 18 U.S.C. § 3282(a), and before the indictment issued on June 26, 2018.

B. The Count 2 Distribution Charge. Count 2 alleged that Stevenson distributed heroin on or about February 1, 2017, the day before A.B. died. The government's strongest evidence of distribution that day was evidence that Stevenson sold the heroin found in A.B.'s bloodstream. Stevenson argues the evidence was insufficient for a reasonable the jury to find that Stevenson distributed heroin to A.B. on or about February 1. Stevenson admitted selling to A.B. but denied doing so on February 1; he testified he had not talked to A.B. for some time prior to his death.

On January 26, 2017, Stevenson texted A.B., "Hot fresh tasty pizza straight out the oven." Stevenson admitted picking up a new supply of heroin at the end of

-5-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 5 of 12
Appellate Case: 19-3224   Page: 5   Date Filed: 11/04/2020 Entry ID: 4972616

January, precipitating the "hot fresh tasty pizza" text to A.B. The testimony of Leitzen and J.W. reconstructed events leading up to A.B.'s death on the morning of February 2 from information on J.W.'s phone and A.B.'s Alcatel phone. At 4:43 p.m. on February 1, J.W. texted A.B., "Let's go half and half," which he explained meant splitting the cost of a half-gram of heroin. A.B. responded at 4:47, "I'll c luk [let you know]." At 4:48, A.B. texted Stevenson, "What up man u good." Stevenson responded at 4:52 with "Wat you tryna do"? After a phone call with Stevenson at 4:53, A.B. texted J.W. at 4:56, "When u ready?" J.W. did not respond. A.B. sent another message: "? so 35_35 I'm down he ready." J.W. testified "35_35" meant each of them would pay $35 for a half-gram of heroin; J.W. believed "he ready" referred to Stevenson because A.B. had bought heroin only from Stevenson since his release from jail. At 5:17, A.B. sent J.W. another text, "What up man u wanna do quick or no?" J.W. never responded and did not buy heroin with A.B. that day.

Viewing this evidence in the light most favorable to the verdict, we conclude a reasonable jury could find that Stevenson distributed heroin to A.B. on or about February 1. A.B. distributed heroin for Stevenson after his release from jail in January. J.W. testified that A.B. acquired heroin only from Stevenson. Stevenson texted A.B. on January 26 that he had a new supply of heroin. On February 1, J.W. asked A.B. if he wanted to share a heroin purchase, as they had done before. A.B. expressed interest and sent Stevenson a text asking, "u good." After A.B. talked with Stevenson by phone, he texted J.W. they could acquire a half-gram of heroin for $70. Though J.W. did not participate in the transaction, the jury could infer from these exchanges that A.B. then purchased heroin from Stevenson without J.W.'s involvement. Cf. United States v. Garcia, 646 F.3d 1061, 1067 (8th Cir. 2011). The jury was free to disregard Stevenson's denials, particularly when his claim that he had not communicated with A.B. for some time prior to February 1 was contradicted by the phone records. That A.B. might have acquired the heroin found in his bloodstream the morning of February 2 from another supplier does not preclude us from upholding the jury's verdict. See Morris, 791 F.3d at 914.

-6-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 6 of 12
Appellate Case: 19-3224   Page: 6   Date Filed: 11/04/2020 Entry ID: 4972616

## II. The <u>Batson</u> Issue.

In <u>Batson</u>, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the use of peremptory challenges to strike jurors solely on the basis of race. 476 U.S. at 85-88. During jury selection, Stevenson objected that the government improperly struck prospective juror N.R., an African-American man, based on his race. In ruling on this objection, the district court applied the well-established three-step process to determine whether a peremptory strike was racially motivated:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

<u>Foster v. Chatman</u>, 136 S.Ct. 1737, 1747 (2016) (quotation omitted). Because factual findings underlying this ruling "turn largely on credibility evaluations," we review the district court's determination for clear error, affording it "great deference." <u>United States v. Ellison</u>, 616 F.3d 829, 832 (8th Cir. 2010).

After the government struck N.R., Stevenson objected that N.R. was the only prospective juror of color, his pre-voir dire questionnaire responses were not "off base or bad one way or the other," and the government asked no questions during voir dire. The district court concluded this made a prima facie case of a <u>Batson</u> violation.

The government responded that it struck N.R. for several reasons. In the questionnaire, N.R. disclosed three prior law enforcement incidents, one that ended in a conviction for assault. N.R. also stated that his brother had been charged with "conspiracy." He wrote: "While I appreciate the legal system at times I feel it can be

-7-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 7 of 12
Appellate Case: 19-3224   Page: 7   Date Filed: 11/04/2020 Entry ID: 4972616

biased." The government noted it learned of these reasons prior to knowing N.R.'s race because the questionnaire did not ask for a prospective juror's race. The government also learned prior to voir dire that N.R. failed to disclose three other prior convictions. Stevenson argued the government's reasons were pretextual because N.R. "indicated under oath that he would be able to fairly try this case" when he did not raise his hand when the court asked if any prospective juror had strong feelings about the criminal justice system that would make it impossible to sit as an impartial juror. The district court denied the Batson challenge because the government identified race-neutral reasons before it learned N.R.'s race in the courtroom. The court reasoned, "The fact that the juror did not raise a hand or suggest that he was biased in some way does not constitute evidence of the Government's race-neutral reason as somehow pretextual."

On appeal, Stevenson argues the district court clearly erred in not finding the government's race-neutral reasons pretextual because the government "did nothing to inquire further as to whether any of [N.R.'s] vague and ambiguous [questionnaire] responses and statements justified use of a peremptory challenge." We disagree. Our prior decisions confirm that the government offered race-neutral reasons for its peremptory strike of N.R. -- his prior conviction for assault, his brother's prosecution for conspiracy, and his failure to disclose he had a total of four prior convictions. See, e.g., United States v. Johnson, 954 F.3d 1106, 1113 (8th Cir. 2020); United States v. Crawford, 413 F.3d 873, 875 (8th Cir. 2005). Because the government learned of these race-neutral reasons from N.R.'s questionnaire and criminal history, it had no need to inquire further during voir dire. See United States v. Harding, 864 F.3d 961, 964 (8th Cir. 2017) ("a strike need not be premised on a juror's statements or reactions during voir dire."). In these circumstances, its failure to inquire further was not evidence of pretext. The district court did not clearly err in finding that Stevenson failed to establish that the government's "combination of reasons" was pretextual. Crawford, 413 F.3d at 875.

-8-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 8 of 12
Appellate Case: 19-3224    Page: 8    Date Filed: 11/04/2020 Entry ID: 4972616

## III. The Jury Question Issue.

Count 2 charged that Stevenson distributed heroin on or about February 1, 2017. Count 3, which Stevenson admitted, charged that he distributed heroin on or about February 2. During its deliberations, the jury submitted a note asking the district court:

> Can we get a clarification of "On or about"?
> Ex. . . 2-3 hr window around midnight, or within a 1-2 day period? If it is in reference to days then distinction between Counts 2 & 3 with overlapping days?

The district court and counsel for both parties found this question "puzzling." Jury Instruction 18 had properly instructed the jury, without objection:

> You will note that the Indictment charges that the offenses were committed "on or about" certain dates. The government need not prove with certainty the exact date or the exact time period of the offenses charged. It is sufficient if the evidence establishes that the offenses occurred within a reasonable time of the date or period of time alleged in the Indictment.

The district court noted that further clarification of Counts 2 and 3 appeared to be unnecessary because "it's clear Counts 2 and 3 are two distinct allegations. [The jurors] have separate verdict forms for them. They're in separate counts." The court proposed responding: "I have received your note, a copy of which is attached. Please reread the instructions and continue to deliberate." The government endorsed that response. Stevenson urged the district court to clarify that "Counts 2 and 3 are distinct allegations." Defense counsel acknowledged that any response to the jury's question would have to avoid "making it seem like we're defining 'on or about.'"

-9-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 9 of 12
Appellate Case: 19-3224   Page: 9   Date Filed: 11/04/2020 Entry ID: 4972616

The district court decided to use its proposed response, explaining it was "hesitant" to address the difference between Counts 2 and 3 because -

> the first sentence [of the jury's question] requests us to define "on or about." . . . [I]f we then try to tell them that Counts 2 and 3 are distinct counts, and try to emphasize that in some way, it appears to be attempting to give them a further definition of 'on or about,' which we've already defined in the instructions.

On appeal, Stevenson argues the court abused its discretion because its response failed to remedy the jury's underlying confusion. Because Count 2 and Count 3 alleged he distributed heroin "on or about" February 1 and 2, 2017, Stevenson argues the jury could have been led by Instruction 18 to find "that the heroin distributions alleged in Counts 2 and 3 were the same distribution."

We review the district court's response to a jury request for abuse of discretion, recognizing that often a proper response is to "simply refer the jury back to the original instructions." United States v. Abdul-Aziz, 486 F.3d 471, 476 (8th Cir. 2007) (quotation omitted). Here, the court expressly addressed Stevenson's concern. The court concluded that its response was appropriate because the indictment, the initial instructions, and the verdict forms clearly instructed the jury that Counts 2 and 3 were distinct charges, and any unnecessary further clarification could compromise the proper definition of "on or about" in Instruction 18. There was no abuse of the court's substantial discretion in formulating jury instructions. See United States v. Hayes, 574 F.3d 460, 482 (8th Cir. 2009).

The judgment of the district court is affirmed. We grant the unopposed motion to expand the record on appeal to include documents considered by the district court in ruling on the Batson objection.

_____

-10-

Case 2:18-cr-01023-CJW-MAR   Document 133   Filed 11/04/20   Page 10 of 12
Appellate Case: 19-3224   Page: 10   Date Filed: 11/04/2020 Entry ID: 4972616

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

November 04, 2020

Mr. Michael Kevin Lahammer
LAHAMMER LAW FIRM, PC
Suite 1010
425 Second Street, S.E.
Cedar Rapids, IA  52401

      RE:  19-3224  United States v. Michael Stevenson

Dear Counsel:

      The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                      Michael E. Gans
                                      Clerk of Court

NDW

Enclosure(s)

cc:     Mr.  Clerk, U.S. District Court, Northern Iowa
         Mr. John H. Lammers
         Ms. Kyndra Lundquist
         Mr. Michael Stevenson

      District Court/Agency Case Number(s):   2:18-cr-01023-CJW-1

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

November 04, 2020

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 19-3224 United States v. Michael Stevenson

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant and appeared on the brief was Michael Kevin Lahammer, of Cedar Rapids, IA.

Counsel who presented argument on behalf of the appellee and appeared on the brief was Kyndra Lundquist, AUSA, of Cedar Rapids, IA.

The judge who heard the case in the district court was Honorable Charles J. Williams. The judgment of the district court was entered on October 8, 2019.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

NDW

Enclosure(s)

cc: MO Lawyers Weekly

District Court/Agency Case Number(s): 2:18-cr-01023-CJW-1